LAW OFFICES OF CAMERON H. TOTTEN
Cameron H. Totten, Esq. (State Bar No. 180765)
790 E. Colorado Blvd., 9th Floor
Pasadena, California 91101
Telephone:(818) 483-5795
Facsimile:(818) 230-9817
Email: ctotten@ctottenlaw.com

Attorney for Plaintiffs LINDA ROBERTA MCCORMICK and ANTHONY B. MCCORMICK

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | **CASE NO.:** |
| LINDA ROBERTA MCCORMICK, | **CHAPTER 13 CASE NO.: 2:17-bk-24730-SK** |
| DEBTOR. | |
| | **ADV. PROC. NO.:  2:17-ap-01589-SK** |
| LINDA ROBERTA MCCORMICK, an individual; and ANTHONY B. MCCORMICK, an individual, | **PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO WITHDRAW REFERENCE OF ADVERSARY PROCEEDING PURSUANT TO 28 USC § 157(d)** |
| PLAINTIFF, | |
| vs. | **DATE:** |
| FOUR SQUARE FINANCIAL LP, a California limited partnership; ALAN E. ROBBINS, an individual; LEAH S. ROBBINS, an individual; HOWARD REALTY GROUP, INC., a California corporation; BRETT ALLEN HOWARD, an individual; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1-50, inclusive, | **TIME:** |
| | **CTRM.:** |
| | **[FILED CONCURRENTLY WITH MOTION TO WITHDRAW REFERENCE OF ADVERSARY PROCEEDING]** |
| DEFENDANTS. | |

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEY OF RECORD HEREIN:

 Plaintiffs Linda Roberta McCormick and Anthony B. McCormick, by and through their counsel, hereby request that the Court take judicial notice of the following records pursuant to Federal Rule of Evidence 201 in support of their motion to withdraw reference:

 1. PACER Docket of Bankruptcy Case No. 2:17-bk-24730-SK, attached hereto as Exhibit A;

 2. PACER Docket of Adversary Case No. 2:17-ap-01589-SK, attached hereto as Exhibit B;

 3. Adversary Complaint filed in Bankruptcy Case No. 2:17-ap-01589-SK, attached hereto as Exhibit C; and

 4. Status Conference and Scheduling Order Pursuant to LBR 7016-1(a)(4) filed in Bankruptcy Case No. 2:17-ap-01589-SK, attached hereto as Exhibit D.

DATED: March 29, 2018   LAW OFFICES OF CAMERON H. TOTTEN

    By: /s/ Cameron H. Totten_____
      Cameron H. Totten
      Attorney for Plaintiffs Linda Roberta
      McCormick and Anthony B. McCormick

EXHIBIT"A"

**Repeat-cacb, RepeatPACER, Pln13F, NoFeeRequired, BARDEBTOR, RestrictedDISMISSED**

# U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Bankruptcy Petition #: 2:17-bk-24730-SK

|  |  |
|---|---|
| | *Date filed:* 11/30/2017 |
| *Assigned to:* Sandra R. Klein | *Debtor dismissed:* 03/23/2018 |
| Chapter 13 | *341 meeting:* 03/16/2018 |
| Voluntary | |
| Unknown assets | |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Ryan A Stubbe** |
| **Linda Roberta McCormick** | Jaurigue Law Group |
| 211 Country Club Place | 114 N Brand Blvd |
| Burbank, CA 91501 | Ste 200 |
| LOS ANGELES-CA | Glendale, CA 91203 |
| SSN / ITIN: xxx-xx-3221 | (818) 630-7280 |
| | Fax : (888) 879-1697 |
| | Email: ryan@jlglawyers.com |
| | |
| | **Cameron H Totten** |
| | Law Offices of Cameron H |
| | Totten |
| | 790 E. Colorado Blvd., 9th Floor |
| | Pasadena, CA 91101 |
| | 818-483-5795 |
| | Fax : 818-230-9817 |
| | Email: ctottenlaw@gmail.com |

**Trustee**
**Kathy A Dockery (TR)**
801 Figueroa Street, Suite 1850
Los Angeles, CA 90017
(213) 996-4400

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 11/30/2017 | 1<br>(14 pgs; 4 docs) | Chapter 13 Voluntary Petition Individual , *Certificate of Counseling, Creditor List and Verification of Creditor Matrix*. Fee Amount $310 Filed by Linda Roberta McCormick Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 12/14/2017. Schedule A/B: Property (Form 106A/B or 206A/B) due 12/14/2017. Schedule C: The Property You Claim as Exempt (Form 106C) due 12/14/2017. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 12/14/2017. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 12/14/2017. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 12/14/2017. Schedule H: Your Codebtors (Form 106H or 206H) due 12/14/2017. Schedule I: Your Income (Form 106I) due 12/14/2017. Schedule J: Your Expenses (Form 106J) due 12/14/2017. Declaration About an Individual Debtors Schedules (Form 106Dec) due 12/14/2017. Statement of Financial Affairs (Form 107 or 207) due 12/14/2017. Chapter 13 Plan (LBR F3015-1) due by 12/14/2017. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 12/14/2017. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 12/14/2017. Statement of Related Cases (LBR Form F1015-2) due 12/14/2017. Disclosure of Compensation of Attorney for Debtor (Form 2030) due 12/14/2017. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 12/14/2017. Incomplete Filings due by 12/14/2017. (Attachments: # 1 Electronic Filing Declaration) (Totten, Cameron) (Entered: 11/30/2017) |
| 11/30/2017 | 2 | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Linda Roberta McCormick. (Totten, Cameron) (Entered: 11/30/2017) |
| 11/30/2017 | 3<br>(3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 01/05/2018 at 11:00 AM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017. Confirmation hearing to be held on 02/15/2018 at 10:00 AM at Crtrm 1575, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 04/05/2018. (Totten, Cameron) (Entered: 11/30/2017) |
| 11/30/2017 | | Receipt of Voluntary Petition (Chapter 13)(2:17-bk-24730) |

| | | |
|---|---|---|
| | | [misc,volp13] ( 310.00) Filing Fee. Receipt number 46043304. Fee amount 310.00. (re: Doc# 1) (U.S. Treasury) (Entered: 11/30/2017) |
| 12/01/2017 | | Notice of Debtor's Prior Filings for debtor Linda Roberta McCormick Case Number 11-58620, Chapter 13 filed in California Central Bankruptcy on 11/28/2011 , Dismissed for failure to make plan payments on 02/28/2014; Case Number 14-16197, Chapter 13 filed in California Central Bankruptcy on 04/01/2014 , Dismissed for failure to make plan payments on 01/13/2016.(Admin) (Entered: 12/01/2017) |
| 12/01/2017 | 4 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Halavais, Coby. (Halavais, Coby) (Entered: 12/01/2017) |
| 12/02/2017 | 5 (4 pgs) | BNC Certificate of Notice (RE: related document(s)3 Meeting (AutoAssign Chapter 13)) No. of Notices: 8. Notice Date 12/02/2017. (Admin.) (Entered: 12/02/2017) |
| 12/02/2017 | 6 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Linda Roberta McCormick) No. of Notices: 1. Notice Date 12/02/2017. (Admin.) (Entered: 12/02/2017) |
| 12/02/2017 | 7 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Linda Roberta McCormick) No. of Notices: 1. Notice Date 12/02/2017. (Admin.) (Entered: 12/02/2017) |
| 12/14/2017 | 8 (46 pgs) | Statement of Related Cases (LBR Form 1015-2.1) , Summary of Assets and Liabilities for Individual (Official Form 106Sum or 206Sum) , Schedule A/B Individual: Property (Official Form 106A/B or 206A/B) , Schedule C: The Property You Claimed as Exempt (Official Form 106C) , Schedule D Individual: Creditors Who Have Claims Secured by Property (Official Form 106D or 206D) , Schedule E/F Individual: Creditors Who Have Unsecured Claims (Official Form 106F or 206F) , Schedule G Individual: Executory Contracts and Unexpired Leases (Official Form 106G or 206G) , Schedule H Individual: Your Codebtors (Official Form 106H or 206H) , Schedule I Individual: Your Income (Official Form 106I) , Schedule J: Your Expenses (Official Form 106J) , Declaration About an Individual Debtor's Schedules (Official Form 106Dec) , |

| | | |
|---|---|---|
| | | Statement of Financial Affairs for Individual Filing for Bankruptcy (Official Form 107 or 207) , Disclosure of Compensation of Attorney for Debtor (Official Form 2030) , Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 3 Years, Disposable Income Is Not Determined (Official Form 122C-1) Filed by Debtor Linda Roberta McCormick (RE: related document(s)1 Voluntary Petition (Chapter 13)). (Totten, Cameron) (Entered: 12/14/2017) |
| 12/14/2017 | 9<br>(1 pg) | Declaration by Debtor as to Whether Debtor(s) Received Income From an Employer Within 60 Days of Petition (LBR Form F1002-1) Filed by Debtor Linda Roberta McCormick (RE: related document(s)1 Voluntary Petition (Chapter 13)). (Totten, Cameron) (Entered: 12/14/2017) |
| 12/14/2017 | 10<br>(6 pgs) | Chapter 13 Plan (LBR F3015-1) Filed by Debtor Linda Roberta McCormick (RE: related document(s)1 Chapter 13 Voluntary Petition Individual , *Certificate of Counseling, Creditor List and Verification of Creditor Matrix.* Fee Amount $310 Filed by Linda Roberta McCormick Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 12/14/2017. Schedule A/B: Property (Form 106A/B or 206A/B) due 12/14/2017. Schedule C: The Property You Claim as Exempt (Form 106C) due 12/14/2017. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 12/14/2017. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 12/14/2017. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 12/14/2017. Schedule H: Your Codebtors (Form 106H or 206H) due 12/14/2017. Schedule I: Your Income (Form 106I) due 12/14/2017. Schedule J: Your Expenses (Form 106J) due 12/14/2017. Declaration About an Individual Debtors Schedules (Form 106Dec) due 12/14/2017. Statement of Financial Affairs (Form 107 or 207) due 12/14/2017. Chapter 13 Plan (LBR F3015-1) due by 12/14/2017. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 12/14/2017. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 12/14/2017. Statement of Related Cases (LBR Form F1015-2) due 12/14/2017. Disclosure of Compensation of Attorney for Debtor (Form 2030) due 12/14/2017. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form |

|  |  |  |
|---|---|---|
|  |  | F1002-1) due by 12/14/2017. Incomplete Filings due by 12/14/2017. (Attachments: # 1 Electronic Filing Declaration)). (Totten, Cameron) (Entered: 12/14/2017) |
| 12/14/2017 | [11](6 pgs) | Rights and responsibilities agreement between chapter 13 debtors and their attorneys Filed by Debtor Linda Roberta McCormick. (Totten, Cameron) (Entered: 12/14/2017) |
| 12/18/2017 | [12](8 pgs) | Motion to Dismiss Debtor *Notice of Motion and Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP (Napolitano, Anthony) (Entered: 12/18/2017) |
| 12/18/2017 | [13](76 pgs) | Declaration re: *Declaration of Leah S. Robbins in Support of Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP (RE: related document(s)[12](12) Motion to Dismiss Debtor *Notice of Motion and Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)*). (Napolitano, Anthony) (Entered: 12/18/2017) |
| 12/18/2017 | [14](50 pgs) | Request for judicial notice *in Support of Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP. (Napolitano, Anthony) (Entered: 12/18/2017) |
| 12/19/2017 | 15 | Notice to Filer of Error and/or Deficient Document **Incorrect hearing date/time/location was selected. THE FILER IS INSTRUCTED TO FILE AN AMENDED NOTICE OF MOTION/HEARING WITH CORRECT HEARING INFORMATION.** (RE: related document(s)[12](12) Dismiss Debtor filed by Creditor Four Square Financial LP) (May, Thais D.) (Entered: 12/19/2017) |
| 12/19/2017 | 16 | Notice to Filer of Error and/or Deficient Document **Incorrect Hearing Information. THE FILER IS INSTRUCTED TO FILE A NOTICE OF ERRATA WITH THE CORRECT HEARING INFORMATION.** (RE: related document(s)[13](13) Declaration filed by Creditor Four Square Financial LP, [14](14) Request for judicial notice filed by Creditor Four Square Financial LP) (May, Thais D.) (Entered: 12/19/2017) |

| 12/21/2017 | 17<br>(4 pgs) | Notice of Hearing Filed by. (Dockery (TR), Kathy) (Entered: 12/21/2017) |
| --- | --- | --- |
| 12/22/2017 | 18<br>(12 pgs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181, Filed by Creditor Four Square Financial LP (Spector, Steven). Related document(s) 61 Notice of Lodgment filed by Creditor Four Square Financial LP. Modified on 3/23/2018 (May, Thais D.). (Entered: 12/22/2017) |
| 12/22/2017 | 19<br>(15 pgs) | Memorandum of points and authorities *IN SUPPORT OF FOUR SQUARE FINANCIAL, LPS MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)* Filed by Creditor Four Square Financial LP. (Spector, Steven) (Entered: 12/22/2017) |
| 12/22/2017 | 20<br>(14 pgs) | Declaration re: *Brett A. Howard ISO* Filed by Creditor Four Square Financial LP (RE: related document(s)18 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181,). (Spector, Steven) (Entered: 12/22/2017) |
| 12/22/2017 | 21<br>(103 pgs) | Declaration re: *Continuation Declaration of Leah S. Robbins ISO* Filed by Creditor Four Square Financial LP (RE: related document(s)18 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181,). (Spector, Steven) (Entered: 12/22/2017) |
| 12/22/2017 | 22<br>(9 pgs) | Declaration re: *Anthony J. Napolitano ISO* Filed by Creditor Four Square Financial LP (RE: related document(s)18 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181,). (Spector, Steven) (Entered: 12/22/2017) |
| 12/22/2017 | 23<br>(229 pgs) | Request for judicial notice *in Support of* Filed by Creditor Four Square Financial LP (RE: related document(s)18 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181,). (Spector, Steven) (Entered: 12/22/2017) |

| | | |
|---|---|---|
| 12/22/2017 | [24](#) <br> (3 pgs) | Application shortening time *FOUR SQUARE FINANCIAL LPS MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)* Filed by Creditor Four Square Financial LP (Spector, Steven). Related document(s) [23](#) Request for judicial notice filed by Creditor Four Square Financial LP. Modified on 12/27/2017 (May, Thais D.). (Entered: 12/22/2017) |
| 12/22/2017 | [25](#) <br> (3 pgs) | Proof of service Filed by Creditor Four Square Financial LP (RE: related document(s)[18](#) Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181,, [19](#) Memorandum of points and authorities, [20](#) Declaration, [21](#) Declaration, [22](#) Declaration, [23](#) Request for judicial notice, [24](#) Application shortening time *FOUR SQUARE FINANCIAL LPS MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)*). (Spector, Steven) (Entered: 12/22/2017) |
| 12/22/2017 | | Receipt of Motion for Relief from Stay - Real Property(2:17-bk-24730-SK) [motion,nmrp] ( 181.00) Filing Fee. Receipt number 46179422. Fee amount 181.00. (re: Doc# [18](#)) (U.S. Treasury) (Entered: 12/22/2017) |
| 12/27/2017 | 26 | Hearing Set (RE: related document(s)[18](#) Motion for Relief from Stay - Real Property filed by Creditor Four Square Financial LP) The Hearing date is set for 1/17/2018 at 08:30 AM at Crtrm 1575, 255 E Temple St., Los Angeles, CA 90012. The case judge is Sandra R. Klein (May, Thais D.) (Entered: 12/27/2017) |
| 12/27/2017 | [27](#) <br> (4 pgs) | Order Denying Application for Order Setting Hearing on Shortened Notice (BNC-PDF) (Related Doc # [24](#) ) Signed on 12/27/2017 (May, Thais D.) (Entered: 12/27/2017) |
| 12/27/2017 | [28](#) <br> (5 pgs) | Notice of Hearing *Amended Notice of Hearing for Motion of Four square Financial LP to Dismiss the Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP (RE: related document(s)[12](#) Motion to Dismiss Debtor *Notice of Motion and Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP). (Napolitano, Anthony) (Entered: 12/27/2017) |

| | | |
|---|---|---|
| 12/27/2017 | 29<br>(4 pgs) | Errata *Notice of Errata regarfding (I) Declaration of Leah S. Robbins and (II) Request for Judicial Notice in Support of Motion to Dismiss the Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP (RE: related document(s)12 Motion to Dismiss Debtor *Notice of Motion and Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)*). (Napolitano, Anthony) (Entered: 12/27/2017) |
| 12/27/2017 | 30<br>(4 pgs) | Errata *Notice of Errata regarding (I) Declaration of Leah S. Robbins and (II) Request for Judicial Notice in Support of Motion to Dismiss the Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP (RE: related document(s)13 Declaration, 14 Request for judicial notice). (Napolitano, Anthony) (Entered: 12/27/2017) |
| 12/27/2017 | 31 | Hearing Set (RE: related document(s)12 Dismiss Debtor filed by Creditor Four Square Financial LP) The Hearing date is set for 1/25/2018 at 09:00 AM at Crtrm 1575, 255 E Temple St., Los Angeles, CA 90012. The case judge is Sandra R. Klein (May, Thais D.) (Entered: 12/27/2017) |
| 12/29/2017 | 32<br>(11 pgs) | Objection (related document(s): 10 Chapter 13 Plan (LBR F3015-1) filed by Debtor Linda Roberta McCormick) *Four Square Financial, LLP's Objection to Confirmation of the Debtor's Chapter 13 Plan* Filed by Creditor Four Square Financial LP (Napolitano, Anthony) (Entered: 12/29/2017) |
| 12/29/2017 | 33<br>(209 pgs; 2 docs) | Request for judicial notice *in Support of Four Square Financial LP's Objection to Confirmation of the Debtor's Chapter 13 Plan* Filed by Creditor Four Square Financial LP (RE: related document(s)32 Objection). (Attachments: # 1 Part 2) (Napolitano, Anthony) (Entered: 12/29/2017) |
| 12/29/2017 | 34<br>(159 pgs) | Adversary case 2:17-ap-01589. Complaint by Linda Roberta McCormick, Anthony B McCormick against Four Square Financial LP, Alan E Robbins, Leah S Robbins, Howard Realty Group, Inc., Brett Allen Howard. (Fee Not Required). Nature of Suit: (21 (Validity, priority or extent of lien or other interest in property)),(02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))),(91 (Declaratory judgment)),(72 (Injunctive relief - other)),(14 (Recovery of money/property |

| | | |
|---|---|---|
| | | - other))(Totten, Cameron) (Entered: 12/29/2017) |
| 12/29/2017 | [35](#) (5 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)[27](#) ORDER shortening time (BNC-PDF)) No. of Notices: 1. Notice Date 12/29/2017. (Admin.) (Entered: 12/29/2017) |
| 01/09/2018 | 36 | Continuance of Meeting of Creditors (Rule 2003(e)) Filed by. 341(a) Meeting Continued to 2/2/2018 at 11:00 AM at RM 1, 915 Wilshire Blvd., 10th Floor,, Los Angeles, CA 90017. (Dockery (TR), Kathy) (Entered: 01/09/2018) |
| 01/10/2018 | [37](#) (4 pgs) | Opposition to (related document(s): [18](#) Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181, filed by Creditor Four Square Financial LP) Filed by Debtor Linda Roberta McCormick (Totten, Cameron) (Entered: 01/10/2018) |
| 01/10/2018 | [38](#) (4 pgs) | Declaration re: *of Debtor in Support of Opposition to Motion for Relief from Stay* Filed by Debtor Linda Roberta McCormick (RE: related document(s)[18](#) Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181,). (Totten, Cameron) (Entered: 01/10/2018) |
| 01/10/2018 | 39 | Notice to Filer of Error and/or Deficient Document **Incorrect/incomplete/unreadable PDF was attached to the docket entry. Requires Proof of Service THE FILER IS INSTRUCTED TO RE-FILE THE DOCUMENT WITH THE CORRECT PDF IMMEDIATELY.** (RE: related document(s)[37](#) Opposition filed by Debtor Linda Roberta McCormick, [38](#) Declaration filed by Debtor Linda Roberta McCormick) (May, Thais D.) (Entered: 01/10/2018) |
| 01/10/2018 | [40](#) (5 pgs) | Opposition to (related document(s): [18](#) Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181, filed by Creditor Four Square Financial LP, 39 Notice to Filer of Error and/or Deficient Document) Filed by Debtor Linda Roberta McCormick (Totten, Cameron) (Entered: 01/10/2018) |

| | | |
|---|---|---|
| 01/10/2018 | 41<br>(5 pgs) | Declaration re: *of Debtor in Support of Opposition to Motion for Relief from Stay* Filed by Debtor Linda Roberta McCormick (RE: related document(s)18 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181,). (Totten, Cameron) (Entered: 01/10/2018) |
| 01/11/2018 | 42 | Notice to Filer of Correction Made/No Action Required: **Other - No hearing information provided THIS ENTRY IS PROVIDED FOR FUTURE REFERENCE.** (RE: related document(s)40 Opposition filed by Debtor Linda Roberta McCormick) (Carranza, Shemainee) (Entered: 01/11/2018) |
| 01/13/2018 | 43<br>(4 pgs) | Opposition to (related document(s): 12 Motion to Dismiss Debtor *Notice of Motion and Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* filed by Creditor Four Square Financial LP) Filed by Debtor Linda Roberta McCormick (Totten, Cameron) (Entered: 01/13/2018) |
| 01/16/2018 | 44 | Notice to Filer of Error and/or Deficient Document **Document was filed in the incorrect case, or AP number should not be reflected on PDF. THE FILER IS INSTRUCTED TO RE-FILE THE DOCUMENT IN THE CORRECT CASE IMMEDIATELY.** (RE: related document(s)43 Opposition filed by Debtor Linda Roberta McCormick) (May, Thais D.) (Entered: 01/16/2018) |
| 01/16/2018 | 45<br>(4 pgs) | Opposition to (related document(s): 12 Motion to Dismiss Debtor *Notice of Motion and Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* filed by Creditor Four Square Financial LP) Filed by Debtor Linda Roberta McCormick (Totten, Cameron) (Entered: 01/16/2018) |
| 01/17/2018 | | Hearing (Bk Motion) Continued (RE: related document(s) 18 MOTION FOR RELIEF FROM STAY - REAL PROPERTY filed by Four Square Financial LP) Hearing to be held on 03/21/2018 at 08:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for 18 , (May, Thais D.) (Entered: 01/17/2018) |

| | | |
|---|---|---|
| 01/24/2018 | [46](#)<br>(5 pgs) | Stipulation By Four Square Financial LP and *the Debtor Continuing Various Dates and Deadlines in Bankruptcy Case and Adversary Proceeding* Filed by Creditor Four Square Financial LP (Napolitano, Anthony) (Entered: 01/24/2018) |
| 01/24/2018 | [47](#)<br>(5 pgs) | Notice of lodgment *Order Approving* Filed by Creditor Four Square Financial LP (RE: related document(s)[46](#) Stipulation By Four Square Financial LP and *the Debtor Continuing Various Dates and Deadlines in Bankruptcy Case and Adversary Proceeding* Filed by Creditor Four Square Financial LP). (Napolitano, Anthony) (Entered: 01/24/2018) |
| 01/24/2018 | [48](#)<br>(2 pgs) | Order Granting Stipulation Between Four Square Financial, LP and the Debtor Continuing Various Dates and Deadline (BNC-PDF) (Related Doc # [46](#) ) Signed on 1/24/2018 (May, Thais D.) (Entered: 01/24/2018) |
| 01/26/2018 | | Hearing (Bk Motion) Continued (RE: related document(s) [12](#) DISMISS DEBTOR filed by Four Square Financial LP) Hearing to be held on 03/21/2018 at 08:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for [12](#) , (May, Thais D.) (Entered: 01/26/2018) |
| 01/26/2018 | [49](#)<br>(3 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)[48](#) Stipulation and ORDER thereon (BNC-PDF)) No. of Notices: 1. Notice Date 01/26/2018. (Admin.) (Entered: 01/26/2018) |
| 01/30/2018 | [50](#)<br>(4 pgs) | Notice of Hearing Filed by. (Dockery (TR), Kathy) (Entered: 01/30/2018) |
| 02/21/2018 | [51](#)<br>(3 pgs) | Notice of Requirement to Complete Course in Financial Management (Auto VAN-105) (BNC). (AutoDocket, User) (Entered: 02/21/2018) |
| 02/24/2018 | [52](#)<br>(4 pgs) | BNC Certificate of Notice (RE: related document(s)[51](#) Notice of Requirement to Complete Course in Financial Management (Auto VAN-105) (BNC)) No. of Notices: 1. Notice Date 02/24/2018. (Admin.) (Entered: 02/24/2018) |
| 02/27/2018 | 53 | Continuance of Meeting of Creditors (Rule 2003(e)) Filed by. 341(a) Meeting Continued to 3/16/2018 at 11:00 AM at RM 1, 915 Wilshire Blvd., 10th Floor,, Los Angeles, CA 90017. (Dockery (TR), Kathy) (Entered: 02/27/2018) |

| 02/28/2018 | 54<br>(4 pgs) | Notice of Hearing Filed by. (Dockery (TR), Kathy) (Entered: 02/28/2018) |
|---|---|---|
| 02/28/2018 | 55<br>(3 pgs) | Notice of Hearing Filed by. (Dockery (TR), Kathy) (Entered: 02/28/2018) |
| 02/28/2018 | 56<br>(3 pgs) | Notice of Hearing Filed by. (Dockery (TR), Kathy) (Entered: 02/28/2018) |
| 03/14/2018 | 57<br>(9 pgs) | Reply to (related document(s): 37 Opposition filed by Debtor Linda Roberta McCormick, 40 Opposition filed by Debtor Linda Roberta McCormick, 43 Opposition filed by Debtor Linda Roberta McCormick, 45 Opposition filed by Debtor Linda Roberta McCormick) *Omnibus Reply to the Debtor's Opposition to Four Square's (I) Motion to Dismiss and (II) Motion for Relief From the Automatic Stay* Filed by Creditor Four Square Financial LP (Spector, Steven) (Entered: 03/14/2018) |
| 03/14/2018 | 58<br>(6 pgs) | Declaration re: *Declaration of Steven M. Spector in Support of Four Square' Financial Omnibus Reply to the Debtor's Opposition to Four Square's (I) Motion to Dismiss and (II) Motion for Relief from the Automatic Stay* Filed by Creditor Four Square Financial LP (RE: related document(s)57 Reply). (Spector, Steven) (Entered: 03/14/2018) |
| 03/19/2018 | 59<br>(3 pgs; 2 docs) | Notice of Appearance and Request for Notice by Ryan A Stubbe Filed by Debtor Linda Roberta McCormick. (Attachments: # 1 Proof of Service) (Stubbe, Ryan) (Entered: 03/19/2018) |
| 03/19/2018 | 60<br>(8 pgs) | Objection to Confirmation of Chapter 13 Plan . (Dockery (TR), Kathy) (Entered: 03/19/2018) |
| 03/22/2018 | | Hearing (Bk Motion) Continued (RE: related document(s) 12 DISMISS DEBTOR filed by Four Square Financial LP) Hearing to be held on 04/12/2018 at 09:00 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for 12 , (May, Thais D.) (Entered: 03/22/2018) |
| 03/23/2018 | 61<br>(6 pgs; 2 docs) | Notice of lodgment *of Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. Section 362 (Real Property)* Filed by Creditor Four Square Financial LP (RE: related document(s)24 Application shortening time *FOUR SQUARE FINANCIAL LPS MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL* |

| | | |
|---|---|---|
| | | *PROPERTY)* Filed by Creditor Four Square Financial LP (Spector, Steven). Related document(s) [23](#) Request for judicial notice filed by Creditor Four Square Financial LP. Modified on 12/27/2017 (May, Thais D.).). (Attachments: # [1](#) Proposed Order) (Napolitano, Anthony). Related document(s) [18](#) Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 211 Country Club Drive, Burbank, CA 91501 . Fee Amount $181, filed by Creditor Four Square Financial LP. Modified on 3/23/2018 (May, Thais D.). (Entered: 03/23/2018) |
| 03/23/2018 | [62](#) <br> (4 pgs; 2 docs) | Notice of lodgment *of Order Granting Motion for Four Square Financial, LP to Dismiss the Debtor's Bankruptcy Case* Filed by Creditor Four Square Financial LP (RE: related document(s)[12](#) Motion to Dismiss Debtor *Notice of Motion and Motion of Four Square Financial LP to Dismiss Debtor's Chapter 13 Bankruptcy Case Pursuant to 11 U.S.C. Section 1307(c)* Filed by Creditor Four Square Financial LP). (Attachments: # [1](#) Proposed Order) (Napolitano, Anthony) (Entered: 03/23/2018) |
| 03/23/2018 | [63](#) <br> (5 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # [18](#) ) Signed on 3/23/2018 (May, Thais D.) (Entered: 03/23/2018) |
| 03/23/2018 | [64](#) <br> (5 pgs) | ORDER Granting Motion to Dismiss the Debtor's Bankruptcy Case with restriction-period against re-filing a new bankruptcy case - **Debtor** Dismissed for 180 days. (BNC-PDF) Barred Debtor McCormick, Linda Roberta starting 3/23/2018 to 9/19/2018 Signed on 3/23/2018 (RE: related document(s)[3](#) Meeting (AutoAssign Chapter 13), [12](#) Dismiss Debtor filed by Creditor Four Square Financial LP, [18](#) Motion for Relief from Stay - Real Property filed by Creditor Four Square Financial LP, 53 Continuance of Meeting of Creditors (Rule 2003(e)) (by Trustee/US Trustee - No PDF)). (May, Thais D.) (Entered: 03/23/2018) |
| 03/23/2018 | [65](#) <br> (1 pg) | Notice of dismissal with restriction for against debtor's refiling (BNC) (May, Thais D.) (Entered: 03/23/2018) |
| 03/25/2018 | [66](#) <br> (2 pgs) | BNC Certificate of Notice (RE: related document(s)[65](#) Notice of dismissal with restriction for against debtor's refiling (BNC)) No. of Notices: 8. Notice Date 03/25/2018. (Admin.) (Entered: 03/25/2018) |

| | | |
|---|---|---|
| 03/25/2018 | 67<br>(6 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)63 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 03/25/2018. (Admin.) (Entered: 03/25/2018) |
| 03/25/2018 | 68<br>(6 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)64 ORDER of dismissal with special restriction-period against re-filing a new bankruptcy case (BNC-PDF)) No. of Notices: 1. Notice Date 03/25/2018. (Admin.) (Entered: 03/25/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/29/2018 15:22:36 | | | |
| **PACER Login:** | ctottenlaw:3479967:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:17-bk-24730-SK Fil or Ent: filed From: 11/29/2017 To: 3/29/2018 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

EXHIBIT "B"

**NoFeeRequired**

## U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Adversary Proceeding #: 2:17-ap-01589-SK

*Assigned to:* Sandra R. Klein                  *Date Filed:* 12/29/17
*Lead BK Case:* 17-24730
*Lead BK Title:* Linda Roberta McCormick
*Lead BK Chapter:* 13
*Demand:* $1000000

*Nature[s] of Suit:*  21 Validity, priority or extent of lien or other interest in property
                     02 Other (e.g. other actions that would have been brought in state court if unrelated to
                        bankruptcy)
                     91 Declaratory judgment
                     72 Injunctive relief - other
                     14 Recovery of money/property - other

*Plaintiff*
----------------------
**Linda Roberta McCormick**             represented by **Cameron H Totten**
211 Country Club Drive                               Law Offices of Cameron H Totten
Burbank, CA 91501                                 790 E. Colorado Blvd., 9th Floor
SSN / ITIN: xxx-xx-3221                           Pasadena, CA 91101
                                                 818-483-5795
                                                 Fax : 818-230-9817
                                                 Email: ctottenlaw@gmail.com

*Plaintiff*
----------------------
**Anthony B McCormick**              represented by **Cameron H Totten**
211 Country Club Place                               (See above for address)
Burbank, CA 91501
SSN / ITIN: xxx-xx-9221

V.

*Defendant*
----------------------
**Four Square Financial LP**           represented by **Anthony J Napolitano**
1760 AVENIDA DEL MUNDO                   Buchalter, A Professional Corporation
SUITE 1108                                         1000 Wilshire Blvd, Ste# 1500

CORONADO, CA 92118

Los Angeles, CA 90017-2457
213-891-5109
Fax : 213-630-5834
Email: anapolitano@buchalter.com

*Defendant*
----------------------
**Alan E Robbins**

represented by **Alan E Robbins**
PRO SE

*Defendant*
----------------------
**Leah S Robbins**, CA

represented by **Leah S Robbins**
PRO SE

*Defendant*
----------------------
**Howard Realty Group, Inc.**
3341 WEDGEWOOD LN
BURBANK, CA 91504

represented by **Howard Realty Group, Inc.**
PRO SE

*Defendant*
----------------------
**Brett Allen Howard**
3341 Wedgewood Lane
Burbank, CA 91504
SSN / ITIN: xxx-xx-9208

represented by **Brett Allen Howard**
PRO SE

*Trustee*
----------------------
**Kathy A Dockery (TR)**
801 Figueroa Street, Suite 1850
Los Angeles, CA 90017
(213) 996-4400

*U.S. Trustee*

**----------------------**

**United States Trustee (LA)**

915 Wilshire Blvd, Suite 1850

Los Angeles, CA 90017

(213) 894-6811

| **Filing Date** | **#** | **Docket Text** |
|---|---|---|
| 12/29/2017 | [1](#)<br>(159 pgs) | Adversary case 2:17-ap-01589. Complaint by Linda Roberta McCormick, Anthony B McCormick against Four Square Financial LP, Alan E Robbins, Leah S Robbins, Howard Realty Group, Inc., Brett Allen Howard. (Fee Not Required). Nature of Suit: (21 (Validity, priority or extent of lien or other interest in property)),(02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))),(91 (Declaratory judgment)),(72 (Injunctive relief - other)),(14 (Recovery of money/property - other)) (Totten, Cameron) (Entered: 12/29/2017) |
| 01/04/2018 | [2](#)<br>(6 pgs; 2 docs) | Summons Issued on Four Square Financial LP Date Issued 1/4/2018, Answer Due 2/5/2018; Brett Allen Howard Date Issued 1/4/2018, Answer Due 2/5/2018; Howard Realty Group, Inc. Date Issued 1/4/2018, Answer Due 2/5/2018; Alan E Robbins Date Issued 1/4/2018, Answer Due 2/5/2018; Leah S Robbins Date Issued 1/4/2018, Answer Due 2/5/2018 (RE: related document(s)[1](#) Complaint filed by Plaintiff Linda Roberta McCormick, Plaintiff Anthony B McCormick) Status hearing to be held on 3/7/2018 at 09:00 AM at Crtrm 1575, 255 E Temple St., Los Angeles, CA 90012. The case judge is Sandra R. Klein (Carranza, Shemainee) (Entered: 01/04/2018) |
| 01/04/2018 | [3](#)<br>(2 pgs) | Notice *of Mandatory Compliance with Local Bankruptcy Rule 7026-1 AND FRBP 7026* Filed by Plaintiffs Anthony B McCormick, Linda Roberta McCormick. (Totten, Cameron) (Entered: 01/04/2018) |
| 01/24/2018 | [4](#)<br>(5 pgs) | Stipulation By Four Square Financial LP and *the Debtor Continuing Various Dates and Deadlines in Bankruptcy Case and Adversary Proceeding* Filed by Defendant Four Square Financial LP (Napolitano, Anthony) (Entered: 01/24/2018) |
| 01/24/2018 | [5](#)<br>(5 pgs) | Notice of lodgment *Order Approving* Filed by Defendant Four Square Financial LP (RE: related document(s)[4](#) Stipulation By Four Square Financial LP and *the Debtor Continuing Various* |

|  |  | *Dates and Deadlines in Bankruptcy Case and Adversary Proceeding* Filed by Defendant Four Square Financial LP filed by Defendant Four Square Financial LP). (Napolitano, Anthony) (Entered: 01/24/2018) |
|---|---|---|
| 01/24/2018 | 6 (2 pgs) | Order Granting Stipulation Between Four Square Financial, LP and the Debtor Continuing Various Dates and Deadlines (BNC-PDF) (Related Doc # 4 ) Signed on 1/24/2018 (May, Thais D.) (Entered: 01/24/2018) |
| 01/26/2018 | 7 (3 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)6 Stipulation and ORDER thereon (BNC-PDF)) No. of Notices: 5. Notice Date 01/26/2018. (Admin.) (Entered: 01/26/2018) |
| 03/02/2018 |  | Hearing (Adv Other) Continued (RE: related document(s) 1 COMPLAINT filed by Linda Roberta McCormick) Status Hearing to be held on 03/21/2018 at 08:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for 1 , (May, Thais D.) (Entered: 03/02/2018) |
| 03/14/2018 | 8 (5 pgs) | Status report *Joint Status Report* Filed by Defendant Four Square Financial LP (RE: related document(s) Hearing (Adv Other) Continued). (Napolitano, Anthony) (Entered: 03/14/2018) |
| 03/22/2018 |  | Hearing (Adv Other) Continued (RE: related document(s) 1 COMPLAINT filed by Linda Roberta McCormick) Status Hearing to be held on 05/03/2018 at 08:30 AM 255 E. Temple St. Courtroom 1575 Los Angeles, CA 90012 for 1 , (May, Thais D.) (Entered: 03/22/2018) |
| 03/23/2018 | 9 (4 pgs; 2 docs) | Notice of lodgment *of Status Conference and Scheduling Order Pursuant to LBR 7016-1(a)(4)* Filed by Defendant Four Square Financial LP (RE: related document(s)1 Adversary case 2:17-ap-01589. Complaint by Linda Roberta McCormick, Anthony B McCormick against Four Square Financial LP, Alan E Robbins, Leah S Robbins, Howard Realty Group, Inc., Brett Allen Howard. (Fee Not Required). Nature of Suit: (21 (Validity, priority or extent of lien or other interest in property)),(02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))),(91 (Declaratory judgment)),(72 (Injunctive relief - other)),(14 (Recovery of money/property - other)) filed by Plaintiff Linda Roberta McCormick, Plaintiff Anthony B McCormick). (Attachments: # 1 Proposed Order)(Napolitano, |

| | | | Anthony) (Entered: 03/23/2018) |
|---|---|---|---|
| 03/23/2018 | 10 (3 pgs) | | Status Conference and Scheduling Order (BNC-PDF) Signed on 3/23/2018. (May, Thais D.) (Entered: 03/23/2018) |
| 03/25/2018 | 11 (4 pgs) | | BNC Certificate of Notice - PDF Document. (RE: related document(s)10 Scheduling Order (BNC-PDF)) No. of Notices: 5. Notice Date 03/25/2018. (Admin.) (Entered: 03/25/2018) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/29/2018 15:24:28 | | |
| **PACER Login:** | ctottenlaw:3479967:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:17-ap-01589-SK Fil or Ent: filed From: 12/29/2017 To: 3/29/2018 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

EXHIBIT"C"

LAW OFFICES OF CAMERON H. TOTTEN
Cameron H. Totten, Esq. (State Bar No. 180765)
790 E. Colorado Blvd., 9th Floor
Pasadena, California 91101
Telephone:(818) 483-5795
Facsimile:(818) 230-9817
Email: ctotten@ctottenlaw.com

Attorney for Plaintiffs LINDA ROBERTA MCCORMICK and ANTHONY B. MCCORMICK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | **CASE NO.: 2:17-bk-24730-SK** |
| LINDA ROBERTA MCCORMICK, | **CHAPTER 13** |
| DEBTOR. | **ADV. PROC. NO.:** |
| _____ | **ADVERSARY COMPLAINT FOR:** |
| LINDA ROBERTA MCCORMICK, an individual; and ANTHONY B. MCCORMICK, an individual, | 1) **TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIENS UNDER F.B.R.P. 7001(2);** |
| PLAINTIFF, | 2) **VIOLATION OF THE TRUTH IN LENDING ACT – DAMAGES AND RESCISSION;** |
| vs. | 3) **VIOLATION OF THE HOME OWNERSHIP AND EQUITY PROTECTION ACT – DAMAGES AND RESCISSION;** |
| FOUR SQUARE FINANCIAL LP, a California limited partnership; ALAN E. ROBBINS, an individual; LEAH S. ROBBINS, an individual; HOWARD REALTY GROUP, INC., a California corporation; BRETT ALLEN HOWARD, an individual; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1-50, inclusive, | 4) **VIOLATION OF CALIFORNIA FINANCE CODE SECTION 4973 ET SEQ.;** |
| | 5) **BREACH OF CONTRACT;** |
| | 6) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| | 7) **RESCISSION;** |
| | 8) **NEGLIGENCE;** |
| | 9) **BREACH OF FIDUCIARY DUTY;** |
| | 10) **BROKER MALPRACTICE;** |
| | 11) **CANCELLATION OF INSTRUMENTS;** |
| | 12) **QUIET TITLE;** |

Defendants. )        13) **VIOLATION OF CALIFORNIA**
) **WELFARE AND INSTITUTIONS**
) **CODE SECTION 15600 ET SEQ**.
) **(ELDER ABUSE);**
)        14) **UNFAIR PRACTICES UNDER**
) **CALIFORNIA BUSINESS &**
) **PROFESSIONS CODE SECTION**
) **17200, ET SEQ;**
)        15) **FRAUD AND DECEIT;**
)        16) **UNCONSCIONABILITY; AND**
)        17) **DECLARATORY RELIEF**
)
) **DEMAND FOR JURY TRIAL**
)
_____ )

Plaintiff/Debtor Linda Roberta McCormick ("Plaintiff" or "Ms. McCormick") and

Plaintiff/Non-Filing Spouse Anthony B. McCormick ("Mr. McCormick") (collectively referred

to herein as "Plaintiffs") hereby allege as follows:

**I.**

**JURISDICTION**

1.       This is an adversary proceeding under F.B.R.P. Rule 7001 of the Federal Rules of

Bankruptcy Procedure.  This adversary proceeding is related to In re Linda Roberta McCormick,

Chapter 13 Case No. 2:17-bk-24730-SK, filed in the United States Bankruptcy Court for the

Central District of California. The Court has jurisdiction under 28 U.S.C. § 1334.  This Court is

authorized to hear and determine all cases under Title 11 and all core proceedings arising under

Title 11.  See 28 U.S.C. § 157(b).  This adversary proceeding is a core proceeding pursuant to 28

U.S.C. §§ 157(a)(2)(B), (K) & (O).   In the event this adversary is determined to be non-core,

Plaintiffs do not consent to entry of final orders or judgment by the bankruptcy judge.

2.       Venue resides in this Court pursuant to 28 U.S.C. § 1409.

3.       Plaintiffs have standing to bring this action as they are either the debtor or parties

in interest with a pecuniary interest in the outcome of this adversary proceeding and the

adjudication of the matters described herein.

///

**II.**

**PARTIES**

4. Plaintiffs are married and individuals residing in the County of Los Angeles. Ms. McCormick is the owner and titleholder of certain real property commonly known as 211 Country Club Drive, Burbank, California 91501, and legally described on Page 132 of the Exhibits (Deed of Trust ("DOT"), Exhibit "4") attached hereto (the "Property"). Ms. McCormick turned 65 in 2016. Mr. McCormick, a veteran of the United States Marine Corps, has a community property interest in the Property. Plaintiffs purchased the Property in 1977. At all times mentioned herein, Mr. McCormick was over the age of 65. Plaintiffs reside in the Property.

5. Defendant FOUR SQUARE FINANCIAL LP ("FSF"), is a California limited partnership which makes mortgage loans in the State of California but is not licensed by any agency or government entity overseeing mortgage lending. FSF is the lender for the mortgage loan secured by the Property.

6. Plaintiffs are informed and believe, and thereon allege, that, at all times alleged herein, Defendant ALAN E. ROBBINS ("Mr. Robbins") is an individual residing in the State of California and a general partner of FSF. Plaintiffs are further informed and believe, and thereon allege, that, Mr. Robbins was a California State Senator from 1973 until he resigned in 1991 while federal racketeering and tax evasion charges were pending. While serving a federal prison term for the above federal corruption charges, he plead guilty to an additional charge of providing false information to obtain a loan. Mr. Robbins served approximately 20 months in federal prison and was ordered to pay back substantial amounts of money as part of the convictions. Thereafter, Mr. Robbins resigned from the State Bar of California with charges pending. Mr. Robbins is not a licensed real estate broker or mortgage lender in the State of California. Plaintiffs are further informed and believe and based thereon allege that FSF is the alter ego of Mr. Robbins.

7. Plaintiffs are informed and believe, and thereon allege, that, at all times alleged

1   herein, Defendant LEAH S. ROBBINS ("Ms. Robbins") is an individual residing in the State of

2   California and a general partner of FSF.  Plaintiffs are informed and believe and based thereon

3   allege that FSF is the alter ego of Ms. Robbins.

4         8.     Defendant HOWARD REALTY GROUP, INC. ("HRG") is a California

5   corporation doing business in the State of California as a mortgage and real estate broker.

6         9.     Defendant BRETT ALLEN HOWARD ("Howard") is an individual residing in

7   Los Angeles County, a licensed real estate broker and a principal of HRG.

8         10.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein

9   as DOES 1 through 50, inclusive, and, therefore, sues them by such fictitious names.  Plaintiffs

10   will amend this complaint to allege their true names and capacities when ascertained.

11         11.    The Defendants herein named as "all persons unknown, claiming any legal or

12   equitable right, title, estate, lien, or interest in the property described in the complaint adverse to

13   plaintiffs' title or any cloud on plaintiffs' title thereto" are hereinafter referred to as the

14   "unknown defendants" and are unknown to Plaintiffs.  These unknown defendants and each of

15   them claim or appear to claim some right, title, estate, lien, or interest in the Property described

16   in Paragraph 1 herein, adverse to Plaintiffs' title.  Their claims, and each of them, constitute a

17   cloud on Plaintiffs' title to the Property.

18         12.    Defendants sued herein as DOES 1 through 50 are contractually, strictly,

19   negligently, intentionally, vicariously liable, and/or otherwise legally responsible in some

20   manner for each and every act, omission, obligation, event or happening set forth in this

21   Complaint, and that each of said fictitiously named Defendants is indebted to Plaintiffs as

22   hereinafter alleged.

23         13.    The use of the term "Defendants" in any of the allegations in this Complaint,

24   unless specifically alleged otherwise, is intended to include and charge both jointly and severely,

25   not only named Defendants, but all DOE Defendants as well.  The use of the terms "Howard

26   Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise,

27   are intended to include Defendants HRG, Howard and DOES 1 through 50 collectively.  The use

28

1  of the term "FSF Defendants" in any of the allegations in this Complaint, unless specifically

2  alleged otherwise, are intended to include FSF, Mr. Robbins, Ms. Robbins and DOES 1 through

3  50 collectively.

4       14.    Plaintiffs are informed and believe, and thereon allege, that, at all times alleged

5  herein, Defendants were the agents, servants, employees, alter egos, superiors, successors in

6  interest, joint venture, and/or co-conspirators of each of their co-defendants and in doing the

7  things herein after alleged, or acting within the course and scope of their authority of such

8  agents, servants, employees, alter egos, superiors, successors in interest, joint venture, and/ or

9  co-conspirators with the permission and consent of their co-defendants.  Consequently, each

10  Defendant named herein, and those Defendants named herein as DOES 1 through 50, inclusive,

11  are jointly and severally liable to Plaintiffs for the damages and harm sustained as a result of

12  their wrongful conduct.

13       15.    Defendants, and each of them, aided and abetted, encouraged, and rendered

14  substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as

15  alleged herein.  In taking action, as alleged herein, to aid and abet and substantially assist the

16  commissions of these wrongful acts and other wrongdoings complained of, each of the

17  Defendants acted with an awareness of its primary wrongdoing and realized that its conduct

18  would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and

19  wrongdoing.

20       16.    Defendants, and each of them, knowingly and willfully conspired, engaged in a

21  common enterprise, and engaged in a common course of conduct to accomplish the wrongs

22  complained of herein.  The purpose and effect of the conspiracy, common enterprise, and

23  common course of conduct complained of was, inter alia, to financially benefit Defendants at the

24  expense of Plaintiffs by engaging in fraudulent activities.  Defendants accomplished their

25  conspiracy, common enterprise, and common course of conduct by misrepresenting and

26  concealing material information regarding the servicing of loans, and by taking steps and

27  making statements in furtherance of their wrongdoing as specified herein.  Each Defendant was

28

---

PLAINTIFFS' ADVERSARY COMPLAINT
5

1  a direct, necessary and substantial participant in the conspiracy, common enterprise and common

2  course of conduct complained of herein, and was aware of its overall contribution to and

3  furtherance thereof.  Defendants' wrongful acts include, inter alia, all the acts that each of them

4  are alleged to have committed in furtherance of the wrongful conduct of complained of herein.

5       17.    Any applicable statutes of limitations have been tolled by the Defendants'

6  continuing, knowing, and active concealment of the facts alleged herein.  Despite exercising

7  reasonable diligence, Plaintiffs could not have discovered, did not discover, and was prevented

8  from discovering, the wrongdoing complained of herein.

9       18.    In the alternative, Defendants should be estopped from relying on any statutes of

10  limitations.  Defendants have been under a continuing duty to disclose the true character, nature,

11  and quality of their financial services and mortgage servicing practices.  Defendants owed

12  Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and

13  discharge such duty.

14                                  **III.**

15                  **<u>BACKGROUND & SUBSTANTIVE ALLEGATIONS</u>**

16       19.    This action arises out of a equity skimming scam perpetrated by Defendants on

17  Plaintiffs who are senior citizens and not sophisticated in the area of real estate financing.  Based

18  on Defendants' wrongful conduct, Plaintiffs have lost over $600,000, in their Property in less

19  than two years.  As a result, they have no equity left in the Property as a result of Defendants'

20  egregious conduct and unconscionable lending and brokering practices.

21       20.    Plaintiffs paid off the original mortgage on the Property.  Thereafter, Plaintiffs

22  entered into a mortgage loan with Wells Fargo with an original principal balance of $417,000.

23  However, as a result of health problems which continued throughout all times mentioned herein,

24  Plaintiffs fell behind on their mortgage payments.  In December 2015, Plaintiffs were

25  approximately $120,000 in default on their Wells Fargo loan which had a principal balance at

26  that time of approximately $380,000.  Wells Fargo noticed a trustee's sale on the Property for on

27  or around January 6, 2016.

28

21.     Accordingly, as a result of the default and Plaintiffs' desire to keep their home, in mid-December 2015, Plaintiffs approached Howard, a longtime friend, about their options for saving their home and obtaining a loan to cure the default on the Wells Fargo loan.  In response, Howard represented to Plaintiffs that the FSF Defendants may be able to provide them with a loan to cure the default.  Unbeknownst to Plaintiffs at the time, none of the FSF Defendants was a licensed mortgage lender or broker.  Instead, the FSF Defendants intended to, and did, use the Howard Defendants to act as mortgage brokers for the proposed transaction.

22.     At the time, Ms. McCormick was in a Chapter 13 bankruptcy plan.  However, the Court had granted Wells Fargo's motion for relief from stay to allow it to foreclose on the Property.  Once the FSF Defendants learned of the Chapter 13 bankruptcy, they stated that they would only do the loan if it was structured in a complex, convoluted and deceptive way in which the money would be loaned to Mr. McCormick who would then loan it to Ms. McCormick conditioned on the dismissal of the Chapter 13 bankruptcy.  Plaintiffs did not understand the need for this loan structure but the trustee's sale date was now rapidly approaching.  Accordingly, having little choice, Plaintiffs agreed to the proposed loans so that they could cure the default on their Wells Fargo mortgage.

23.     However, the FSF Defendants were not done yet and the terms of the proposed loan continued to change.   The FSF Defendants made several more proposals, none of which Plaintiffs rejected as they were desperate to get a deal done.  Each successive proposal would increase the fees that Defendants would get under the deal.  The FSF Defendants' final proposal included substantial additional funds for remodeling of the Property.  Thus, Plaintiffs' initial desire to obtain a loan to cure the default on the Wells Fargo loan had grown to a refinance and payoff of the Wells Fargo Mortgage plus an additional $244,500 for remodeling projects on the Property.  Once the FSF Defendants realized the equity skimming potential of Plaintiffs and the Property, they were no longer interested in anything else.

24.     The final loan also consisted of $84,000 in loan fees, $2500 in title charges, $7500 in legal fees, $1500 to pay off back property taxes and $244,500 in "reserve" for future

remodeling advances, for a total of $840,000, all of which at the outrageous rate of 12% interest (with a default rate of 18%) and due and payable in 6 months.  As the FSF Defendants wrongfully included the loan fees, title charges, legal fees and "reserve" in the principal amount, they then charged interest on the fees as well.  Nevertheless, as the trustee's sale was now only days away, Plaintiffs were stuck and now were resigned to the fact that their only option was to agree to the FSF Defendants' onerous and unconscionable terms and hope that they could sell the Property to salvage some of the equity in it.  They were convinced by Defendants that they could not save their home under any circumstance.  Thus, they had to salvage whatever they could of the equity left in it by going along with the remodeling plans and selling it.

25.    Ms. McCormick was forced to sign disclosures and other loan documents which were often incomplete or blank.  With regard to the disclosures, she did not date her signature.  Nevertheless, the date of January 4, 2016, was later added to her signature blocks even though the date on the documents was January 8, 2016.  Plaintiffs are informed and believe, and thereon allege, that, all of the disclosures and markings on the forms were not there when she signed them.  Handwritten terms were also added.  A copy of the disclosures provided to Plaintiffs is attached hereto as Exhibit "1."

26.    Thereafter, Plaintiffs were presented with several versions of loan documents which were lengthy, confusing and complex, and often incomplete.  Some of the documents were backdated and each version contained different structures, proposals and terms.  Plaintiffs were forced to sign several documents that were not in their final form.  The final loan documents consisted of a loan agreement (30 pages) ("Loan Agreement"), promissory note (6 pages) ("Note"), DOT (26 pages) and guaranty agreement with Mr. McCormick as the guarantor (12 pages) ("Guaranty Agreement"), copies of which are attached hereto as Exhibits "2," "3," "4" and "5," respectively.  The FSF Defendants, who were represented by a major law firm, knew that Plaintiffs were not represented by an attorney and that all of the advice they were receiving regarding this transaction came from the Howard Defendants who were being paid outrageous amounts for very little work and had a conflict of interest.

PLAINTIFFS' ADVERSARY COMPLAINT
8

27. Plaintiffs began remodeling the property with the $150,000 portion of the loan for that purpose. However, Plaintiffs were not able to complete the remodeling project within the initial 6 month period. Thus, it could not be sold for an amount that would allow Plaintiffs to salvage much, if any, equity out of the sale. Once the 6 month period ended, the FSF Defendants threatened to immediately commence foreclosure proceedings. Alternatively, FSF Defendants offered to forbear the foreclosure of the Property for an additional 6 months for a fee of approximately $90,000, and a default interest rate of 18% ("Forebearance Agreement") Defendants knew or should have known that Plaintiffs had no ability to pay the loan without selling the Property and that the added fees and 18% interest would essentially ensure that Plaintiffs would receive nothing from any sale of the Property. Thus, the Forebearance Agreement effectively skimmed the remaining equity out of the Property. A copy of the Forebearance Agreement is attached hereto as Exhibit "6." No disclosures were provided in connection with the Forebearance Agreement. (The Forebearance Agreement, Loan Agreement, Note, DOT and Guaranty Agreement are collectively referred to herein as the "Loan").

28. The FSF Defendants currently claim a lien in the amount of $1,265,550.37, even though the FSF Defendants only paid $650,000 to or on behalf of Plaintiffs, i.e., $500,000 to Wells Fargo and $150,000 for remodeling the Property. Thus, Defendants charged Plaintiffs approximately $615,000 in interests, fees and charges in less than two years, with the amount growing daily. Thus, the interest, fees and charges added to the Loan make up approximately 95% of the actual loan amount. Moreover, the amount of the lien includes the remainder of the "reserve" amount which was never paid to Plaintiffs, i.e., $94,500 ($244,500 (reserve) minus $150,000 payment for remodeling). The amount of the lien on the Property is now greater than the amount that it could be sold for (minus costs of sale).

29. Defendants took advantage of Plaintiffs while they were ailing and vulnerable. They were led to believe that the loan could bring them some positive benefit. However, Defendants simply saw targets with substantial equity in their property and proceeded to steal all of it. Defendants' conduct was wrongful and illegal.

---

**IV.**

**FIRST CLAIM FOR RELIEF**

**TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIENS UNDER**

**F.B.R.P. 7001(2)**

**(PLAINTIFF LINDA ROBERTA MCCORMICK AGAINST THE FSF DEFENDANTS)**

30.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 29, inclusive, as though fully set-forth herein.

31.    The FSF Defendants' Note and Deed of Trust were obtained by fraud and in violation of both federal and California law as set forth herein.

32.    FSF Defendants' violations and fraudulent conduct void the instruments. Alternatively, FSF Defendants' interests are limited to the amounts paid to or on behalf of Plaintiffs plus reasonable interest and fees.

33.    The Loan documents and any Proof of Claim filed by the FSF Defendants are all unenforceable as a matter of law.

34.    Plaintiff respectfully requests a judicial determination that the FSF Defendants do not have a valid security interest secured in the Property whether based on the Note, Deed of Trust, Proof of Claim and/or any related instrument or, alternatively, it is limited to the amount paid to or on behalf of Plaintiff.

**V.**

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF THE TRUTH IN LENDING ACT – DAMAGES AND RESCISSION**

**(PLAINTIFF LINDA ROBERTA MCCORMICK AGAINST ALL DEFENDANTS)**

35.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 34, inclusive, as though fully set-forth herein.

36.    Pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and Regulation Z, 12 CFR 1026 ("Regulation Z") promulgated thereto, a "creditor" is defined as a person who both (1) regularly extends consumer credit which is payable by agreement in more

1  than four installments or for which the payment of a finance charge is or may be required; and

2  (2) is the person to whom the debt arising from the consumer credit transaction is initially

3  payable on the face of the evidence of indebtedness.

4      37.    In pertinent part, pursuant to Regulation Z § 1026.2(a)(17), a person regularly

5  extends consumer credit if it extended credit more than five times for transactions secured by a

6  dwelling in the preceding calendar year.  Pursuant to TILA § 1602(g), a "creditor" also means

7  any person who originates two or more high-cost mortgages in any 12-month period (as defined

8  by TILA § 1602(bb)).

9      38.    TILA § 1602(bb)(1)(A) and Regulation Z § 1026.32(a)(1) define the term "high

10 cost mortgage" to mean any consumer credit transaction that is secured by the consumer's

11 principal dwelling that meets one of the definitions of "high-cost mortgage."

12     39.    Based upon information and belief, the FSF Defendants are "creditors" pursuant

13 to TILA and Regulation Z.  Also, the Loan is a "high-cost mortgage" pursuant to TILA and

14 Regulation Z secured by Ms. McCormick's principal dwelling.

15     40.    Also, at all relevant times, the FSF Defendants and the Howard Defendants were

16 mortgage originators as defined by TILA § 1602(cc)(2) because: (a) they were directly or

17 indirectly compensated for taking Plaintiff's Loan application; (b) they assisted Plaintiff in

18 obtaining or applying to obtain a Loan; or (c) they offered or negotiated the terms of the Loan.

19 The FSF Defendants are also mortgage originators because they represented to the public,

20 through advertising and other means of communication, that it can and will provide those

21 services.

22     41.    The Howard Defendants are "creditors" as defined by TILA because they are

23 mortgage originators under TILA as well and the Loan is a high-cost mortgage.  Because the

24 FSF Defendants and the Howard Defendants are all considered "creditors" under TILA,

25 pursuant to TILA § 1631(b) and Regulation Z § 1026.17(d), they are all liable for any TILA

26 violations in connection with the loan.

27     42.    The disclosure statement issued in conjunction with this consumer credit

28

transaction violated the requirements of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") by: (a) Failing to provide the required disclosures prior to consummation of the transaction in violation of TILA 1638(b), and Regulation Z § 1026.17(b); (b) Failing to make required disclosures, including the annual percentage rate and finance charges, clearly and conspicuously in writing in violation of TILA § 1632(a) and Regulation Z § 1026.17(a); (c) Failing to include in the finance charge certain charges imposed by the Defendants payable by Plaintiffs incident to the extension of credit as required by TILA § 1605 and Regulation Z § 1026.4 and, thus, improperly disclosing the finance charge in violation of  TILA § 1638(a)(3) and Regulation Z § 1026.18(d) including, but not limited to, $84,000 in loan fees, $2500 in title charges, $50,000 in broker fees and $7500 in legal fees.  TILA § 1605 and Regulation Z § 1026.4; (d) Calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed in violation of TILA § 1606 and Regulation Z § 1026.22 and, thus, understating the disclosed annual percentage rate in violation of TILA § 1638(a)(4) and Regulation Z § 1026.18(e).

43.    Also, TILA § 1639c(a)(1) prohibits a creditor from making a residential mortgage loan unless the creditor makes a reasonable good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan according to its terms.

44.    Pursuant to TILA § 1639c(a)(3), a consumer's ability to repay a residential mortgage loan must include consideration of the consumer's credit history, current income, expected income, current obligations, debt-to-income ratio, employment status, and other financial resources other than the consumer's equity in the dwelling or real property that secures repayment of the loan.  The creditor must verify amounts of income or assets that a creditor relies on to determine repayment ability, including expected income or assets, by reviewing the consumer's W-2s, tax returns, payroll receipts, financial institution records, or other third-party documents that provide reasonably reliable evidence of the consumer's income or assets.

45.    Defendants did not consider Plaintiff's credit history, income, employment, debt-

1    to-income ratio or financial resources in deciding whether to approve the Loan and made such

2    determination almost entirely on the basis of the equity in the Property.

3         46.    As a result, Defendants violated the provisions of TILA § 1639c(a)(1) because

4    they made a residential mortgage loan to Plaintiff without making a reasonable good faith

5    determination of her ability to pay.

6         47.    TILA § 1639c(e)(a) and (3) prohibits any provisions of any residential mortgage

7    loan that requires arbitration to resolve any controversy or settle any claims or bars a consumer

8    from bringing an action in any appropriate district court of the United States, or any other court

9    of competent jurisdiction, for a violation of TILA, HOEPA or any other federal law against a

10    creditor or a mortgage originator.  However, the Loan includes provisions that purport to do so,

11    in violation of TILA § 1639c(e)(3).

12         48.    As a result of Defendants' violations of TILA § 1639c(a)(1), Plaintiff is entitled

13    to the sum of: (i) any actual damages sustained by Plaintiff; (ii) statutory damages in such

14    amount as the court may allow; (iii) an amount equal to the sum of all finance charges and fees

15    paid by Plaintiff; and (iv) the costs of the action, together with reasonable attorneys' fees as

16    determined by the Court.

17         49.    By reason of the aforesaid violations of TILA and Regulation Z, Defendants are

18    liable to Plaintiff in the amount of twice the finance charge or $2,000, whichever is less; actual

19    damages to be determined at trial; and attorney's fees and costs in accordance with TILA, §

20    1640.

21         50.    Additionally, Ms. McCormick hereby exercises her right to rescind the Loan

22    pursuant to TILA §§ 1635 and 1639, and Regulation Z § 1026.23.

23    ///

24    ///

25    ///

26

27

28

# VI.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF THE HOME OWNERSHIP AND EQUITY PROTECTION ACT --

## DAMAGES AND RESCISSION

## (PLAINTIFF LINDA ROBERTA MCCORMICK AGAINST ALL DEFENDANTS)

51.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 50, inclusive, as though fully set-forth herein.

52.     The Loan is a high rate mortgage within the meaning of the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 USC §§ 1602(aa) and 1639, in that the total "points and fees," as defined in that section, that Defendants charged Plaintiff exceeded 8 percent of the total loan amount and/or the annual percentage rate at the consummation of the Loan exceeded by more than 8 percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which Defendants received Plaintiff's loan application.

53.     Based upon information and belief, the FSF Defendants extended credit to consumers under high rate mortgages, as defined by 15 USC § 1602(aa), based on the consumer's collateral without regard to the consumers' repayment ability, including their current and expected income, current obligations and employment, in violation of 15 USC § 1639(h).

54.     Based upon information and belief, Defendants required or induced Ms. McCormick to borrow substantially more money than she was seeking, and in an amount beyond her ability to pay, based primarily on Defendants' evaluation of the amount of equity in the Property.

55.     Because the transaction described herein met the HOEPA definition of a high rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three days in advance of the consummation of the transaction.  15 USC § 1639(h).

56.     Defendants furnished a HOEPA disclosure form to Ms. McCormick three days prior to the settlement, but it did not comply with HOEPA in that, among other things, it

1    disclosed the wrong annual percentage rate, it failed to print the required warnings in

2    conspicuous type size, it included the Note rate along with the APR to detract from or

3    overshadow the APR disclosure, and it failed to disclose the required balloon payment.

4         57.    Additionally, the Loan includes abusive terms prohibited by HOEPA, including,

5    but not limited to, balloon payments and penalty interest rates upon default,

6         58.    Defendants failed to deliver all the "material" disclosures required by TILA to

7    Ms. McCormick in connection with the transaction.

8         59.    By reason of the aforesaid violations of HOEPLA, Defendants are liable to

9    Plaintiff for actual damages, statutory damages and attorney's fees and costs.

10         60.    Also, because of the violations of HOEPA and TILA set forth above, Ms.

11    McCormick retained the right to rescind the transaction up to three years after its consummation.

12         61.    Ms. McCormick hereby exercises her right to rescind the Loan pursuant to TILA

13    §§ 1635 and 1639, and Regulation Z § 1026.23.

14    **VII.**

15    **FOURTH CLAIM FOR RELIEF**

16    **VIOLATION OF CALIFORNIA FINANCE CODE SECTION 4973 ET SEQ.;**

17    **(PLAINTIFFS AGAINST ALL DEFENDANTS)**

18         62.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

19    through 61, inclusive, as though fully set-forth herein.

20         63.    California Financial Code § 4970(h) defines "originate" to mean arrange,

21    negotiate, or make a consumer loan.

22         64.    At all times mentioned herein, the Howard Defendants originated consumer loans

23    because they arranged the Loan at issue.  Therefore, the Howard Defendants are subject to the

24    provisions of California's Covered Loan Law, California Financial Code § 4970, et seq.

25         65.    Additionally, the FSF Defendants made the Loan.  Thus, they are also subject to

26    the provisions of the Covered Loan Law.

27         66.    California Financial Code § 4970(d) defines a "consumer loan" as a consumer

28

1    credit transaction that is secured by real property located in the State of California that is used as

2    the principal dwelling of the consumer.

3        67.    California Financial Code § 4970(b) defines a "covered loan" to mean a

4    consumer loan where the total points and fees exceed six percent of the total loan amount.  The

5    Loan is a "covered loan" under this definition.

6        68.    California Financial Code § 4973(f) prohibits a person who originates covered

7    loans from making or arranging a covered loan unless at the time the loan is consummated, the

8    person reasonably believes the borrower will be able to make the scheduled payments to repay

9    the obligation upon consideration of his or her current and expected income, current obligations,

10   employment status, and other financial resources, other than the borrower's equity in the

11   dwelling that secures repayment of the loan.

12       69.    Defendants originated covered loan(s) to Plaintiffs without considering their

13   current and expected income, current obligations, employment status, and other financial

14   resources and based its approval of the Loan almost entirely on the equity in the dwelling that

15   secured the Loan.

16       70.    California Financial Code § 4973(k) prohibits a covered loan from being made

17   unless the disclosure as set forth in California Financial Code § 4973(k), written in 12-point font

18   or larger, has been provided to the consumer no later than three business days prior to signing of

19   the loan documents of the transaction.

20       71.    Defendants did not provide the disclosure required by California Financial Code

21   § 4973(k) to Plaintiffs before or after any of the Loan documents were signed.

22       72.    California Financial Code § 4973(n) prohibits a person who originates a covered

23   loan from acting in any manner, whether specifically prohibited by California Financial Code §

24   4973 or not, that constitutes fraud.

25       73.    As alleged herein, Defendants engaged in fraudulent conduct in their scheme to

26   take the equity out of the Property.  These acts constitute fraud and are prohibited by California

27   Financial Code § 4973(n).

28

74.     As a proximate result of the wrongful conduct alleged herein, Plaintiffs are entitled to actual damages and attorney's fees and costs in an amount to be determined at trial.

75.     As Defendants' conduct was willful and knowing, Plaintiffs are entitled to recover damages in the amount of fifteen thousand dollars ($15,000) or their actual damages, whichever is greater, plus attorneys' fees and costs.

76.     Moreover, California Financial Code § 4978(b)(2) allows a consumer to recover punitive damages against a person upon a finding that such damages are warranted pursuant to section 3294 of the California Civil Code.

77.     Defendants' failure to comply with the provisions of California Financial Code § 4973 was malicious, oppressive, fraudulent, willful and knowing.  Therefore, Defendants' violations of California Financial Code § 4973(f), (k) and (n) as alleged above entitles Plaintiffs to at least $15,000 in statutory damages pursuant to California Financial Code § 4978(a) and to punitive damages pursuant to California Financial Code § 4978(b)(2).

78.     Additionally, Plaintiffs are entitled to an injunction to reform the terms of the Loan documents to prohibit Defendants from engaging in the conduct described above.

**VIII.**

**FIFTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(PLAINTIFF LINDA ROBERTA MCCORMICK AGAINST THE FSF DEFENDANTS)**

79.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 78, inclusive, as though fully set-forth herein.

80.     Plaintiff has done all, or substantially all, of the significant things that the Loan Agreement, DOT and/or the Note required her to do or, alternatively, she was excused from doing those things.

81.     All conditions required by the Loan Agreement, DOT and/or Note for the FSF Defendants' performance have occurred.

82.     Pursuant to Section 2.3 of the Loan Agreement, the FSF Defendants may advance

1  up to $244,500 to Plaintiff for remodeling projects which then presumably would be added to

2  the principal balance.

3        83.    Pursuant to Section 8.3 of the Loan Agreement, the FSF Defendants were

4  obligated to act in good faith.

5        84.    Pursuant to Section 5.8 of the DOT, Plaintiff is only required to pay fees in the

6  maximum amounts legally permitted.

7        85.    Pursuant to Section 1(a) of the Note, the principal sum of the Note is $840,000.

8  This amount includes "reserve" amounts which were never advanced to Plaintiff.

9        86.    The FSF Defendants breached the above-referenced sections by, including, but

10 not limited to, (1) including "reserve" amounts in the principal balance and lien on the Property

11 that were never advanced to Plaintiff; (2) failing to act in good faith with regard to the

12 transaction; and (3) charging Plaintiff fees that were above the legally permitted maximum

13 amounts.

14       87.    By these acts, the FSF Defendants have breached the express terms of the Loan

15 Agreement, DOT and/or Note.

16       88.    As a result of these breaches of contract, Plaintiff suffered, and continues to

17 suffer, direct and proximate harm and injury and is entitled to general and special damages,

18 attorney's fees and costs pursuant to the Loan Agreement, Note and/or DOT, and such other

19 relief as the court determines is due, all in amounts to be determined at trial.

20 **IX.**

21 **SIXTH CLAIM FOR RELIEF**

22 **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

23 **(PLAINTIFFS AGAINST THE FSF DEFENDANTS)**

24       89.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

25 through 88, inclusive, as though fully set-forth herein.

26       90.    Every contract contains an implied covenant of good faith and fair dealing under

27 which the parties are bound to perform their obligations in good faith and to deal fairly.

28

91.     Plaintiffs have done all, or substantially all, of the significant things required of them.

92.     The FSF Defendants could not, consistent with the implied covenant of good faith and fair dealing, undertake its contractual and legal obligations for its own improper and undisclosed financial benefit and/or to maximize its profits at the unnecessary expense of Plaintiffs.

93.     Based upon information and belief, the FSF Defendants violated the covenant of good faith and fair dealing by engaging in the acts alleged herein, including the following practices: (1) Commencing and continuing with foreclosure proceedings under a DOT which violated applicable law and was obtained through predatory lending practices; (2) Engaging in predatory lending practices; (3) Miscalculating and demanding an excessive amount from Plaintiffs to pay off the mortgage loan; (4) Charging Plaintiffs unconscionable, excessive, erroneous and improper interest, charges and fees; (5) Adding wrongful and excessive charges and fees to the debt secured by the DOT; and (6) Violating applicable federal and California law.

94.     By these acts, the FSF Defendants have breached the implied covenant of good faith and fair dealing contained within the Loan documents.  As a result of these breaches, Plaintiffs suffered, and continue to suffer, direct and proximate harm and injury, and is entitled to general and special damages, attorney's fees and costs pursuant to the Loan, and such other relief as the court determines is due, all in amounts to be determined at trial.

## X.

## SEVENTH CLAIM FOR RELIEF

## RESCISSION

## (PLAINTIFFS AGAINST THE FSF DEFENDANTS)

95.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 94, inclusive, as though fully set-forth herein.

96.     Plaintiffs allege that the Loan was obtained by the Defendants through mistake

1    and fraud by engaging in deceptive practices as alleged herein.

2        97.    Defendants knew or should have known that Plaintiffs were not capable of

3    understanding or comprehending the true costs of the loan, which Defendants fraudulently

4    concealed from Plaintiffs, and were in poor health.

5        98.    The active misrepresentations of Defendants, and their silence and deceit, were

6    false and fraudulent.

7        99.    At the time Defendants made the misrepresentations and engaged in a conspiracy

8    to conceal and deceive as herein alleged, and at the time Plaintiffs applied for the loans,

9    Plaintiffs did not know that the misrepresentations, deceit and inducements by Defendants were

10   false and fraudulent, but instead believed them to be truthful and reasonably relied on them.  As

11   a result, Plaintiffs entered into the Loan without the benefit of the true facts, and by coercion and

12   mistake.

13       100.    As a result of the fraudulent misrepresentations and deceit by Defendants,

14   Plaintiffs have incurred substantial financial damages as herein alleged.  Plaintiffs hereby serve

15   notice of their demand for rescissionary damages on the grounds of fraudulent

16   misrepresentations, deceit and mistake by Defendants as alleged herein. To the extent that

17   Plaintiffs' loan transaction documents contain an exculpatory clause in favor of Defendants

18   purporting to release Defendants from their own fraud, Plaintiffs allege that such a clause is

19   unenforceable pursuant to California Civil Code § 1668 and other applicable law.

20       101.    Plaintiffs hereby demand restitution from Defendants, and each of them, in an

21   amount that will restore Plaintiffs to a position they would have been in had Defendants not

22   engaged in the willful, intentional and purposeful conduct herein alleged.

23       102.    Plaintiffs further allege that Defendants have been unjustly enriched by the

24   actions herein alleged and all the fees, profits, payments and commissions earned by Defendants

25   must be disgorged by Defendants to Plaintiffs.

26   ///

27   ///

28

# XI.

## EIGHTH CLAIM FOR RELIEF

## NEGLIGENCE

## (PLAINTIFFS AGAINST ALL DEFENDANTS)

103.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 102, inclusive, as though fully set-forth herein.

104.    At all times relevant herein, Defendants, acting as Plaintiffs' lender, servicer and/or broker of the Loan had duties to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the origination, maintenance, brokering, accounting and servicing of the Loan, including, but not limited to, communicating with, and providing all relevant information to, Plaintiffs about the loan; providing all disclosures required by applicable law; refraining from taking any action, or allowing others to take action, against Plaintiffs that it did not have the legal authority to do; not charging improper and/or excessive interest, fees and charges on the Loan; and refunding improper interest, fees and charges to Plaintiffs.

105.    Based upon information and belief, in taking the actions alleged above, and in failing to take the actions as alleged above, Defendants breached their duty of care and skill owed to Plaintiffs in the brokering, origination and servicing of the Loan by, among other things, (1) Failing to comply with applicable law with regard to required disclosures; (2) Failing to comply with applicable law with regard to the charging of interest and fees; (3) Providing false and misleading information to Plaintiffs regarding the Loan; (4) Failing to disclose relevant information to Plaintiffs regarding the Loan; (5) Miscalculating and demanding an excessive amount from Plaintiffs to pay off the Loan; and (6) Charging Plaintiffs erroneous and improper fees and charges.

106.    As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiffs suffered, and continue to suffer, general and special damages, in an amount to be determined at trial.  Additionally, Plaintiffs are entitled to an award

of reasonable attorney's fees and costs pursuant to the attorney's fees provisions in the Loan

documents.

## XII.

### NINTH CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

### (PLAINTIFFS AGAINST ALL DEFENDANTS)

107.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

through 106, inclusive, as though fully set-forth herein.

108.    At all times relevant, Defendants, as the lender, originator, servicer and mortgage

broker of the Loan, had, and have, a fiduciary duty to Plaintiffs to advise them and place them

on notice of all disclosures that are required by law, and to provide Plaintiffs with facts from

which Plaintiffs could make an informed determination regarding their options.  Defendants

created, accepted and acted in a fiduciary relationship of great trust.

109.    Defendants breached their fiduciary duty as lender, originator, servicer and

mortgage broker by failing to provide Plaintiffs with the disclosure notices required under

federal and California law.

110.    Additionally, Defendants breached their fiduciary duties owed to Plaintiffs as

they have acted and continue to act for their own benefit and to the detriment of Plaintiffs.  They

have, among other things, placed and negotiated loans without due care to the best interests of

Plaintiffs and for the protection of their rights.

111.    Further, Defendants breached their fiduciary duty owed to Plaintiffs by luring

Plaintiffs into the Loan and continually changing the terms, and then requiring performance

under the Loan which was intentionally incomprehensible and extremely complex, knowing that

Plaintiffs were not represented by counsel and had no time to fully review and understand the

documents before serious action would be taken against the Property.

112.    Defendants also breached their fiduciary duty owed to Plaintiffs by intentionally

placing them into a loan without any realistic test as to their ability to repay, and concealing the

1    true nature and terms of the Loan knowing that, given Plaintiffs' low income, the terms of the

2    Loan, and Plaintiffs' age and health, Plaintiffs would never escape the Loan and it would eat up

3    all of the equity in the Property.  This incomprehensibility was intended to ensure that the

4    Plaintiffs did not comprehend its terms, which in turn permitted the Defendants to mislead the

5    Plaintiffs and thereby financially profit from its terms.  Defendants continued this action by

6    demanding performance and further outrageous liens on the Property, justifying these demands

7    by the incomprehensible language of the Loan documents.

8        113.    As a direct and proximate breach of Defendants' fiduciary duty of care toward

9    Plaintiffs, Plaintiffs have suffered general and special damages, including, but not limited to,

10   damages for loss of property, money, and emotional distress in an amount to be determined at

11   trial.

12       114.    Moreover, the conduct of Defendants was willful, intentional, purposeful, and

13   done with the sole intention to profit, to the detriment of Plaintiffs.  Defendants are guilty of

14   malice, fraud or oppression, as defined in California Civil Code § 3294.  Therefore, Plaintiffs are

15   entitled to an award of punitive damages.

16                                **XIII.**

17                      **<u>TENTH CLAIM FOR RELIEF</u>**

18                      **<u>BROKER MALPRACTICE</u>**

19              **<u>(PLAINTIFFS AGAINST ALL DEFENDANTS)</u>**

20       115.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

21   through 114, inclusive, as though fully set-forth herein.

22       116.    All Defendants owed a duty of care to avoid foreseeable injury to Plaintiffs

23   person or property.  The Howard Defendants breached that duty by luring, or colluding to lure,

24   Plaintiffs into a predatory loan that they knew or should have known Plaintiffs would default on.

25       117.    As a direct and foreseeable result of Defendants' behavior, Plaintiffs suffered

26   harm, including but not limited to the destruction of their credit and having the equity stripped

27   from their home.

28

---
PLAINTIFFS' ADVERSARY COMPLAINT
23

118.     Defendants had a duty to investigate the reasonableness of the Loan and confirm that Plaintiffs had the ability to repay it.  Defendants breached that duty by directing Plaintiffs into a Loan for which they had little hope of escaping from.  As Plaintiffs' broker and fiduciary, Defendants owed a duty to Plaintiffs to execute decisions in the best interests of the Plaintiffs. Defendants breached that duty by making no effort to educate or advise Plaintiffs as to the nature, risks or possible consequences associated with the Loan, and their options.

119.     As a result of the Defendants' conduct, Plaintiffs have and will continue to suffer reasonable and foreseeable consequential damages resulting from such actions and representations and omissions, in an amount to be proven at trial.

# XIV.

## ELEVENTH CLAIM FOR RELIEF

## CANCELLATION OF INSTRUMENTS

## (PLAINTIFFS AGAINST THE FSF DEFENDANTS)

120.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 119, inclusive, as though fully set-forth herein.

121.     If the wrongfully recorded DOT, and the unrecorded Note, Loan Agreement, Guaranty Agreement, and Forebearance Agreement instruments are left outstanding, Plaintiffs will continue to suffer loss and damages.

122.     Plaintiff therefore seeks cancellation of the DOT and the unrecorded Note, Note, Loan Agreement, Guaranty Agreement, and Forebearance Agreement.

123.     Plaintiff is informed and believe, and therefore allege, that the FSF Defendants acted willfully and with a conscious disregard for Plaintiffs' rights and with a specific intent to defraud and injure Plaintiffs, by causing the DOT to be recorded; and seeking payment pursuant to the unrecorded Note, Loan Agreement, Guaranty Agreement, and Forebearance Agreement, all of which are invalid and void for the reasons set forth above.

124.     The DOT was prepared and recorded without a legal basis for doing so as a result of the statutory violations and fraudulent conduct alleged herein.

125.     Upon information and belief, these acts by the FSF Defendants constitute fraud, oppression and malice under Cal. Civil Code §3294.  The FSF Defendants acted with a conscious disregard for the requirements under California and federal law regarding mortgage loans.

126.     By virtue of the FSF Defendants' willful and wrongful conduct as herein alleged above, Plaintiffs are entitled to general and special damages according to proof at trial, but not less than $1,000,000, as well as punitive and exemplary damages as determined by this Court. Also, Plaintiffs are entitled to an award of reasonable attorney's fees and costs pursuant to the attorney's fees provisions in the Note, Loan Agreement, Guaranty Agreement, Forebearance Agreement and/or DOT.

## XV.

## TWELFTH CLAIM FOR RELIEF

## QUIET TITLE

## (PLAINTIFFS AGAINST ALL DEFENDANTS)

127.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 126, inclusive, as though fully set-forth herein.

128.     Plaintiffs are the legal owners of the Property.

129.     Plaintiffs seek to quiet title against the claims of all Defendants, including the unknown defendants.  None of the Defendants or their successors or assignees has any right to title or interest in the Property and no right to entertain any rights of ownership, including rights of possession.

130.     Plaintiffs seek a judicial declaration that the title to the Property is vested in Plaintiffs alone and that Defendants and each of them be declared to have no estate, right, title or interest in the Property and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Property.

131.     Accordingly, the Court should rule that the Property is Plaintiffs alone and award consequential damages as proven at trial, but not less than $1,000,000.  Additionally, Plaintiffs

are entitled to an award of reasonable attorney's fees and costs pursuant to the attorney's fees provisions in the Loan documents.

**XVI.**

**THIRTEENTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 15600 ET SEQ. (ELDER ABUSE)**

**(PLAINTIFFS AGAINST THE FSF DEFENDANTS)**

132.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 131, inclusive, as though fully set-forth herein.

133.    Ms. McCormick was born in 1951.  Mr. McCormick was born in 1949.  As such, in accordance with California Welfare and Institutions Code § 15610.27, Plaintiffs are senior citizens.  Thus, they are afforded special protections under the laws of the State of California.

134.    California Welfare and Institutions Code § 15610.30(a) defines financial abuse as the taking of real or personal property with an intent to defraud. Civil remedies are sometimes available under California Welfare and Institutions Code § 15657.03.

135.    In addition, California Civil Code § 525 known as the California Consumer Legal Remedies Act, which can be used in conjunction with all other legal remedies, specifies unfair methods of competition and unfair or deceptive acts and practices for the sale of goods or services to consumers, and includes specific enhanced penalties and protections for seniors as indicated in California Civil Code § 1770(a)(23). California Civil Code § 3345 also provides for the recovery of treble damages as a result of unfair or deceptive practices against senior citizens.

136.    Defendants based the Loan on the Plaintiffs' home equity, as opposed to their ability to repay the loan, in conscious disregard of their duties to Plaintiffs.

137.    Defendants made the conscious decision that despite the stated intentions of Plaintiffs as to the loan product desired, i.e., to cure the default on the Wells Fargo loan, convinced Plaintiffs that the Loan was their only option to avoid losing their home to foreclosure.

138.    Defendants made the conscious decision that they would hide from Plaintiffs the true nature of the Loan, so as to ensure that they were not aware of what they were in fact agreeing to, for the sole purpose of procuring their fees and commissions and stealing the remaining equity from the Property.  Their motivation was to secure the Property of the senior citizen Plaintiffs upon foreclosure, who they knew were making further improvements on the Property, in order to secure additional profit, at the expense of the Plaintiffs.

139.    Defendants knew that the Plaintiffs would be figuratively left in the dark as to the true nature and exploding costs of the Loan.  Defendants received their unjust enrichment in the form of excessive interest, fees and costs and simply waited patiently until Plaintiffs inevitable default on the Loan.  At such time their plan would come to fruition and they would be able to sell the Property at a foreclosure auction, likely to return to a Defendants which would then allow to profit further from their fraudulent scheme.

140.    As a proximate result of Defendants' wrongful conduct, Plaintiffs have suffered, and continue to suffer, general and special damages in an amount to be determined at trial.

141.    Defendants acts were willful, shameless, deliberate, calculated, scheming, intentional, and done with complete and total disregard for the financial and emotional harm that would befall the Plaintiffs, despite their protected status as senior citizens.

142.    Plaintiffs had no reason to believe that they would be taken advantage of.  Their lives have been turned upside down, in this, what is supposed to be, their golden years.

143.    Plaintiffs are entitled to recover punitive and exemplary damages in addition to attorney's fees and costs of their suit incurred as a result of Defendants actions as set forth herein.

///

///

///

# XVII.

## FOURTEENTH CLAIM FOR RELIEF

## UNFAIR PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE

## SECTION 17200, ET SEQ

## (PLAINTIFFS AGAINST ALL DEFENDANTS)

144.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 143, inclusive, as though fully set-forth herein.

145.    California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

146.    As more fully described above, Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

147.    Specifically, as fully set forth above, Defendants engage in deceptive business practices with respect to the origination of mortgage loans, mortgage loan servicing, mortgage brokering and related matters by, among other things, (a) Instituting improper or premature foreclosure proceedings to generate unwarranted fees; (b) Charging interest and fees which are not allowed under applicable law, and the Loan; (c) Originating loans without regard to the ability of the borrower to pay; (d) Failing to provide disclosures required by law; (e) Executing and recording false and misleading documents; and (f) Other deceptive business practices.

148.    By engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations, including but not limited to California Welfare and Institutions Code Section 15600 et seq. (the "Elder Abuse Act") and California Finance Code Section 4973 et seq.; federal laws including, but not limited to, TILA and HOEPLA; using bait and switch tactics; engaging in predatory lending; making loans without providing borrowers with sufficient, accurate and understandable information regarding the terms and conditions of the loan; and making loans without providing borrowers with

1   sufficient, accurate and understandable information regarding the nature and extent of the

2   financial risk being assumed by the borrowers.  Said predicate acts are therefore per se violations

3   of California Business and Professions Code Section 17200, et seq.

4       149.    Defendants' misconduct, as alleged herein, gave, and have given, Defendants an

5   unfair competitive advantage over their competitors. The scheme implemented by Defendants is

6   designed to defraud California consumers and enrich the Defendants.

7       150.    The acts all as alleged above violate California Business and Professions Code §

8   17200, et seq. in the manner alleged above, and, based on information and belief, in the

9   following further respects: the conduct of Defendants and each of them, threatens an incipient

10  violation of various consumer protection statutes, or which violate the policy or spirit of such

11  laws set forth herein.

12      151.    As a direct and proximate result of the aforementioned acts, by Defendants and

13  each of them, Plaintiffs sustained damages in an amount not yet ascertained to be proven at trial.

14      152.    The foregoing acts and practices have caused substantial harm to California

15  consumers.

16      153.    As a direct and proximate result of the aforementioned acts, Defendants have

17  prospered and benefitted from Plaintiffs by acquiring the equity in the Property by charges

18  improper and outrageous fees.

19      154.    By reason of the foregoing, Defendants have been unjustly enriched and should

20  be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other

21  California consumers who have been harmed, and/or be enjoined from continuing in such

22  practices pursuant to California Business & Professions Code Sections 17203 and 17204.

23  Moreover, as a result of the aforementioned acts and conduct, Plaintiffs have lost money and

24  property and suffered injury in fact including, but not limited to, an improper increase in the lien

25  against the Property, the reduction of their equity in the Property, and the payment of attorney's

26  fees and related costs to restrain Defendants from wrongfully foreclosing on the Property.  Other

27  members of the public falling victim to Defendants' schemes are likely to be injured as well.

28

155.     The harm to Plaintiffs and to members of the general public outweigh the utility of Defendants' policy and practices. Consequently, their policy and practices constitute an unlawful business act or practice within the meaning of Business and Professions Code §17200.

156.     Defendants' practices described above are likely to mislead the general public, and, therefore, constitute a fraudulent business act or practice within the meaning of Business and Professions Code §17200. The Defendants' unfair, unlawful, and fraudulent business practices and false and misleading advertising present a continuing threat to members of public in that other consumers will be defrauded.  Plaintiffs and other members of the general public have no other adequate remedy of law.

157.     Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections. These acts and practices, as described in the previous paragraphs, are unfair and violate Business and Professions Code § 17200 because their policies and practices described above violate all the statutes previously listed as well as California Civil Code § 1709, and consequently, constitute and unlawful business act of practice within the meaning of Business and Professions Code § 17200.

## XVIII.

### FIFTEENTH CLAIM FOR RELIEF

### FRAUD AND DECEIT

### (PLAINTIFFS AGAINST ALL DEFENDANTS)

158.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 157, inclusive, as though fully set-forth herein.

159.     Defendants colluded in the facilitation and procurement of the Loan, which was predatory in nature and injurious to Plaintiffs.

160.     Defendants at various times throughout the origination and servicing of the Loan knowingly misrepresented, inter alia, the nature and terms of the Loan and that it was a good financial decision for Plaintiffs.

161.    Defendants' knowingly or defrauded Plaintiffs, causing them to agree to enter into the Loan, which Defendants knew Plaintiffs were unlikely to ever be able to pay off, for the undisclosed purpose of stealing the equity from the Property.  Because of Plaintiffs' desperation and poor health, they justifiably relied on Defendants' misrepresentations about the terms of the Loan and their ability to afford the Loan.  This reliance was detrimental to the Plaintiffs.

162.    Defendants' actions in this matter have been willful and knowing and/or with complete and reckless disregard of the emotional or financial ramifications that would surely befall Plaintiffs.  Defendants' actions were as a direct result of a scheme to further gain financially by taking advantage of Plaintiffs who quite frankly did not understand the intentionally confusing and complex legal jargon with which the Loan documents were drafted.

163.    Defendants conspired with each other in order to take advantage of Plaintiffs and induce them into accepting the Loan.  Plaintiffs were reasonable in their reliance of the statements and representations made by Defendants.

164.    As a direct and proximate breach of Defendants' fraudulent and deceitful conduct, Plaintiffs have suffered general and special damages, including, but not limited to, damages for loss of property, money, and emotional distress in an amount to be determined at trial.

165.    Moreover, the conduct of Defendants was willful, intentional, purposeful, and done with the sole intention to profit, to the detriment of Plaintiffs.  Defendants are guilty of malice, fraud or oppression, as defined in California Civil Code § 3294.  Therefore, Plaintiffs are entitled to an award of punitive damages

166.    Lastly, pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, costs, and expenses incurred in bringing this action.

///

///

///

## XIX.

## SIXTEENTH CLAIM FOR RELIEF

## UNCONSCIONABILITY

## (PLAINTIFFS AGAINST ALL DEFENDANTS)

167.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 166, inclusive, as though fully set-forth herein.

168.    California Civil Code Section 1670.5 provide, in pertinent part, that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

169.    Here, based on the fraud, deception, unfair bargaining position, lack of adherence to the California and federal laws and regulations that Defendants were required to follow, coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiffs, the Loan documents are unconscionable.  Accordingly, Plaintiffs request that the Court declare all of the documents void and of no further effect or, alternatively, declare the unconscionable clauses contained therein void and of no further effect.

## XX.

## SEVENTEENTH CLAIM FOR RELIEF

## DECLARATORY RELIEF

## (PLAINTIFFS AGAINST ALL DEFENDANTS)

170.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 169, inclusive, as though fully set-forth herein.

171.    Defendants have taken actions in violation of their statutory and contractual duties.  Said actions have resulted in an improper lien being placed on the Property.  An actual dispute exists between Plaintiffs and Defendants as to the amount of the lien, if any, they have on the Property through the DOT; and the amount in default, if any, on Plaintiffs' account.

172.    Due to the dispute as to the rights and interests of the parties to the Property, Plaintiffs request that the Court declare the rights of the parties in this matter.  Plaintiffs request that the Court enforce these rights with the issuance of injunctions or restraining orders as may be necessary to place the parties in their proper position with respect to their interests, if any, in the Property including, but not limited to, enjoining Defendants from proceeding with a non-judicial foreclosure during the pendency of this action.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against the Defendants, and each of them, jointly and severally, as follows:

1.    For compensatory, special, statutory, and general damages in an amount according to proof at trial;

2.    For rescission or cancellation of the Loan;

3.    For civil penalties pursuant to statute;

4.    For punitive damages;

5.    For a declaration regarding the validity and enforceability of the Loan documents;

6.    For a declaration of the rights and duties of the parties with regard to the Loan and the parties' interests in the Property;

7.    For a declaration that the title to the Property is vested in Plaintiffs alone and that Defendants and each of them be declared to have no estate, right, title or interest in the Property and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Property;

8.    For reasonable attorneys' fees and costs of suit pursuant to the Loan documents and/or applicable law; and

///

///

///

9.    For such other and further relief as the Court deems proper.

DATED: December 29, 2017          LAW OFFICES OF CAMERON H. TOTTEN

                                  By:    /s/ Cameron H. Totten_____
                                         Cameron H. Totten
                                         Attorney for Plaintiffs Linda Roberta
                                         McCormick and Anthony B. McCormick

## JURY DEMAND

Plaintiffs demand a jury trial for all claims set forth herein.

DATED: December 29, 2017          LAW OFFICES OF CAMERON H. TOTTEN

                                  By:    /s/ Cameron H. Totten_____
                                         Cameron H. Totten
                                         Attorney for Plaintiffs Linda Roberta
                                         McCormick and Anthony B. McCormick

EXHIBIT "1"


# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_Linda McCormick_

Borrower                                          Co-Borrower

| I. TYPE OF MORTGAGE AND TERMS OF LOAN | | | |
|---|---|---|---|
| Mortgage Applied for: ☐ VA  ☒ Conventional  ☐ Other (explain): <br> ☐ FHA  ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number |
| Amount <br> 840,000.00 | Interest Rate <br> 12.000 | No. of Months <br> 6 Mos. | Amortization Type: ☒ Fixed Rate  ☐ Other (explain): <br> ☐ GPM  ☐ ARM (type): |

| II. PROPERTY INFORMATION AND PURPOSE OF LOAN | |
|---|---|
| Subject Property Address (street, city, state, & ZIP)  211 COUNTRY CLUB DRIVE  BURBANK, CALIFORNIA 91501 | No. of Units  N/A |
| Legal Description of Subject Property (attach description if necessary) | Year Built |

Purpose of Loan  ☐ Purchase  ☒ Construction  ☐ Other (explain):   
☒ Refinance  ☐ Construction-Permanent

Property will be:  ☐ Primary Residence  ☐ Secondary Residence  ☐ Investment

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost <br> $ | Amount Existing Liens <br> $ | (a) Present Value of Lot <br> $ | (b) Cost of Improvements <br> $ | Total (a+ b) <br> $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost <br> $ | Amount Existing Liens <br> $ | Purpose of Refinance | Describe Improvements  ☐ made  ☐ to be made <br> Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s)  LINDA P. MCCORMICK | Manner in which Title will be held | Estate will be held in:  ☒ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|
| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) | | |

| III. BORROWER INFORMATION | | |
|---|---|---|
| **Borrower** | | **Co-Borrower** |
| Borrower's Name (include Jr. or Sr. if applicable)  LINDA MCCORMICK | | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |

☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated   Dependents (not listed by Co-Borrower)  no.  ages

☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated   Dependents (not listed by Borrower)  no.  ages

| Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. <br> 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501 | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. <br> 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501 |
|---|---|
| Mailing Address, if different from Present Address <br> 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501 | Mailing Address, if different from Present Address |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. |
|---|---|

| Borrower | IV. EMPLOYMENT INFORMATION | Co-Borrower |
|---|---|---|

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| | Borrower | | | IV. EMPLOYMENT INFORMATION (cont'd) | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | | Dates (from – to) | Name & Address of Employer | ☐ Self Employed | | Dates (from – to) |
| | | | Monthly Income $ | | | | Monthly Income $ |
| Position/Title/Type of Business | | | Business Phone (incl. area code) | Position/Title/Type of Business | | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | | Dates (from – to) | Name & Address of Employer | ☐ Self Employed | | Dates (from – to) |
| | | | Monthly Income $ | | | | Monthly Income $ |
| Position/Title/Type of Business | | | Business Phone (incl. area code) | Position/Title/Type of Business | | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ .00 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**    *Notice:*    **Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.**

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☐ Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Description | | | | |
| Cash deposit toward purchase held by: | $ | | | |
| *List checking and savings accounts below* | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |

**VI.  ASSETS AND LIABILITIES (cont'd)**

| Name and address of Bank, S&L, or Credit Union | Name and address of Company | $ Payment/Months | $ |
|---|---|---|---|
| | WELLS FARGO | | |
| | Acct. no. | | |
| Acct. no. $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) $ | | | |
| | Acct. no. | | |
| Life Insurance net cash value $ | Name and address of Company | $ Payment/Months | $ |
| Face amount:  $ | | | |
| Subtotal Liquid Assets $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) $ | | | |
| Vested interest in retirement fund $ | | | |
| Net worth of business(es) owned (attach financial statement) $ | Acct. no. | | |
| Automobiles owned (make and year) $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | Total Monthly Payments | $ | |
| **Total Assets a.** $ | Net Worth ▶ (a minus b) | $ | **Total Liabilities b.** $ |

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

| VII.  DETAILS OF TRANSACTION | | VIII.  DECLARATIONS | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| a. | Purchase price | $ | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| b. | Alterations, improvements, repairs | | | | | | |
| c. | Land (if acquired separately) | | a.   Are there any outstanding judgments against you? | ☒ | ☐ | ☐ | ☐ |

| VII.  DETAILS OF TRANSACTION | | VIII.  DECLARATIONS | | | | | |
|---|---|---|---|---|---|---|---|
| | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | **Borrower** | | **Co-Borrower** | |
| | | | | Yes | No | Yes | No |
| j.  Subordinate financing | N/A | | | | | | |
| k.  Borrower's closing costs paid by Seller | See note | f.  Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | ☒ | ☐ | ☐ | ☐ |
| l.  Other Credits (explain) | None | g.  Are you obligated to pay alimony, child support, or separate maintenance? | | ☐ | ☒ | ☐ | ☐ |
| | | h.  Is any part of the down payment borrowed? | | ☐ | ☒ | ☐ | ☐ |
| | | i.  Are you a co-maker or endorser on a note? | | ☐ | ☒ | ☐ | ☐ |
| m.  Loan amount (exclude PMI, MIP, Funding Fee financed) | 840,000 | j.  Are you a U.S. citizen? | | ☒ | ☐ | ☐ | ☐ |
| n.  PMI, MIP, Funding Fee financed | INCL. | k.  Are you a permanent resident alien? | | ☐ | ☒ | ☐ | ☐ |
| | | l.  Do you intend to occupy the property as your primary residence? | | ☒ | ☐ | ☐ | ☐ |
| | | If "Yes," complete question m below. | | | | | |
| o.  Loan amount (add m & n) | 840,000 | m.  Have you had an ownership interest in a property in the last three years? (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | | ☐ PR | ☐ | ☐ | ☐ |
| | | (2)  How did you hold title to the home - by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | | |
| p.  Cash from/to Borrower (subtract j, k, l & o from i) | 0 | | | | | | |

| IX.  ACKNOWLEDGMENT AND AGREEMENT | | |
|---|---|---|

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that:  (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et. seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms  are defined in applicable federal and/or state laws (excluding audio and video recordings),  or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgment.**  Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| x _(signature)_ | 1-4-16 | x | |

| X.  INFORMATION FOR GOVERNMENT MONITORING PURPOSES | |
|---|---|

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity,  fair housing and home mortgage disclosure laws.  You are not required to furnish this information, but are encouraged to do so.  The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it.  If you furnish the information,  please provide both ethnicity and race.  For race, you may check more than one designation.  If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person.  If you do not wish to furnish the information, please check the box below.  (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is  subject under applicable state law for the particular type of loan applied for.)

| **BORROWER** ☒ I do not wish to furnish this information | | **CO-BORROWER** ☐ I do not wish to furnish this information | |
|---|---|---|---|
| **Ethnicity:** ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | | **Ethnicity:** ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | |
| **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American | | **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American | |
| ☐ Native Hawaiian or Other Pacific Islander  ☐ White | | ☐ Native Hawaiian or Other Pacific Islander  ☐ White | |
| **Sex:** ☐ Female  ☐ Male | | **Sex:** ☐ Female  ☐ Male | |

**To be Completed by Loan Originator:**
This information was provided:
☐ In a face-to-face interview

Continuation Sheet / Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower: *Pamela McCormick* (signature) | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

## VI.  ASSETS AND LIABILITIES

**Schedule of Real Estate Owned**

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| N/A | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION**

| Use this continuation sheet if you need more space to complete the Residential Loan Application.   Mark B for Borrower or C for Co-Borrower | Borrower: *Amanda McCormick* | Agency Case Number: |
| --- | --- | --- |
| | Co-Borrower: | Lender Case Number: |

# ADDENDUM TO LOAN APPLICATION

CALIFORNIA CIVIL CODE SECTION 1812.30 REQUIRES NOTICE THAT "THE APPLICANT, IF MARRIED, MAY APPLY FOR A SEPARATE ACCOUNT."

**I (WE) RECEIVED A COPY OF THIS NOTICE, WHICH IS PART OF MY/OUR CREDIT APPLICATION.**

Borrower LINDA MCCORMICK          Date          Borrower          Date

Borrower          Date          Borrower          Date

Borrower          Date          Borrower          Date

# FEDERAL EQUAL CREDIT OPPORTUNITY ACT NOTICE

Loan Number:

Date: JANUARY 8, 2016

Provided By: FOUR SQUARE FINANCIAL, L.P.

Borrower(s): LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

The Federal Agency that administers compliance with this law concerning this creditor is:
Federal Trade Commission
Equal Credit Opportunity
Washington, DC 20580

By signing below, I/we acknowledge that I/we have read and received a copy of this document.

| | |
|---|---|
| _Linda McCormick_ 1-4-16 | _____ |
| Borrower LINDA MCCORMICK          Date | Borrower                          Date |
| _____ | _____ |
| Borrower                          Date | Borrower                          Date |
| _____ | _____ |
| Borrower                          Date | Borrower                          Date |

FEDERAL EQUAL CREDIT OPPORTUNITY ACT NOTICE
12 CFR 1002.9(b)
ECOALSR  09/30/14

043

# THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977
# FAIR LENDING NOTICE

IT IS ILLEGAL TO DISCRIMINATE IN THE PROVISION OF OR IN THE AVAILABILITY OF FINANCIAL ASSISTANCE BECAUSE OF THE CONSIDERATION OF:

1. TRENDS, CHARACTERISTICS OR CONDITIONS IN THE NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION, UNLESS THE FINANCIAL INSTITUTION CAN DEMONSTRATE IN THE PARTICULAR CASE THAT SUCH CONSIDERATION IS REQUIRED TO AVOID AN UNSAFE AND UNSOUND BUSINESS PRACTICE; OR

2. RACE, COLOR, RELIGION, SEX, MARITAL STATUS, DOMESTIC PARTNERSHIP, NATIONAL ORIGIN OR ANCESTRY.

IT IS ILLEGAL TO CONSIDER THE RACIAL, ETHNIC, RELIGIOUS OR NATIONAL ORIGIN COMPOSITION OF A NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION OR WHETHER OR NOT SUCH COMPOSITION IS UNDERGOING CHANGE, OR IS EXPECTED TO UNDERGO CHANGE, IN APPRAISING A HOUSING ACCOMMODATION OR IN DETERMINING WHETHER OR NOT, OR UNDER WHAT TERMS AND CONDITIONS, TO PROVIDE FINANCIAL ASSISTANCE.

THESE PROVISIONS GOVERN FINANCIAL ASSISTANCE FOR THE PURPOSE OF THE PURCHASE, CONSTRUCTION, REHABILITATION OR REFINANCING OF ONE- TO FOUR-UNIT FAMILY RESIDENCES OCCUPIED BY THE OWNER AND FOR THE PURPOSE OF THE HOME IMPROVEMENT OF ANY ONE- TO FOUR-UNIT FAMILY RESIDENCE.

IF YOU HAVE QUESTIONS ABOUT YOUR RIGHTS, OR IF YOU WISH TO FILE A COMPLAINT, CONTACT THE MANAGEMENT OF THIS FINANCIAL INSTITUTION OR:

Department of Business Oversight
300 South Spring Street, Suite 15513
Los Angeles, CA 90013

Department of Business Oversight
45 Freemont Street, Suite 1700
San Francisco, CA 94104-2219

Department of Business Oversight
320 West 4th Street, Suite 750
Los Angeles, CA 90013

Department of Business Oversight
One Sansome Street, Suite 600
San Francisco, CA 94104-2219

Department of Business Oversight
1515 K Street, Suite 200
Sacramento, CA 95814-4052

Department of Business Oversight
1350 Front Street, #2034
San Diego, CA 92101-3697

Department of Business Oversight
7575 Metropolitan Drive, Suite 108
San Diego, CA 92108

**Acknowledgment of Receipt:**

I/We received a copy of this notice.

| Borrower      LINDA MCCORMICK | Date 1-4-16 | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977 FAIR LENDING NOTICE
CA Health & Safety Code 35830; 21 CCR 7114
CAFLNB.MSC  03/05/15

# CALIFORNIA DOMESTIC PARTNERSHIP ADDENDUM TO UNIFORM RESIDENTIAL LOAN APPLICATION

Date: JANUARY 8, 2016

Provided by: FOUR SQUARE FINANCIAL, L.P.

Borrower: LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

On and after January 1, 2005, California law extends the same rights, protections, benefits, and duties of marriage to persons registered as domestic partners in the State of California. Thus, a non-borrowing domestic partner whose domestic partnership is registered in California will be presumed to have a community property interest in the real property of the borrowing domestic partner that will secure repayment of this loan transaction regardless of whether the non-borrowing partner holds, or will hold, legal title to that property.

Furthermore, a legal union of two persons of the same sex, other than marriage, that is validly formed in another jurisdiction and that is substantially equivalent to a domestic partnership under California law is recognized as a valid domestic partnership in California regardless of whether it bears the name domestic partnership.

**Accordingly, if you, as the Borrower, indicate that you are involved in a domestic partnership registered with the State of California or part of a legal union formed in another jurisdiction, the Lender will require that your domestic partner also sign the deed of trust or other security instrument (and perhaps other related loan documents) that secures repayment of this loan.**

You should consult an attorney for specific legal advice regarding community property rights and for specific legal advice regarding rights, protections, benefits, and duties under California law.

The undersigned Borrower hereby represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns, the following:

Please check all of those statements below that apply.

- [x] I am **not** involved in a domestic partnership in California or in any other jurisdiction recognizing a domestic partnership or civil union.
- [x] I do **not** have a pending termination or judgment of dissolution or nullity of a domestic partnership or civil union.
- [ ] I have registered a domestic partnership with the State of California. The Lender may request that you provide a Certificate of Domestic Partnership issued by the California Secretary of State.
- [ ] I am involved in a domestic partnership or civil union formed in a jurisdiction outside the State of California.

If you have registered a domestic partnership in California or formed a domestic partnership or civil union in another jurisdiction, please provide the name of your domestic partner in the space provided below:

_____
Name of Domestic Partner

_Linda McCormick_    1-4-16
Borrower LINDA MCCORMICK    Date

CA ADDENDUM TO UNIFORM RESIDENTIAL LOAN APPLICATION
CA Family Code §§ 297 et seq.
CADPA.MSC  09/29/14

# CALIFORNIA COPIES OF SIGNED DOCUMENTS

Date: JANUARY 8, 2016

Provided By: FOUR SQUARE FINANCIAL, L.P.

Applicant Name(s): LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE
BURBANK, CALIFORNIA 91501

It is your responsibility to obtain machine copies of forms furnished for application by mail before returning the signed documents back to the above-named Lender (Cal. Code Regs. Tit. 10, § 1950.204).

By signing below, you acknowledge that you have received and read a copy of this notice.

| | |
|---|---|
| Applicant LINDA MCCORMICK    1-4-16    Date | Applicant    Date |
| Applicant    Date | Applicant    Date |
| Applicant    Date | Applicant    Date |

CALIFORNIA COPIES OF SIGNED DOCUMENTS
Cal. Code Regs. Tit. 10, § 1950.204
CACOSD.MSC  02/24/12

# CONSUMER CREDIT SCORE DISCLOSURE

Loan Number:

Date: JANUARY 8, 2016

Provided By: FOUR SQUARE FINANCIAL, L.P.

Borrower: LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE
BURBANK, CALIFORNIA 91501

## The following notice is required under federal law:

### NOTICE TO THE HOME LOAN APPLICANT

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

## The following notice is required under California law:

### NOTICE TO THE HOME LOAN APPLICANT

In connection with your application for a home loan, the lender must disclose to you the score that a credit bureau distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information a credit bureau or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the credit bureau at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The credit bureau plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

Contact Information: FOUR SQUARE FINANCIAL, L.P.
BOX D 7 ROOM 203A, 10982 ROEBLING AVE.
LOS ANGELES, CALIFORNIA 90024

By signing below, the undersigned hereby acknowledges receipt of a copy of this disclosure.

_Linda McCormick_   1-4-16

Borrower LINDA MCCORMICK          Date

CONSUMER CREDIT SCORE DISCLOSURE
CALIFORNIA CIVIL CODE §§1785.20.2 AND 1785.15.1
CACCS.DSC  10/30/12

Loan Number:

Date: JANUARY 8, 2016

Provided By: FOUR SQUARE FINANCIAL, L.P.

Borrower: LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

## CREDIT SCORING INFORMATION

The following consumer reporting agency(ies)/credit bureau(s) ~~provided~~ a credit score that was used by the Lender:

☐ **Equifax Credit Information Services** *may provide*
P.O. BOX 740241
ATLANTA, GA 30374
To order report: (800) 685-1111
To report fraud: (888) 766-0008
Web Site: www.equifax.com
Current/Most Recent Credit Score:        Credit Score Date:        Credit Score Range:
Key Factors Adversely Affecting Your Credit Score:

☐ **TransUnion Consumer Disclosure Center**
P.O. BOX 2000
CHESTER, PA 19022-2000
To order report: (800) 916-8800
To report fraud: (800) 916-8800
Web Site: www.transunion.com
Current/Most Recent Credit Score:        Credit Score Date:        Credit Score Range:
Key Factors Adversely Affecting Your Credit Score:

☐ **Experian National Consumer Assistance Center**
P.O. BOX 4500
ALLEN, TX 75013
To order report: (888) 397-3742
To report fraud: (888) 397-3742
Web Site: www.experian.com
Current/Most Recent Credit Score:        Credit Score Date:        Credit Score Range:
Key Factors Adversely Affecting Your Credit Score:

☐

Current/Most Recent Credit Score:        Credit Score Date:        Credit Score Range:
Key Factors Adversely Affecting Your Credit Score:

# AUTOMATED VALUATION MODEL NOTICE

Loan Number:

Date: JANUARY 8, 2016

Lender: FOUR SQUARE FINANCIAL, L.P.

Borrower: LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

AN AUTOMATED VALUATION MODEL IS NOT AN APPRAISAL. IT IS A COMPUTERIZED PROPERTY VALUATION SYSTEM THAT IS USED TO DERIVE A REAL PROPERTY VALUE.

YOU HAVE THE RIGHT TO RECEIVE A COPY OF THE AUTOMATED VALUATION MODEL (AVM) RESULT USED IN CONNECTION WITH YOUR APPLICATION FOR CREDIT. IF YOU WISH TO RECEIVE A COPY OF THE AVM RESULT, PLEASE SEND YOUR WRITTEN REQUEST TO:

> FOUR SQUARE FINANCIAL, L.P.
> BOX D / ROOM 203A, 10982 ROEBLING AVE.
> LOS ANGELES, CALIFORNIA 90024

LENDER MUST RECEIVE YOUR REQUEST FOR A COPY OF THE AVM RESULT NO LATER THAN 90 DAYS AFTER LENDER PROVIDES NOTICE OF THE ACTION TAKEN ON YOUR APPLICATION OR A NOTICE OF INCOMPLETENESS, OR IN THE CASE OF A WITHDRAWN APPLICATION, 90 DAYS AFTER THE WITHDRAWAL. FURTHER NOTE THAT RELEASE OF THE COPY OF THE AVM RESULT MAY BE CONDITIONED UPON PAYMENT OF A FEE.

IN YOUR REQUEST, PLEASE INCLUDE THE FOLLOWING INFORMATION: YOUR NAME AND ADDRESS, THE PROPERTY ADDRESS (IF DIFFERENT FROM YOUR ADDRESS), AND YOUR LOAN OR APPLICATION NUMBER, IF YOU KNOW THEM.

CALIFORNIA AUTOMATED VALUATION MODEL NOTICE
CA Finance Code §22317.2
12/28/06                                    Page 1 of 2

Each of the undersigned hereby acknowledges receipt of a copy of this Automated Valuation Model Notice.

_Linda McCormick_ 1-4-16
Borrower LINDA McCORMICK          Date          Borrower                              Date

Borrower                              Date          Borrower                              Date

Borrower                              Date          Borrower                              Date

# APPRAISAL DISCLOSURE

Date: JANUARY 8, 2016

Provided By: FOUR SQUARE FINANCIAL, L.P.
BOX D / ROOM 203A, 10982 ROEBLING AVE., LOS ANGELES,
CALIFORNIA 90024

Borrower Name(s): LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE
BURBANK, CALIFORNIA 91501

**You have the right to a copy of the appraisal report used in connection with your application for credit. If you wish a copy, please write to us at the mailing address we have provided. We must hear from you no later than 90 days** after we notify you about the action taken on your credit application or you **withdraw your application.**

Contact:

Lender/Broker: FOUR SQUARE FINANCIAL, L.P.

Address: BOX D / ROOM 203A, 10982 ROEBLING AVE.
LOS ANGELES, CALIFORNIA 90024

Telephone:

In your letter, give us the following information:
LOAN OR APPLICATION NUMBER, IF KNOWN, DATE OF APPLICATION,
NAME(S) OF LOAN APPLICANT(S), PROPERTY ADDRESS, AND YOUR CURRENT
MAILING ADDRESS.

| Borrower LINDA MCCORMICK | Date 1-4-16 | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

APPRAISAL DISCLOSURE
15 U.S.C. 1691(e); 12 CFR 1002.14(a)
AD6.MSC  11/14/13

051

# HAZARD INSURANCE DISCLOSURE
## PURSUANT TO CALIFORNIA CIVIL CODE §2955.5

Date: JANUARY 8, 2016

Lender: FOUR SQUARE FINANCIAL, L.P.

Borrower(s): LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

**NO LENDER SHALL REQUIRE A BORROWER, AS A CONDITION OF RECEIVING OR MAINTAINING A LOAN SECURED BY REAL PROPERTY, TO PROVIDE HAZARD INSURANCE COVERAGE AGAINST RISKS TO THE IMPROVEMENTS ON THAT REAL PROPERTY IN AN AMOUNT EXCEEDING THE REPLACEMENT VALUE OF THE IMPROVEMENTS ON THE PROPERTY.**

**THIS DISCLOSURE IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND.**

By signing below, I hereby acknowledge receipt of a true copy of this disclosure.

| | |
|---|---|
| Borrower LINDA MCCORMICK 1-4-16 Date | Borrower Date |
| | |
| Borrower Date | Borrower Date |
| | |
| Borrower Date | Borrower Date |

CALIFORNIA HAZARD INSURANCE DISCLOSURE
CA Civil Code § 2955.5
CAHID.MSC 12/29/11

Box D / Room 203A, 10982 Roebling Ave., Los Angeles, CA 90024       *Save this Loan Estimate to compare with your Closing Disclosure.*

# Loan Estimate

| | | | |
|---|---|---|---|
| | | **LOAN TERM** | 6 mo. |
| | | **PURPOSE** | Refinance |
| | | **PRODUCT** | Fixed Rate |
| **DATE ISSUED** | 1/8/2016 | **LOAN TYPE** | ☒ Conventional ☐ FHA ☐ VA ☐ _CONSTRUCTION_ |
| **APPLICANTS** | Linda McCormick | **LOAN ID #** | |
| | 211 Country Club Drive | **RATE LOCK** | ☒ NO ☐ YES, until |
| | Burbank, CA 91501 | | *Before closing, your interest rate, points, and lender credits can* |
| **PROPERTY** | 211 Country Club Drive | | *change unless you lock the interest rate. All other estimated* |
| | Burbank, CA 91501 | | *closing costs expire on 1/21/2016 at* |
| **EST. PROP. VALUE** | | | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $840,000 | **NO** |
| **Interest Rate** | 12% | **NO** |
| **Monthly Principal & Interest**<br>*See Projected Payments below for your*<br>*Estimated Total Monthly Payment* | $0.00 | **NO** |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **YES** |

## Projected Payments

| Payment Calculation | | Year 1 |
|---|---|---|
| Principal & Interest | | $0.00 |
| Mortgage Insurance | + | 0 |
| Estimated Escrow<br>*Amount can increase over time* | + | 0 |
| **Estimated Total**<br>**Monthly Payment** | | **$0.00** |

| **Estimated Taxes, Insurance**<br>**& Assessments**<br>*Amount can increase over time* | $0<br>a month | **This estimate includes**<br>☐ Property Taxes<br>☐ Homeowner's Insurance<br>☐ Other:<br>*See Section G on page 2 for escrowed property costs. You must pay for other property*<br>*costs separately.* | **In escrow?** |

## Costs at Closing

| **Estimated Closing Costs** | $84,000 | Includes $84,000 in Loan Costs + $0 in Other Costs -$0<br>in Lender Credits. *See page 2 for details.* |
|---|---|---|
| **Estimated Cash to Close** | $376,000 | Includes Closing Costs. *See Calculating Cash to Close on page 2 for details.*<br>☐ From ☒ To Borrower |

v01/05/2016

# Closing Cost Details

| **Loan Costs** | | **Other Costs** | |
|---|---|---|---|
| **A. Origination Charges** | **$84,000** | **E. Taxes and Other Government Fees** | |
| % of Loan Amount (Points) | | Recording Fees and Other Taxes | |
| Loan Origination Fee | $84,000 | Transfer Taxes | |
| | | **F. Prepaids** | |
| | | Homeowner's Insurance Premium (  months) | |
| | | Mortgage Insurance Premium (  months) | |
| | | Prepaid Interest (    per day for    days @    ) | |
| | | Property Taxes (  months) | |
| | | **G. Initial Escrow Payment at Closing** | |
| | | Homeowner's Insurance | per month for  mo. |
| | | Mortgage Insurance | per month for  mo. |
| **B. Services You Cannot Shop For** | | Property Taxes | per month for  mo. |
| | | **H. Other** | |
| | | **I. TOTAL OTHER COSTS (E + F + G + H)** | |
| **C. Services You Can Shop For** | | **J. TOTAL CLOSING COSTS** | **$84,000** |
| | | D + I | $84,000 |
| | | Lender Credits | |

## Calculating Cash to Close

| | |
|---|---|
| Loan Amount | $840,000 |
| Total Closing Costs (J) | -$84,000 |
| Estimated Total Payoffs and Payments | -$380,000 |
| **Estimated Cash to Close ☐ From ☒ To Borrower** | $376,000 |
| **Estimated Closing Costs Financed** **(Paid from your Loan Amount)** | $84,000 |

| **D. TOTAL LOAN COSTS (A + B + C)** | **$84,000** |
|---|---|

v01/05/2016

## Additional Information About This Loan

| | |
|---|---|
| **LENDER** | Four Square Financial, L.P. |
| **NMLS/CA LICENSE ID** | |
| **LOAN OFFICER** | |
| **NMLS/CA LICENSE ID** | |
| **EMAIL** | |
| **PHONE** | |

| | |
|---|---|
| **MORTGAGE BROKER** | Howard Realty Group Inc. |
| **NMLS/CA LICENSE ID** | |
| **LOAN OFFICER** | |
| **NMLS/CA LICENSE ID** | |
| **EMAIL** | |
| **PHONE** | |

### Comparisons

**Use these measures to compare this loan with other loans.**

| | | |
|---|---|---|
| **In 5 Years** | $975,677 | Total you will have paid in principal, interest, mortgage insurance, and loan costs. |
| | $882,848 | Principal you will have paid off. |
| **Annual Percentage Rate (APR)** | 33.471% | Your costs over the loan term expressed as a rate. This is not your interest rate. |
| **Total Interest Percentage (TIP)** | 6.152% | The total amount of interest that you will pay over the loan term as a percentage of your loan amount. |

### Other Considerations

| | |
|---|---|
| **Appraisal** | We may order an appraisal to determine the property's value and charge you for this appraisal. We will promptly give you a copy of any appraisal, even if your loan does not close. You can pay for an additional appraisal for your own use at your own cost. |
| **Assumption** | If you sell or transfer this property to another person, we<br>☐ will allow, under certain conditions, this person to assume this loan on the original terms.<br>☒ will not allow assumption of this loan on the original terms. |
| **Homeowner's Insurance** | This loan requires homeowner's insurance on the property, which you may obtain from a company of your choice that we find acceptable. |
| **Late Payment** | If your payment is more than *15* days late, we will charge a late fee of *5% of your overdue payment of principal and interest* . |
| **Liability after Foreclosure** | Taking this loan could end any state law protection you may currently have against liability for unpaid debt if your lender forecloses on your home. If you lose this protection, you may have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information. |
| **Refinance** | Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan. |
| **Servicing** | We intend:<br>☒ to service your loan. If so, you will make your payments to us.<br>☐ to transfer servicing of your loan. |

### Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_Linda McCormick_ signature    1-4-16
Linda McCormick                          Date

v01/05/2016

Social Security Administration

Form Approved
OMB No. 0960-0760

## Authorization for the Social Security Administration (SSA) To Release Social Security Number (SSN) Verification

| Printed Name: | Date of Birth: / | Social Security Number: |
|---|---|---|
| LINDA MCCORMICK | | |

I want this information released because I am conducting the following business transaction:

LOAN

Reason (s) for using CBSV: (Please select all that apply)

- [ ] Mortgage Service
- [ ] Banking Service
- [ ] Background Check
- [ ] License Requirement
- [x] Credit Check
- [ ] Other

with the following company ("the Company"):

Company Name: FOUR SQUARE FINANCIAL, L.P.

Company Address: BOX D / ROOM 203A, 10982 ROEBLING AVE., LOS ANGELES, CALIFORNIA 90024

I authorize the Social Security Administration to verify my name and SSN to the Company and/or the Company's Agent, if applicable, for the purpose I identified.

The name and address of the Company's Agent is:   SEE ABOVE

I am the individual to whom the Social Security number was issued or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare and affirm under the penalty of perjury that the information contained herein is true and correct. I acknowledge that if I make any representation that I know is false to obtain information from Social Security records, I could be found guilty of a misdemeanor and fined up to $5,000.

This consent is valid only for 90 days from the date signed, unless indicated otherwise by the individual named above. If you wish to change this timeframe, fill in the following:

This consent is valid for ___90___ days from the date signed._____ (Please initial.)

Signature _____ Date Signed _____

Relationship (if not the individual to whom the SSN was issued):_____

Contact Information of individual signing authorization:

Address 211 COUNTRY CLUB DRIVE

City/State/Zip BURBANK, CALIFORNIA 91501

Phone Number_____

AUTHORIZATION FOR THE SOCIAL SECURITY ADMINISTRATION (SSA)
TO RELEASE SOCIAL SECURITY NUMBER (SSN) VERIFICATION
FORM SSA-89
SSA8913.MSC  (06-2013)                    Page 1 of 2

## Privacy Act Statement

SSA is authorized to collect the information on this form under Sections 205 and 1106 of the Social Security Act and the Privacy Act of 1974 (5 U.S.C. § 552a). We need this information to provide the verification of your name and SSN to the Company and/or the Company's Agent named on this form. Giving us this information is voluntary. However, we cannot honor your request to release this information without your consent. SSA may also use the information we collect on this form for such purposes authorized by law, including to ensure the Company and/or Company's Agent's appropriate use of the SSN verification service.

**Paperwork Reduction Act Statement** - This information collection meets the requirements of 44 U.S.C. §3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to complete the form. *You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. Send to this address only comments relating to our time estimate, not the completed form.*

---------------------------------------- TEAR OFF ----------------------------------------

## NOTICE TO NUMBER HOLDER

The Company and/or its Agent have entered into an agreement with SSA that, among other things, includes restrictions on the further use and disclosure of SSA's verification of your SSN. To view a copy of the entire model agreement, visit **http://www.ssa.gov/cbsv/docs/SampleUserAgreement.pdf**

AUTHORIZATION FOR THE SOCIAL SECURITY ADMINISTRATION (SSA)
TO RELEASE SOCIAL SECURITY NUMBER (SSN) VERIFICATION
FORM SSA-89
SSA8913.MSC  (06-2013)                      Page 2 of 2

# BORROWER'S CERTIFICATION AND AUTHORIZATION

## CERTIFICATION

The undersigned certify the following:

1.   I/We have applied for a mortgage loan from   FOUR SQUARE FINANCIAL, L.P.

("Lender").

In applying for the loan, I/we completed a loan application containing information on the purpose of the loan, the amount and source of the downpayment, employment and income information, and assets and liabilities.   I/We certify that all of the information is true and complete.   I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2.   I/We understand and agree that Lender reserves the right to change the mortgage loan review process.  This may include verifying the information provided on the application.

3.   I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

## AUTHORIZATION TO RELEASE INFORMATION

To Whom It May Concern:

1.   I/We have applied for a mortgage loan from Lender.  As part of the application process, Lender and the mortgage guaranty insurer (if any), may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2.   I/We authorize you to provide to Lender and to any investor to whom you may sell my mortgage, and to the mortgage guaranty insurer (if any), any and all information and documentation that they request for a period not in excess of three months from the date of my/our execution of this Authorization to Release Information.  Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3.   I/We further authorize Lender to order a consumer credit report and verify other credit information.

4.   Lender or any investor that purchases the mortgage, or the mortgage guaranty insurer (if any), may address this authorization to any party named in the loan application.  A copy of this authorization may be accepted as an original.

5.   Your prompt reply to Lender, the investor that purchased the mortgage, or the mortgage guaranty insurer (if any) is appreciated. The mortgage guaranty insurer (if any) is:

Borrower  LINDA MCCORMICK                     Date  1-4-16              Social Security Number

Borrower                                      Date                      Social Security Number

Borrower                                      Date                      Social Security Number

Borrower                                      Date                      Social Security Number

Borrower                                      Date                      Social Security Number

Borrower                                      Date                      Social Security Number

BORROWER'S CERTIFICATION AND AUTHORIZATION
TDC.LSR  02/20/14

# USA PATRIOT ACT
# IMPORTANT INFORMATION ABOUT PROCEDURES
# FOR OPENING A NEW ACCOUNT

Loan Number:

Date: JANUARY 8, 2016

Provided By: FOUR SQUARE FINANCIAL, L.P.

Applicant(s): LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

By signing below, I/we acknowledge that I/we have read and received a copy of this document.

| | |
|---|---|
| Borrower LINDA MCCORMICK          Date | Borrower                              Date |
| Borrower                          Date | Borrower                              Date |
| Borrower                          Date | Borrower                              Date |

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT
31 CFR 1020.220
IICIV.MSC  03/18/13

# HOME OWNERSHIP AND EQUITY PROTECTION ACT OF 1994
## FEDERAL TRUTH-IN-LENDING DISCLOSURE
### (REQUIRED UNDER SECTION 32 OF REGULATION Z, 12 CFR 1026.32)

Loan Number:

Date: JANUARY 8, 2016

Borrower(s): LINDA MCCORMICK

Property Address: 211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

---

## NOTICE

**YOU ARE NOT REQUIRED TO COMPLETE THIS AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THESE DISCLOSURES OR HAVE SIGNED A LOAN APPLICATION.**

**IF YOU OBTAIN THIS LOAN, THE LENDER WILL HAVE A MORTGAGE ON YOUR HOME.**

**YOU COULD LOSE YOUR HOME, AND ANY MONEY YOU HAVE PUT INTO IT, IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THE LOAN.**

---

[X] **FIXED INTEREST RATE LOANS**

You are borrowing $ 840,000.00     (optional credit insurance is [ ] is not [X] included in this amount).

The **ANNUAL PERCENTAGE RATE** on your loan will be     33.471 %.

Your regular   Monthly   payment will be $ .00     .

[X] Balloon Payment: At the end of your loan, you will still owe us a final balloon payment of $ 890,402.50 payable on JULY 8, 2016 UNLESS EXTENDED AND, IF SO, THEN PAYABLE ON JANUARY 8, 2017 WITH A FINAL BALLOON PAYMENT OF $946,800.50.

---

[ ] **VARIABLE INTEREST RATE LOANS**

You are borrowing $           (optional credit insurance is [ ] is not [ ] included in this amount).

The **ANNUAL PERCENTAGE RATE** on your loan will be           %.

Your interest rate may increase.  Increases in the interest rate could increase your payment.

Your regular           payment will be $           for the first           months.

Thereafter, the amount of your regular           payment will be based on an index and margin.  Based on the current index and the terms of your loan, your payments would be as follows:

Your actual payments after the first           months may be higher or lower.

The highest amount your payment could increase to is $           .

---

By signing below, you acknowledge that you originally received a completed copy of this notice not less than three (3) business days prior to signing your other loan documents.  This notice does not reflect all of the terms and conditions of this mortgage transaction.

Borrower LINDA MCCORMICK                    Date           Borrower                                    Date

Borrower                                    Date           Borrower                                    Date

Borrower                                    Date           Borrower                                    Date

FEDERAL TRUTH-IN-LENDING DISCLOSURE
12 CFR 1026.32
HOEPA4.MSC  12/30/11                    Page 2 of 2

# SETTLEMENT SERVICES PROVIDER LIST

Date:                      JANUARY 8, 2016

Name of Originator:  FOUR SQUARE FINANCIAL, L.P.

Borrower Name(s):   LINDA MCCORMICK

Property Address:    211 COUNTRY CLUB DRIVE, BURBANK, CALIFORNIA 91501

The loan originator who issued the GFE or Loan Estimate (as applicable) to you, the Borrower(s), is permitting you to shop for the third party settlement services listed below.  This list also contains the names, addresses, and telephone numbers of the settlement service providers who can provide the services described.  Our providing you with this list is not to be construed in any way as an endorsement of any of the service providers listed below.  You are also under no obligation to select any of the settlement service providers shown on this list and are free to shop and select your own service provider for any of the services listed below.  The estimate of charges for the settlement services listed below that are reflected on the GFE or Loan Estimate (as applicable) is based on the charges of the particular service provider listed.  The HUD-1 Settlement Statement or Closing Disclosure (as applicable) will reflect the name and actual charges of the provider ultimately selected by you as well as other settlement services selected directly by the loan originator of the GFE or Loan Estimate (as applicable).  If no service providers are listed below, the loan originator is not permitting you to shop for any third party settlement services.

| Service | Service Provider Name, Address and Telephone Number | Affiliated Business (Y/N) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

SETTLEMENT SERVICES PROVIDER LIST
12 CFR 1024.7
SSPL.GFE  06/22/15                        Page 1 of 2

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

_Linda McCormick_ 1-4-16

Borrower LINDA MCCORMICK      Date

Borrower      Date

Borrower      Date

Borrower      Date

Borrower      Date

Borrower      Date

SETTLEMENT SERVICES PROVIDER LIST
12 CFR 1024.7
SSPLGFE  06/22/15          Page 2 of 2

# EXHIBIT "2"



# LOAN AGREEMENT

### by and between

### Linda R. McCormick,

### as Borrower,

### and

### Four Square Financial, L.P.,
### a California limited partnership,

### as Lender

# TABLE OF CONTENTS

Page

Article I General Information. ...................................................................................................... 1
    Section 1.1    Conditions to Closing ...................................................................... 1
    Section 1.2    Schedules ...................................................................................... 1
    Section 1.3    Defined Terms ............................................................................... 1

Article II Terms of the Loan. ....................................................................................................... 1
    Section 2.1    The Loan ....................................................................................... 1
    Section 2.2    Initial Advance. .............................................................................. 1
    Section 2.3    Additional Advances. ...................................................................... 2
    Section 2.4    Liability of Lender .......................................................................... 3

Article III Representations and Warranties. .................................................................................. 3
    Section 3.1    [Omitted] ....................................................................................... 4
    Section 3.2    Other Documents; Laws .................................................................. 4
    Section 3.3    Taxes. ........................................................................................... 4
    Section 3.4    Legal Actions. ................................................................................ 4
    Section 3.5    [Omitted] ....................................................................................... 4
    Section 3.6    [Omitted] ....................................................................................... 4
    Section 3.7    Financial Statements ....................................................................... 4
    Section 3.8    No Material Adverse Change ............................................................ 4
    Section 3.9    ERISA and Prohibited Transactions .................................................. 4
    Section 3.10   Compliance with Laws and Zoning and Other Requirements;
                    Encroachments. ............................................................................. 5
    Section 3.11   Certificates of Occupancy ................................................................ 5
    Section 3.12   Utilities; Roads; Access ................................................................... 5
    Section 3.13   Other Liens ................................................................................... 5
    Section 3.14   No Defaults. .................................................................................. 5
    Section 3.15   Tenancy in Common Agreement ....................................................... 5

Article IV Affirmative Covenants and Agreements. ...................................................................... 6
    Section 4.1    Compliance with Laws; Use of Proceeds .......................................... 6
    Section 4.2    Inspections; Cooperation ................................................................. 6
    Section 4.3    Payment and Performance of Contractual Obligations. ......................... 6
    Section 4.4    Insurance. ..................................................................................... 6
    Section 4.5    Adjustment of Condemnation and Insurance Claims .......................... 6
    Section 4.6    Utilization of Net Proceeds .............................................................. 7
    Section 4.7    [Omitted] ....................................................................................... 8
    Section 4.8    Books and Records; Financial Statements; Tax Returns ...................... 8
    Section 4.9    Estoppel Certificates ...................................................................... 8
    Section 4.10   Taxes; Tax Receipts ....................................................................... 8
    Section 4.11   Lender's Rights to Pay and Perform. ................................................ 8
    Section 4.12   Reimbursement; Interest. ................................................................. 9
    Section 4.13   Notification by Borrower. ................................................................ 9
    Section 4.14   Indemnification by Borrower. .......................................................... 9
    Section 4.15   Fees and Expenses ......................................................................... 9
    Section 4.16   Appraisals ................................................................................... 10
    Section 4.17   [Omitted] ..................................................................................... 10

BN 19768829v6

Section 4.18   Preservation of Rights.................................................................10
Section 4.19   Income from Property..................................................................10
Section 4.20   Representations and Warranties..................................................10

Article V Negative Covenants. ..................................................................10
Section 5.1   Conditional Sales........................................................................10
Section 5.2   Insurance Policies and Bonds .....................................................10
Section 5.3   Commingling ...............................................................................10
Section 5.4   Additional Debt............................................................................11
Section 5.5   [Omitted].....................................................................................11
Section 5.6   [Omitted].....................................................................................11

Article VI Events of Default. .....................................................................11
Section 6.1   Payment Default ..........................................................................11
Section 6.2   Default Under Other Loan Documents .........................................11
Section 6.3   Accuracy of Information; Representations and Warranties............11
Section 6.4   Deposits ......................................................................................11
Section 6.5   Insurance Obligations ..................................................................12
Section 6.6   Other Obligations ........................................................................12
Section 6.7   Damage to Improvements ............................................................12
Section 6.8   Lapse of Permits or Approvals .....................................................12
Section 6.9   Mechanic's Lien ...........................................................................12
Section 6.10   Bankruptcy..................................................................................12
Section 6.11   Appointment of Receiver, Trustee, Liquidator ..............................12
Section 6.12   Inability to Pay Debts ..................................................................12
Section 6.13   Judgment.....................................................................................12
Section 6.14   Dissolution; Change in Business Status........................................13
Section 6.15   Default Under Other Indebtedness or Agreement .........................13
Section 6.16   Death; Disability ..........................................................................13
Section 6.17   Change in Interest .......................................................................13
Section 6.18   Material Adverse Change.............................................................13
Section 6.19   Nonpayment of Taxes..................................................................13

Article VII Remedies on Default. ..............................................................13
Section 7.1   Remedies on Default....................................................................13
Section 7.2   No Release or Waiver; Remedies Cumulative and Concurrent......15

Article VIII Miscellaneous. .......................................................................15
Section 8.1   Further Assurances; Authorization to File Documents...................15
Section 8.2   No Warranty by Lender .................................................................16
Section 8.3   Standard of Conduct of Lender.....................................................16
Section 8.4   No Partnership ..............................................................................16
Section 8.5   Severability ...................................................................................16
Section 8.6   Notices .........................................................................................16
Section 8.7   Permitted Successors and Assigns; Disclosure of Information ......17
Section 8.8   Modification; Waiver......................................................................18
Section 8.9   Third Parties; Benefit....................................................................18
Section 8.10   Rules of Construction ..................................................................18
Section 8.11   Counterparts................................................................................18
Section 8.12   Publicity.......................................................................................18
Section 8.13   Governing Law.............................................................................19

BN 19768829v6

Section 8.14    Time of Essence ........................................................................................... 19
Section 8.15    Electronic Transmission of Data .................................................................. 19
Section 8.16    Dispute Resolution Provision ...................................................................... 19
Section 8.17    Forum ........................................................................................................... 21
Section 8.18    USA Patriot Act Notice ............................................................................... 21
Section 8.19    Entire Agreement ........................................................................................ 22

## SCHEDULES TO TERM LOAN AGREEMENT

Schedule 1    Definitions

Schedule 2    Form of Draw Request

BN 19768829v6

# LOAN AGREEMENT

This Loan Agreement (this "Agreement") is made as of the eighth day of January, 2016, by and between Linda R. McCormick, an individual ("Borrower") and Four Square Financial, L.P., a California limited partnership ("Lender").

## RECITALS

Borrower has applied to Lender for a loan to pay off a loan from Tony McCormick, which loan was made to Borrower to reinstate a default under an existing senior loan from Wells Fargo Bank, to pay off the senior loan from Wells Fargo Bank, and for rehabilitation and remodeling costs pertaining to the real property and improvements located at 211 Country Club Drive, Burbank, CA 91501 (the "Property"). Lender has agreed to make the loan on the terms and conditions set forth in this Agreement and in the other documents evidencing and securing the loan.

Now, therefore, in consideration of the premises, and in further consideration of the mutual covenants and agreements herein set forth, the parties covenant and agree as follows:

## AGREEMENTS

### Article I
### General Information.

Section 1.1    Conditions to Closing.

The conditions precedent to closing the Loan and recording the Mortgage are set forth in the Closing Checklist.

Section 1.2    Schedules.

The Schedules attached to this Agreement are incorporated herein and made a part hereof.

Section 1.3    Defined Terms.

Capitalized terms in this Agreement shall have the meanings ascribed to such terms in the Preamble hereto and in Schedule 1.

### Article II
### Terms of the Loan.

Section 2.1    The Loan.

Borrower agrees to borrow the Loan from Lender, and Lender agrees to lend the Loan to Borrower, subject to the terms and conditions herein set forth, in an amount not to exceed the Loan Amount. Interest shall accrue and be payable in arrears only on sums advanced hereunder for the period of time outstanding. The Loan is not a revolving loan; amounts repaid may not be re-borrowed.

Section 2.2    Initial Advance.

At closing, Lender shall advance Loan proceeds in the amounts, and to the parties, specified in the closing statement and/or escrow instructions agreed upon between Borrower and Lender. Subject to the satisfaction of all of the below closing conditions, Lender will make an initial advance of $501,500.00

1

to the appropriate parties, comprised of the following: (i) the principal sum of $120,000 for payoff of a loan to Borrower from Tony McCormick; (ii) the principal sum of $380,000 for payoff of the Wells Fargo Loan; (iii) a loan origination fee in an amount equal to $84,000.00 (the "Loan Fee"), which Loan Fee includes the fees payable to the licensed real estate broker that arranged the Loan; (iv) the $1,500.00 Tax Collection; (v) the $2,500 Title Fee; and (v) the $7,500 Legal Fee. In the event that the final amount of the actual outstanding taxes due under the Tax Lien, or the actual out of pocket title fees or legal fees incurred by Lender in connection with the initial close of the Loan differ from the Tax Collection, Title Fee or Legal Fee, respectively, the outstanding principal balance hereunder will be deemed reduced or increased, as applicable, by an amount equal to the difference between the Tax Collection, Title Fee or Legal Fee and the amount of the actual outstanding taxes due under the Tax Lien, title or legal fees incurred by Lender (which shall be evidenced by invoices provided by the Franchise Tax Board of California, Title Company or Lender's legal counsel, respectively). Lender shall not be obligated to make and advance after the initial advance of the Loan until and unless each of the following conditions precedent shall have been satisfied as determined in the sole discretion of Lender:

(a)    Lender shall have received and approved the final executed Construction Contract and the final executed Architect's Contract;

(b)    Lender shall have received copies of all required permits and licenses for construction and related activities;

(c)    Lender and Lender's Construction consultant shall have received and approved the final Plans and Specifications, which review shall confirm that the scope of the construction work will be timely completed within budget and otherwise in a manner satisfactory to Lender and its Construction Consultant;

(d)    Lender shall have received and approved the Budget, which Budget shall detail all hard costs, soft costs and financing costs (as approved by Lender);

(e)    Lender shall have approved the General Contractor or any successor general contractor employed in connection with the construction of the Improvements, and Borrower shall have furnished to Lender the name, address, and telephone number of the General Contractor. Lender shall have the right to communicate with any person to verify the facts disclosed or by any application for any advance, or for any other purpose; and

(f)    There shall not then exist a Default or Event of Default.

Section 2.3    Additional Advances.

After the closing and after the initial advance of Loan proceeds, Lender may, in its sole and absolute discretion, make additional advances of Loan proceeds to Borrower in an amount not to exceed $244,500 (each, a "Future Advance"), subject to the satisfaction of each of the following conditions as determined in the sole and absolute discretion of Lender:

(a)    Lender shall have received a draw request signed by an Authorized Signer in the form attached hereto as Schedule 3 or in another form approved by Lender. Each draw request shall be supported by such information and documentation (such as paid receipts, invoices, statements of accounts, lien releases, etc.) as Lender may require to assure that amounts requested are to be used to reimburse Borrower for costs previously paid by Borrower or to pay costs incurred by Borrower that are to be paid from proceeds of the Loan, as set forth in the Budget;

2

(b)     the representations and warranties contained in the Loan Documents are true and correct in all material respects on and as of the date of such Future Advance;

(c)     no Default or Event of Default shall have occurred and be continuing, or would exist after giving effect to such Future Advance;

(d)     Lender shall have received a satisfactory endorsement to its title insurance policy insuring the Mortgage and any other mortgages or deeds of trust securing the Loan;

(e)     Interim acknowledgments of payment and waivers and releases of liens from all Persons who have furnished labor, materials and/or services in the Construction of the Improvements, covering work performed, materials supplied and services rendered through the date of the last preceding advance as required by Lender;

(f)     Evidence that the Improvements have not been materially damaged by fire or other Casualty unless Lender shall have received Insurance Proceeds, or satisfactory assurance that it will receive such proceeds in a timely manner pursuant to Section 4.10, sufficient in the judgment of Lender to effect a satisfactory restoration and completion of the Improvements in accordance with the terms of the Mortgage and this Agreement;

(g)     Evidence that all work requiring inspection by any Governmental Authority having or claiming jurisdiction has been duly inspected and approved by such authority and by any rating or inspection organization, bureau, association or office having or claiming jurisdiction;

(h)     Evidence, including the Construction Consultant Report, that all work completed at the time of the application for an advance has been performed in a good and workmanlike manner, that all materials and fixtures usually furnished and installed at that stage of construction have been so furnished and installed, that the Improvements can be completed in accordance with the Project Schedule, and that the balance of the Loan proceeds then held by Lender and available for advance pursuant to the terms of this Agreement, together with other funds which Lender determines to be available to Borrower for such purpose, are and will be sufficient to pay the cost of such completion;

(i)     No condition or situation shall exist at the Land which, in the reasonable determination of Lender, constitutes a danger to or impairment of the Property or presents a danger or hazard to the public; and

(j)     Lender shall have received such amendments, documents, agreements, reaffirmations as Lender may require with respect to the making of the advance of any Future Advance.

Section 2.4     Liability of Lender.

Lender shall in no event be responsible or liable to any Person other than Borrower for the disbursement of or failure to disburse the Loan proceeds or any part thereof and no Person other than Borrower shall have any right or claim against Lender under this Agreement or the other Loan Documents.

**Article III**
**Representations and Warranties.**

Borrower makes the following representations and warranties to Lender as of the date hereof and as of the date of each advance hereunder:

3

Section 3.1    [Omitted].

Section 3.2    Other Documents; Laws.

The execution and performance of the Loan Documents to which Borrower is a party and the consummation of the transactions contemplated thereby will not conflict with, result in any breach of, or constitute a default under any contract, agreement, document or other instrument to which Borrower is a party or by which Borrower or any of its properties may be bound or affected, and such actions do not and will not violate or contravene any Law to which Borrower is subject.

Section 3.3    Taxes.

Borrower has filed all federal, state, county and municipal Tax returns required to have been filed by Borrower and has paid all Taxes which have become due pursuant to such returns or pursuant to any Tax assessments received by Borrower.

Section 3.4    Legal Actions.

There are no Claims or investigations by or before any court or Governmental Authority, pending, or to the best of Borrower's knowledge and belief, threatened against or affecting Borrower, Borrower's business or the Property.  Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority affecting Borrower or the Property.

Section 3.5    [Omitted].

Section 3.6    [Omitted].

Section 3.7    Financial Statements.

The financial statements heretofore delivered by Borrower to Lender are true and correct in all respects, have been prepared in accordance with sound accounting principles consistently applied, and fairly present the respective financial conditions of the subjects thereof as of the respective dates thereof.

Section 3.8    No Material Adverse Change.

No material adverse change has occurred in the financial conditions reflected in the financial statements of Borrower since the respective dates of such statements, and no material additional liabilities have been incurred by Borrower since the dates of such statements other than the borrowings contemplated herein or as approved in writing by Lender.

Section 3.9    ERISA and Prohibited Transactions.

As of the date hereof and throughout the term of the Loan: (a) Borrower is not and will not be (i) an "employee benefit plan," as defined in Section 3(3) of ERISA, (ii) a "governmental plan" within the meaning of Section 3(32) of ERISA, or (iii) a "plan" within the meaning of Section 4975(e) of the Code; (b) the assets of Borrower do not and will not constitute "plan assets" within the meaning of the United States Department of Labor Regulations set forth in Section 2510.3-101 of Title 29 of the Code of Federal Regulations; (c) transactions by or with Borrower are not and will not be subject to state statutes applicable to Borrower regulating investments of fiduciaries with respect to governmental plans; and (d) Borrower will not engage in any transaction that would cause any Obligation or any action taken or to

4

be taken hereunder (or the exercise by Lender of any of its rights under the Mortgage or any of the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under ERISA or Section 4975 of the Code. Borrower agrees to deliver to Lender such certifications or other evidence of compliance with the provisions of this Section as Lender may from time to time request.

Section 3.10    Compliance with Laws and Zoning and Other Requirements; Encroachments.

Borrower is in compliance with the requirements of all applicable Laws. The use of the Property complies with applicable zoning ordinances, regulations and restrictive covenants affecting the Land. All use and other requirements of any Governmental Authority having jurisdiction over the Property have been satisfied. No violation of any Law exists with respect to the Property. The Improvements are constructed entirely on the Land and do not encroach upon any easement or right-of-way, or upon the land of others. The Improvements comply with all applicable building restriction lines and set-backs, however established, and are in strict compliance with all applicable use or other restrictions and the provisions of all applicable agreements, declarations and covenants and all applicable zoning and subdivision ordinances and regulations.

Section 3.11    Certificates of Occupancy.

All certificates of occupancy and other permits and licenses necessary or required in connection with the use and occupancy of the Improvements have been validly issued.

Section 3.12    Utilities; Roads; Access.

All utility services necessary for the operation of the Improvements for their intended purposes have been fully installed, including telephone service, cable television, water supply, storm and sanitary sewer facilities, natural gas and electric facilities, including cabling for telephonic and data communication, and the capacity to send and receive wireless communication. All roads and other accesses necessary to serve the Land and Improvements have been completed, are serviceable in all weather, and where required by the appropriate Governmental Authority, have been dedicated to and formally accepted by such Governmental Authority.

Section 3.13    Other Liens.

Except for contracts for labor, materials and services furnished or to be furnished in connection with any construction at the Property, including any construction of tenant improvements, Borrower has made no contract or arrangement of any kind the performance of which by the other party thereto would give rise to a lien on the Property.

Section 3.14    No Defaults.

There is no Default or Event of Default under any of the Loan Documents, and there is no default or event of default under any material contract, agreement or other document related to the construction or operation of the Improvements.

Section 3.15    Tenancy in Common Agreement.

There is no tenancy in common agreement or other similar agreement among the owners of the Property relating to the Property and/or the common ownership thereof amongst the owners of the Property.

## Article IV
## Affirmative Covenants and Agreements.

Borrower covenants as of the date hereof and until such time as all Obligations shall be paid and performed in full, that:

Section 4.1    Compliance with Laws; Use of Proceeds.

Borrower shall comply with all Laws and all orders, writs, injunctions, decrees and demands of any court or any Governmental Authority affecting Borrower or the Property. Borrower shall use all proceeds of the Loan for business purposes which are not in contravention of any Law or any Loan Document.

Section 4.2    Inspections; Cooperation.

Borrower shall permit representatives of Lender to enter upon the Land, to inspect the Improvements, to examine all records and books of account maintained by or on behalf of Borrower relating thereto and to discuss the affairs, finances and accounts pertaining to the Loan with representatives of Borrower. Except in the event of an emergency, Lender shall give Borrower at least twenty-four hours' notice by telephone in each instance before entering upon the Land and/or exercising any other rights granted in this Section.

Section 4.3    Payment and Performance of Contractual Obligations.

Borrower shall perform in a timely manner all of its obligations under any and all contracts and agreements related to any construction activities at the Property or the maintenance or operation of the Improvements, and Borrower will pay when due all bills for services or labor performed and materials supplied in connection with such construction, maintenance and/or operation. Within thirty (30) days after the filing of any mechanic's lien or other lien or encumbrance against the Property, Borrower will promptly discharge the same by payment or filing a bond or otherwise as permitted by Law. So long as Lender's security has been protected by the filing of a bond or otherwise in a manner satisfactory to Lender in its sole and absolute discretion, Borrower shall have the right to contest in good faith any claim, lien or encumbrance, provided that Borrower does so diligently and without prejudice to Lender or delay in completing construction of any tenant improvements.

Section 4.4    Insurance.

Borrower shall maintain insurance in accordance with the terms and conditions of the Mortgage.

Section 4.5    Adjustment of Condemnation and Insurance Claims.

Borrower shall give prompt Notice to Lender of any Casualty or any Condemnation or threatened Condemnation. Lender is authorized, at its sole and absolute option, to commence, appear in and prosecute, in its own or Borrower's name, any action or proceeding relating to any Condemnation or Casualty, and to make proof of loss for and to settle or compromise any Claim in connection therewith. In such case, Lender shall have the right to receive all Condemnation Awards and Insurance Proceeds, and may deduct therefrom any or all of its Expenses. However, so long as no Event of Default has occurred and Borrower is diligently pursuing its rights and remedies with respect to a Claim, Lender will obtain Borrower's written consent (which consent shall not be unreasonably withheld or delayed) before making proof of loss for or settling or compromising such Claim. Borrower agrees to diligently assert its rights and remedies with respect to each Claim and to promptly pursue the settlement and compromise of

6

each Claim subject to Lender's approval, which approval shall not be unreasonably withheld or delayed. If, prior to the receipt by Lender of any Condemnation Award or Insurance Proceeds, the Property shall have been sold pursuant to the provisions of the Mortgage, Lender shall have the right to receive such funds (a) to the extent of any deficiency found to be due upon such sale with interest thereon (whether or not a deficiency judgment on the Mortgage shall have been sought or recovered or denied), and (b) to the extent necessary to reimburse Lender for its Expenses. If any Condemnation Awards or Insurance Proceeds are paid to Borrower, Borrower shall receive the same in trust for Lender. Within ten (10) days after Borrower's receipt of any Condemnation Awards or Insurance Proceeds, Borrower shall deliver such awards or proceeds to Lender in the form in which they were received, together with any endorsements or documents that may be necessary to effectively negotiate or transfer the same to Lender. Borrower agrees to execute and deliver from time to time, upon the request of Lender, such further instruments or documents as may be requested by Lender to confirm the grant and assignment to Lender of any Condemnation Awards or Insurance Proceeds.

Section 4.6    Utilization of Net Proceeds.

(a)    Net Proceeds must be utilized either for payment of the Obligations or for the restoration of the Property. Net Proceeds may be utilized for the restoration of the Property only if no Default shall exist and only if in the reasonable judgment of Lender (i) there has been no material adverse change in the financial viability of the Improvements, (ii) the Net Proceeds, together with other funds deposited with Lender for that purpose, are sufficient to pay the cost of the restoration pursuant to a budget and plans and specifications approved by Lender, (iii) the restoration can be completed prior to the final maturity of the Loan, and (iv) following restoration, the Property will have a fair market value at least equal to its fair market value immediately prior to the Casualty or Condemnation. Otherwise, Net Proceeds shall be utilized for payment of the Obligations.

(b)    If Net Proceeds are to be utilized for the restoration of the Property, the Net Proceeds, together with any other funds deposited with Lender for that purpose, must be deposited in a Borrower's Deposit Account, which shall be an interest-bearing account, with all accrued interest to become part of Borrower's deposit, which shall be maintained at a financial institution determined by Lender. Borrower agrees that it shall include all interest and earnings on any such deposit as its income (and, if Borrower is a partnership or other pass-through entity, the income of its partners, members or beneficiaries, as the case may be), and shall be the owner of all funds on deposit in the Borrower's Deposit Account for federal and applicable state and local tax purposes. Lender shall have the exclusive right to manage and control all funds in the Borrower's Deposit Account, but Lender shall have no fiduciary duty with respect to such funds. Lender will advance the deposited funds from time to time to Borrower for the payment of costs of restoration of the Property upon presentation of evidence acceptable to Lender that such restoration has been completed satisfactorily and lien-free. Any account fees and charges may be deducted from the balance, if any, in the Borrower's Deposit Account. Borrower grants to Lender a security interest in the Borrower's Deposit Account and all funds hereafter deposited to such deposit account, and any proceeds thereof, as security for the Obligations. Such security interest shall be governed by the Uniform Commercial Code of the State, and Lender shall have available to it all of the rights and remedies available to a secured party thereunder. The Borrower's Deposit Account may be established and held in such name or names as Lender shall deem appropriate, including in the name of Lender. Borrower hereby constitutes and appoints Lender and any officer or agent of Lender its true and lawful attorneys-in-fact with full power of substitution to open the Borrower's Deposit Account and to do any and every act that Borrower might do on its own behalf to fulfill the terms of this Section 4.6. To the extent permitted by Law, Borrower hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. It is understood and agreed that this power of attorney, which shall be deemed to be a power coupled with an interest, cannot be revoked.

7

Section 4.7    [Omitted].

Section 4.8    Books and Records; Financial Statements; Tax Returns.

Borrower will keep and maintain full and accurate books and records administered in accordance with sound accounting principles, consistently applied, showing in detail the earnings and expenses of the Property and the operation thereof. Borrower will keep and maintain its books and records, including recorded data of any kind and regardless of the medium of recording, at the address of Borrower set forth in Section 8.6. Borrower shall permit Lender, or any Person authorized by Lender, to inspect and examine such books and records (regardless of where maintained) and all supporting vouchers and data and to make copies and extracts therefrom at all reasonable times and as often as may be requested by Lender.

Borrower will furnish or cause to be furnished to Lender such financial statements, tax returns and additional information, reports or statements as Lender may from time to time reasonably request in connection with the foregoing.

All financial statements must be in form and detail acceptable to Lender and must be certified as to accuracy by Borrower or respective Guarantor as the case may be. Borrower shall provide, upon Lender's request, convenient facilities for the audit and verification of any such statement. All certifications and signatures on behalf of corporations, partnerships, limited liability companies and other entities shall be by a representative of the reporting party satisfactory to Lender. All financial statements for individuals shall be on Lender's then current personal financial statement form or in another form satisfactory to Lender.

Section 4.9    Estoppel Certificates.

Within ten (10) days after any request by Lender or a proposed assignee or purchaser of the Loan or any interest therein, Borrower shall certify in writing to Lender, or to such proposed assignee or purchaser, the then unpaid balance of the Loan and whether Borrower claims any right of defense or setoff to the payment or performance of any of the Obligations, and if Borrower claims any such right of defense or setoff, Borrower shall give a detailed written description of such claimed right.

Section 4.10    Taxes; Tax Receipts.

Borrower shall pay and discharge all Taxes prior to the date on which penalties are attached thereto unless and to the extent only that such Taxes are contested in accordance with the terms of the Mortgage. If Borrower fails, following demand, to provide Lender the tax receipts required under the Mortgage, without limiting any other remedies available to Lender, Lender may, at Borrower's sole expense, obtain and enter into a tax services contract with respect to the Property with a tax reporting agency satisfactory to Lender.

Section 4.11    Lender's Rights to Pay and Perform.

If, after any required notice, Borrower fails to promptly pay or perform any of the Obligations within any applicable grace or cure periods, Lender, without Notice to or demand upon Borrower, and without waiving or releasing any Obligation or Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Borrower. Lender may enter upon the Property for that purpose and take all action thereon as Lender considers necessary or appropriate.

8

Section 4.12    Reimbursement; Interest.

If Lender shall incur any Expenses or pay any Claims by reason of the Loan or the rights and remedies provided under the Loan Documents (regardless of whether or not any of the Loan Documents expressly provide for an indemnification by Borrower against such Claims), Lender's payment of such Expenses and Claims shall constitute advances to Borrower which shall be paid by Borrower to Lender on demand together with interest thereon from the date incurred until paid in full at the rate of interest then applicable to the Loan under the terms of the Note. All other advances shall be secured by the Mortgage, the Security Agreement, and the other Loan Documents as fully as if made to Borrower, regardless of the disposition thereof by the party or parties to whom such advance is made. Notwithstanding the foregoing, however, in any action or proceeding to foreclose the Mortgage or to recover or collect the Obligations, the provisions of Law governing the recovery of costs, disbursements and allowances shall prevail unaffected by this Section.

Section 4.13    Notification by Borrower.

Borrower will promptly give Notice to Lender of the occurrence of any Default or Event of Default hereunder or under any of the other Loan Documents. Borrower will also promptly give Notice to Lender of any claim of a default by Borrower, or any claim by Borrower of a default by any other party, under any property management contract or any Lease.

Section 4.14    Indemnification by Borrower.

Borrower agrees to indemnify Lender and to hold Lender harmless from and against, and to defend Lender by counsel approved by Lender against, any and all Claims directly or indirectly arising out of or resulting from any transaction, act, omission, event or circumstance in any way connected with the Property or the Loan, including any Claim arising out of or resulting from: (a) any construction activity at the Property, including any defective workmanship or materials; (b) any failure by Borrower to comply with the requirements of any Laws or to comply with any agreement that applies or pertains to the Property, including any agreement with a broker or "finder" in connection with the Loan or other financing of the Property; (c) any failure by Borrower to observe and perform any of the obligations imposed upon the landlord under the Leases; (d) any other Default or Event of Default hereunder or under any of the other Loan Documents; or (e) any assertion or allegation that Lender is liable for any act or omission of Borrower or any other Person in connection with the ownership, financing, leasing, operation or sale of the Property; provided, however, that Borrower shall not be obligated to indemnify Lender with respect to any Claim arising solely from the gross negligence or willful misconduct of Lender. The agreements and indemnifications contained in this Section shall apply to Claims arising both before and after the repayment of the Loan and shall survive the repayment of the Loan, any foreclosure or deed, assignment or conveyance in lieu thereof and any other action by Lender to enforce the rights and remedies of Lender hereunder or under the other Loan Documents.

Section 4.15    Fees and Expenses.

Borrower shall pay all fees, charges, costs and expenses required to satisfy the conditions of the Loan Documents, including, without limitation, the Loan Fee and the Legal Fee. The Loan Fee and the Legal Fee shall be fully earned as of the date of the Lender's funding of the Loan. Without limitation of the foregoing, Borrower will pay, when due, and if paid by Lender will reimburse Lender on demand for, all fees and expenses of any construction consultant (if any), the title insurer, environmental engineers, appraisers, surveyors and Lender's counsel in connection with the closing, administration, modification, extension or any "workout" of the Loan, or the enforcement of Lender's rights and remedies under any of the Loan Documents.

9

Section 4.16    Appraisals.

Lender may obtain from time to time an appraisal of all or any part of the Property, prepared in accordance with written instructions from Lender, from a third-party appraiser satisfactory to, and engaged directly by, Lender. The cost of one such appraisal obtained by Lender in each calendar year and the cost of each such appraisal obtained by Lender following the occurrence of an Event of Default shall by borne by Borrower and shall be paid by Borrower on demand.

Section 4.17    [Omitted].

Section 4.18    Preservation of Rights.

Borrower shall obtain, preserve and maintain in good standing, as applicable, all rights, privileges and franchises necessary or desirable for the operation of the Property and the conduct of Borrower's business thereon or therefrom.

Section 4.19    Income from Property.

Borrower shall first apply all income derived from the Property, including all income from Leases, to pay costs and expenses associated with the ownership, maintenance, operation and leasing of the Property, including all amounts then required to be paid under the Loan Documents, before using or applying such income for any other purpose. No such income shall be distributed or paid to any member, partner, shareholder or, if Borrower is a trust, to any beneficiary or trustee, unless and until all such costs and expenses which are then due shall have been paid in full.

Section 4.20    Representations and Warranties.

Borrower shall take all actions and shall do all things necessary or desirable to cause all of Borrower's representations and warranties in this Agreement to be true and correct at all times.

## Article V
## Negative Covenants.

Borrower covenants as of the date hereof and until such time as all Obligations shall be paid and performed in full, that:

Section 5.1    Conditional Sales.

Borrower shall not incorporate in the Improvements any property acquired under a conditional sales contract or lease or as to which the vendor retains title or a security interest, without the prior written consent of Lender.

Section 5.2    Insurance Policies and Bonds.

Borrower shall not do or permit to be done anything that would affect the coverage or indemnities provided for pursuant to the provisions of any insurance policy, performance bond, labor and material payment bond or any other bond given in connection with any construction at the Property, including any construction of tenant improvements.

Section 5.3    Commingling.

Borrower shall not commingle the funds and other assets of Borrower relating to the Property

10

with those of any affiliate or any other Person, including those funds and assets of Borrower that are unrelated to the Property.

Section 5.4    Additional Debt.

Borrower shall not incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (a) the Loan and (b) advances or trade debt or accrued expenses incurred in the ordinary course of business of operating the Property.  No other debt may be secured by the Property, whether senior, subordinate or pari passu.

Section 5.5    [Omitted].

Section 5.6    [Omitted].

## Article VI
## Events of Default.

The occurrence or happening, from time to time, of any one or more of the following shall constitute an Event of Default under this Agreement:

Section 6.1    Payment Default.

Borrower fails to pay any Obligation under this Agreement when due, whether on the scheduled due date or upon acceleration, maturity or otherwise.

Section 6.2    Default Under Other Loan Documents.

An Event of Default (as defined therein) occurs under the Note or the Mortgage or any other Loan Document, or Borrower or Guarantor fails to promptly pay, perform, observe or comply with any term, obligation or agreement contained in any of the Loan Documents (within any applicable grace or cure period).

Section 6.3    Accuracy of Information; Representations and Warranties.

Any information contained in any financial statement, schedule, report or any other document delivered by Borrower, Guarantor or any other Person to Lender in connection with the Loan proves at any time not to be in all respects true and accurate, or Borrower, Guarantor or any other Person shall have failed to state any material fact or any fact necessary to make such information not misleading, or any representation or warranty contained in this Agreement or in any other Loan Document or other document, certificate or opinion delivered to Lender in connection with the Loan, proves at any time to be incorrect or misleading in any material respect either on the date when made or on the date when reaffirmed pursuant to the terms of this Agreement.

Section 6.4    Deposits.

Borrower fails to deposit funds with Lender, in the amount requested by Lender, pursuant to the provisions of Section 4.6, within ten (10) days from the effective date of a Notice from Lender requesting such deposit, or Borrower fails to deliver to Lender any Condemnation Awards or Insurance Proceeds within ten (10) days after Borrower's receipt thereof.

BN 19768829v6

Section 6.5      Insurance Obligations.

Borrower fails to promptly perform or comply with any of the covenants contained in the Loan Documents with respect to maintaining insurance, including the covenants contained in <u>Section 4.4</u>.

Section 6.6      Other Obligations.

Borrower fails to promptly perform or comply with any of the Obligations set forth in this Agreement (other than those expressly described in other Sections of this <u>Article VI</u>), and such failure continues uncured for a period of thirty (30) days.

Section 6.7      Damage to Improvements.

The Improvements are substantially damaged or destroyed by fire or other casualty and Lender determines that the Improvements cannot be restored in accordance with the terms and provisions of this Agreement and the Mortgage.

Section 6.8      Lapse of Permits or Approvals.

Any permit, license, certificate or approval that Borrower is required to obtain with respect to any construction activities at the Property or the operation, leasing or maintenance of the Improvements or the Property lapses or ceases to be in full force and effect.

Section 6.9      Mechanic's Lien.

A lien for the performance of work or the supply of materials filed against the Property, or any stop notice served on Borrower, any contractor of Borrower, or Lender, remains unsatisfied or unbonded for a period of thirty (30) days after the date of filing or service.

Section 6.10      Bankruptcy.

Borrower or any Guarantor files a bankruptcy petition or makes a general assignment for the benefit of creditors, or a bankruptcy petition is filed against Borrower or any Guarantor and such involuntary bankruptcy petition continues undismissed for a period of sixty (60) days after the filing thereof.

Section 6.11      Appointment of Receiver, Trustee, Liquidator.

Borrower or any Guarantor applies for or consents in writing to the appointment of a receiver, trustee or liquidator of Borrower, any Guarantor, the Property, or all or substantially all of the other assets of Borrower or any Guarantor, or an order, judgment or decree is entered by any court of competent jurisdiction on the application of a creditor appointing a receiver, trustee or liquidator of Borrower, any Guarantor, the Property, or all or substantially all of the other assets of Borrower.

Section 6.12      Inability to Pay Debts.

Borrower or any Guarantor becomes unable or admits in writing its inability or fails generally to pay its debts as they become due.

Section 6.13      Judgment.

A final nonappealable judgment for the payment of money involving more than $25,000 is

12

entered against Borrower or any Guarantor, and Borrower or such Guarantor fails to discharge the same, or fails to cause it to be discharged or bonded off to Lender's satisfaction, within thirty (30) days from the date of the entry of such judgment.

Section 6.14     Dissolution; Change in Business Status.

Unless the written consent of Lender is previously obtained, all or substantially all of the business assets of Borrower or any Guarantor are sold, or there occurs any change in the form of business entity through which Borrower or any Guarantor presently conducts its business or any merger or consolidation involving Borrower or any Guarantor.

Section 6.15     Default Under Other Indebtedness or Agreement.

Borrower or any Guarantor is in default under any other agreement, indebtedness, obligations (other than the Loan) owed by Borrower or such Guarantor to Lender.

Section 6.16     Death; Disability.

Borrower or Guarantor dies or becomes incapacitated, unless within ninety (90) days after such death or incapacity a substitute Guarantor or Borrower acceptable to Lender, in its sole and absolute discretion, agrees to assume and perform the obligations of Borrower or Guarantor, as applicable, in connection with the Loan and the Property. In determining whether or not to approve any Person as a substitute Guarantor or Borrower, Lender may consider, among other things, the net worth and relevant business experience of such Person.

Section 6.17     Change in Interest.

Without the prior written consent of Lender (which consent may be conditioned, among other matters, on the issuance of a satisfactory endorsement to the title insurance policy insuring Lender's interest under the Mortgage), Borrower sells or transfers the Property.

Section 6.18     Material Adverse Change.

In the reasonable opinion of Lender, the prospect of payment or performance of all or any part of the Obligations has been impaired because of a material adverse change in the financial condition, results of operations, business or properties of Borrower, Guarantor or any other Person liable for the payment or performance of any of the Obligations.

Section 6.19     Nonpayment of Taxes.

Borrower fails to timely pay any taxes owing by such party, including without limitation any personal property taxes applicable to any assets owed by such party.

**Article VII**
**Remedies on Default.**

Section 7.1     Remedies on Default.

Upon the happening of any Event of Default, Lender shall have the right, in addition to any other rights or remedies available to Lender under the Mortgage or any of the other Loan Documents or under applicable Law, to exercise any one or more of the following rights and remedies:

13

(a)      Lender may accelerate all of Borrower's Obligations under the Loan Documents whereupon such Obligations shall become immediately due and payable, without notice of default, acceleration or intention to accelerate, presentment or demand for payment, protest or notice of nonpayment or dishonor, or notices or demands of any kind or character (all of which are hereby waived by Borrower).

(b)      Lender may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c)      Lender may set off the amounts due Lender under the Loan Documents against any and all accounts, credits, money, securities or other property of Borrower now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

(d)      Lender may enter into possession of the Property and perform any and all work and labor necessary to complete any construction at the Property, including any construction of tenant improvements, and to employ watchmen to protect the Property and the Improvements.  All sums expended by Lender for such purposes shall be deemed to have been advanced to Borrower under the Note and shall be secured by the Mortgage.  For this purpose, Borrower hereby constitutes and appoints Lender its true and lawful attorney-in-fact with full power of substitution, which power is coupled with an interest, to complete the work in the name of Borrower, and hereby empowers said attorney or attorneys, in the name of Borrower or Lender:

(i)      To use any funds of Borrower including any balance which may be held by Lender and any funds (if any) which may remain unadvanced hereunder for the purpose of completing any construction, including any construction of tenant improvements, whether or not in the manner called for in the applicable plans and specifications;

(ii)      To make such additions and changes and corrections to any plans and specifications as shall be necessary or desirable in the judgment of Lender to complete any construction, including any construction of tenant improvements;

(iii)      To employ such contractors, subcontractors, agents, architects and inspectors as shall be necessary or desirable for said purpose;

(iv)      To pay, settle or compromise all existing bills and claims which are or may be liens against the Property, or may be necessary or desirable for the completion of the work or the clearance of title to the Property;

(v)      To execute all applications and certificates which may be required in the name of Borrower;

(vi)      To enter into, enforce, modify or cancel Leases and to fix or modify Rents on such terms as Lender may consider proper;

(vii)      To file for record, at Borrower's cost and expense and in Borrower's name, any notices of completion, notices of cessation of labor, or any other notices that Lender in its sole and absolute discretion may consider necessary or desirable to protect its security; and

(viii)      To do any and every act with respect to any such construction which Borrower may do in its own behalf.

14

It is understood and agreed that this power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked. Said attorney-in-fact shall also have the power to prosecute and defend all actions or proceedings in connection with any construction at the Property, including any construction of tenant improvements, and to take such actions and to require such performance as Lender may deem necessary; and

(e)  Lender may exercise any and all other rights and remedies under this Agreement, the Loan Documents or at Law, equity or otherwise.

Without limitation of the foregoing, upon the occurrence of an actual or deemed entry of an order for relief with respect to Borrower under the Bankruptcy Code (Title 11 of the United States Code, as in effect from time to time), any obligation of Lender to make advances shall automatically terminate, and the unpaid principal amount of the Loan outstanding and all interest and other amounts payable hereunder and under the Note and other Loan Documents shall automatically become due and payable, in each case without further act of Lender.

Section 7.2    No Release or Waiver; Remedies Cumulative and Concurrent.

Borrower shall not be relieved of any Obligation by reason of the failure of Lender to comply with any request of Borrower or of any other Person to take action to foreclose on the Property under the Mortgage or otherwise to enforce any provision of the Loan Documents, or by reason of the release, regardless of consideration, of all or any part of the Property. No delay or omission of Lender to exercise any right, power or remedy accruing upon the happening of an Event of Default shall impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default or any acquiescence therein. No delay or omission on the part of Lender to exercise any option for acceleration of the maturity of the Obligations, or for foreclosure of the Mortgage following any Event of Default as aforesaid, or any other option granted to Lender hereunder in any one or more instances, or the acceptance by Lender of any partial payment on account of the Obligations shall constitute a waiver of any such Event of Default and each such option shall remain continuously in full force and effect. No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other remedies provided for in the Loan Documents, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder, or under the Loan Documents, or now or hereafter existing at Law or in equity or by statute. Every right, power and remedy given by the Loan Documents to Lender shall be concurrent and may be pursued separately, successively or together against Borrower or the Property or any part thereof, and every right, power and remedy given by the Loan Documents may be exercised from time to time as often as may be deemed expedient by Lender.

**Article VIII**
**Miscellaneous.**

Section 8.1    Further Assurances; Authorization to File Documents.

At any time, and from time to time, upon request by Lender, Borrower will, at Borrower's expense, (a) correct any defect, error or omission which may be discovered in the form or content of any of the Loan Documents, and (b) make, execute, deliver and record, or cause to be made, executed, delivered and recorded, any and all further instruments, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to complete, perfect or continue and preserve the lien of the Mortgage. Upon any failure by Borrower to do so, Lender may make, execute and record any and all such instruments, certificates and other documents for and in the name of Borrower, all at the sole expense of Borrower, and Borrower hereby appoints Lender the agent and attorney-in-fact of Borrower to do so, this appointment being coupled with an interest and being irrevocable. Without limitation of the

15

foregoing, Borrower irrevocably authorizes Lender at any time and from time to time to file any initial financing statements, amendments thereto and continuation statements deemed necessary or desirable by Lender to establish or maintain the validity, perfection and priority of the security interests granted in the Mortgage, and Borrower ratifies any such filings made by Lender prior to the date hereof. In addition, at any time, and from time to time, upon request by Lender, Borrower will, at Borrower's expense, provide any and all further instruments, certificates and other documents as may, in the opinion of Lender, be necessary or desirable in order to verify Borrower's identity and background in a manner satisfactory to Lender.

Section 8.2     No Warranty by Lender.

By accepting or approving anything required to be observed, performed or fulfilled by Borrower or to be given to Lender pursuant to this Agreement, including any certificate, Survey, receipt, appraisal or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof and any such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Lender.

Section 8.3     Standard of Conduct of Lender.

Nothing contained in this Agreement or any other Loan Document shall limit the right of Lender to exercise its business judgment or to act, in the context of the granting or withholding of any advance or consent under this Agreement or any other Loan Document, in a subjective manner, whether or not objectively reasonable under the circumstances, so long as Lender's exercise of its business judgment or action is made or undertaken in good faith. Borrower and Lender intend by the foregoing to set forth and affirm their entire understanding with respect to the standard pursuant to which Lender's duties and obligations are to be judged and the parameters within which Lender's discretion may be exercised hereunder and under the other Loan Documents. As used herein, "good faith" means honesty in fact in the conduct and transaction concerned.

Section 8.4     No Partnership.

Nothing contained in this Agreement shall be construed in a manner to create any relationship between Borrower and Lender other than the relationship of borrower and lender and Borrower and Lender shall not be considered partners or co-venturers for any purpose on account of this Agreement.

Section 8.5     Severability.

In the event any one or more of the provisions of this Agreement or any of the other Loan Documents shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any other respect, or in the event any one or more of the provisions of any of the Loan Documents operates or would prospectively operate to invalidate this Agreement or any of the other Loan Documents, then and in either of those events, at the option of Lender, such provision or provisions only shall be deemed null and void and shall not affect the validity of the remaining Obligations, and the remaining provisions of the Loan Documents shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

Section 8.6     Notices.

All Notices required or which any party desires to give hereunder or under any other Loan Document shall be in writing and, unless otherwise specifically provided in such other Loan Document,

16

shall be deemed sufficiently given or furnished if delivered by personal delivery, by nationally recognized overnight courier service or by certified United States mail, postage prepaid, addressed to the party to whom directed at the applicable address set forth below (unless changed by similar notice in writing given by the particular party whose address is to be changed) or by facsimile. Any Notice shall be deemed to have been given either at the time of personal delivery or, in the case of courier or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of facsimile, upon receipt; provided that service of a Notice required by any applicable statute shall be considered complete when the requirements of that statute are met. Notwithstanding the foregoing, no notice of change of address shall be effective except upon actual receipt. This Section shall not be construed in any way to affect or impair any waiver of notice or demand provided in this Agreement or in any other Loan Document or to require giving of notice or demand to or upon any Person in any situation or for any reason.

> The address of Borrower is:
>
> Linda R. McCormick
> 211 Country Club Drive
> Burbank, CA 91501
>
> The address of Lender is:
>
> Four Square Financial, L.P.
> Box D / Room 203A
> 10982 Roebling Ave.
> Los Angeles, California 90024
> Attn: Leah Robbins

Section 8.7    Permitted Successors and Assigns; Disclosure of Information.

(a)    Each and every one of the covenants, terms, provisions and conditions of this Agreement and the Loan Documents shall apply to, bind and inure to the benefit of Borrower, its successors and those assigns of Borrower consented to in writing by Lender, and shall apply to, bind and inure to the benefit of Lender and the endorsees, transferees, successors and assigns of Lender, and all Persons claiming under or through any of them.

(b)    Borrower agrees not to transfer, assign, pledge or hypothecate any right or interest in any payment or advance due pursuant to this Agreement, or any of the other benefits of this Agreement, without the prior written consent of Lender, which consent may be withheld by Lender in its sole and absolute discretion. Any such transfer, assignment, pledge or hypothecation made or attempted by Borrower without the prior written consent of Lender shall be void and of no effect. No consent by Lender to an assignment shall be deemed to be a waiver of the requirement of prior written consent by Lender with respect to each and every further assignment and as a condition precedent to the effectiveness of such assignment.

(c)    Lender may sell or offer to sell the Loan or interests therein to one or more assignees or participants. Borrower shall execute, acknowledge and deliver any and all instruments reasonably requested by Lender in connection therewith, and to the extent, if any, specified in any such assignment or participation, such assignee(s) or participant(s) shall have the same rights and benefits with respect to the Loan Documents as such Person(s) would have if such Person(s) were Lender hereunder. Lender may disseminate any information it now has or hereafter obtains pertaining to the Loan, including any security for the Loan, any credit or other information on the Property (including environmental reports and

17

assessments), Borrower or any Guarantor to any actual or prospective assignee or participant, to Lender's Affiliates to any regulatory body having jurisdiction over Lender, to any actual or prospective counterparty (or its advisors) to any swap or derivative transaction relating to Borrower and the Loan, or to any other party as necessary or appropriate in Lender's reasonable judgment.

Section 8.8     Modification; Waiver.

None of the terms or provisions of this Agreement may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against whom enforcement of the change, waiver, modification, discharge or termination is asserted.  None of the terms or provisions of this Agreement shall be deemed to have been abrogated or waived by reason of any failure or failures to enforce the same.

Section 8.9     Third Parties; Benefit.

All conditions to the obligation of Lender to make advances hereunder are imposed solely and exclusively for the benefit of Lender and its assigns and no other Persons shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make advances in the absence of strict compliance with any or all thereof and no other Person shall, under any circumstances, be deemed to be the beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Lender at any time in the sole and absolute exercise of its discretion.  The terms and provisions of this Agreement are for the benefit of the parties hereto and, except as herein specifically provided, no other Person shall have any right or cause of action on account thereof.

Section 8.10     Rules of Construction.

The words "hereof," "herein," "hereunder," "hereto," and other words of similar import refer to this Agreement in its entirety.  The terms "agree" and "agreements" mean and include "covenant" and "covenants."  The words "include" and "including" shall be interpreted as if followed by the words "without limitation."  The captions and headings contained in this Agreement are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to define, limit or enlarge the terms hereof.  All references (a) made in the neuter, masculine or feminine gender shall be deemed to have been made in all such genders, (b) made in the singular or plural number shall be deemed to have been made, respectively, in the plural or singular number as well, (c) to the Loan Documents are to the same as extended, amended, restated, supplemented or otherwise modified from time to time unless expressly indicated otherwise, (d) to the Land, the Improvements or the Property shall mean all or any portion of each of the foregoing, respectively, and (e) to Articles, Sections and Schedules are to the respective Articles, Sections and Schedules contained in this Agreement unless expressly indicated otherwise.

Section 8.11     Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be considered an original for all purposes; provided, however, that all such counterparts shall together constitute one and the same instrument.

Section 8.12     Publicity.

Borrower expressly authorizes Lender to prepare and to furnish to the news media for publication from time to time news releases with respect to the Property, specifically to include releases detailing

18

Lender's involvement with the financing of the Property.

Section 8.13      Governing Law.

This Agreement shall be governed by and construed, interpreted and enforced in accordance with the laws of the State.

Section 8.14      Time of Essence.

Time shall be of the essence for each and every provision of this Agreement of which time is an element.

Section 8.15      Electronic Transmission of Data.

Lender and Borrower agree that certain data related to the Loan (including confidential information, documents, applications and reports) may be transmitted electronically, including transmission over the Internet. This data may be transmitted to, received from or circulated among agents and representatives of Borrower and/or Lender and their affiliates and other Persons involved with the subject matter of this Agreement. Borrower acknowledges and agrees that (a) there are risks associated with the use of electronic transmission and that Lender does not control the method of transmittal or service providers, (b) Lender has no obligation or responsibility whatsoever and assumes no duty or obligation for the security, receipt or third party interception of any such transmission, and (c) Borrower will release, hold harmless and indemnify Lender from any claim, damage or loss, including that arising in whole or part from Lender's strict liability or sole, comparative or contributory negligence, which is related to the electronic transmission of data.

Section 8.16      Dispute Resolution Provision.

This Section, including the subsections below, is referred to as the "Dispute Resolution Provision." This Dispute Resolution Provision is a material inducement for the parties entering into this Agreement.

(a)      This Dispute Resolution Provision concerns the resolution of any controversies or claims between or among the parties, whether arising in contract, tort or by statute, including controversies or claims that arise out of or relate to: (i) this Agreement (including any renewals, extensions or modifications); or (ii) any Loan Document or any other document related to this Agreement (collectively, a "Dispute"). For the purposes of this Dispute Resolution Provision only, the term "parties" shall include any parent corporation, subsidiary or Affiliate of Lender involved in the servicing, management or administration of any obligation described or evidenced by this Agreement.

(b)      Except to the extent expressly provided below, any Dispute shall, upon the mutual agreement of the parties, acting in their sole and absolute discretion, be resolved by binding arbitration in accordance with the Federal Arbitration Act (Title 9, U.S. Code) (the "Federal Arbitration Act"). The Federal Arbitration Act will apply even though this Agreement provides that it is governed by California law.

(c)      Arbitration proceedings will be determined in accordance with the Federal Arbitration Act, the then-current rules and procedures for the arbitration of financial services disputes of the ADR and the terms of this Dispute Resolution Provision. In the event of any inconsistency, the terms of this Dispute Resolution Provision shall control. If ADR is unwilling or unable to (i) serve as the provider of

19

arbitration or (ii) enforce any provision of this arbitration clause, Lender may designate another arbitration organization with similar procedures to serve as the provider of arbitration.

(d)     The arbitration shall be administered by ADR and conducted, unless otherwise required by law, in any U.S. state where real or tangible personal property for the Loan is located or if there is no such collateral, in the state specified in the governing law section of this Agreement. All Disputes shall be determined by one arbitrator; however, if Disputes exceed Five Million Dollars ($5,000,000), upon the request of any party, the Disputes shall be decided by three arbitrators. All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing. However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional sixty (60) days. The arbitrator(s) shall provide a concise written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and have judgment entered and enforced.

(e)     The arbitrator(s) will give effect to statutes of limitations in determining any Dispute and may dismiss the arbitration on the basis that the Dispute is barred. For purposes of the application of any statutes of limitation, the service on ADR under applicable ADR rules of a notice of Dispute is the equivalent of the filing of a lawsuit. Any dispute concerning this arbitration provision or whether a Dispute is arbitrable shall be determined by the arbitrator(s), except as set forth at clause (j) of this Dispute Resolution Provision. The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this Agreement.

(f)     The procedure described above will not apply if the Dispute, at the time of the proposed submission to arbitration, arises from or relates to an obligation to Lender secured by real property. In this case, all of the parties to this Agreement, in their sole and absolute discretion, must consent to submission of the Dispute to arbitration.

(g)     To the extent any Disputes are not arbitrated, to the extent permitted by law the Disputes shall be resolved in court by a judge without a jury, except any Disputes which are brought in California state court shall be determined by judicial reference as described below.

(h)     Any Dispute which is not arbitrated and which is brought in California state court will be resolved by a general reference to a referee (or a panel of referees) as provided in California Code of Civil Procedure ("CCP") Section 638. The referee (or presiding referee of the panel) shall be a retired Judge or Justice. The referee (or panel of referees) shall be selected by mutual written agreement of the parties. If the parties do not agree, the referee shall be selected by the Presiding Judge of the Court (or his or her representative) as provided in CCP Section 638 and the following related sections. The referee shall determine all issues in accordance with existing California law and the California rules of evidence and civil procedure. The referee shall be empowered to enter equitable as well as legal relief, provide all temporary or provisional remedies, enter equitable orders that will be binding on the parties and rule on any motion which would be authorized in a trial, including motions for summary judgment or summary adjudication. The award that results from the decision of the referee(s) will be entered as a judgment in the court that appointed the referee, in accordance with the provisions of CCP Sections 644(a) and 645. The parties reserve the right to seek appellate review of any judgment or order, including orders pertaining to class certification, to the same extent permitted in a court of law.

(i)     This Dispute Resolution Provision does not limit the right of any party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of

20

possession or appointment of a receiver, or additional or supplementary remedies. The filing of a court action is not intended to constitute a waiver of the right of any party, including the suing party, thereafter to request or require submittal of the Dispute to arbitration or judicial reference as provided herein.

(j)     Any arbitration, judicial reference or trial by a judge of any Dispute will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver"). Regardless of anything else in this Dispute Resolution Provision, the validity and effect of the Class Action Waiver may be determined only by a court or referee and not by an arbitrator. The parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any claims between the parties and is nonseverable from the agreement to arbitrate Disputes. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. **The parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

By agreeing to binding arbitration or judicial reference, the parties irrevocably and voluntarily waive any right they may have to a trial by jury as permitted by law in respect of any Dispute. Furthermore, without intending in any way to limit this Dispute Resolution Provision, to the extent any Dispute is not arbitrated or submitted to judicial reference, the parties irrevocably and voluntarily waive any right they may have to a trial by jury to the extent permitted by law in respect of such Dispute. This waiver of jury trial shall remain in effect even if the Class Action Waiver is limited, voided or found unenforceable. **WHETHER THE DISPUTE IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.**

Section 8.17     Forum.

Borrower hereby irrevocably submits generally and unconditionally for itself and in respect of its property to the jurisdiction of any state court or any United States federal court sitting in the State specified in the governing law section of this Agreement and to the jurisdiction of any state court or any United States federal court sitting in the state in which any of the Property is located, over any Dispute. Borrower hereby irrevocably waives, to the fullest extent permitted by Law, any objection that Borrower may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum. Borrower hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any state court or any United States federal court sitting in the state specified in the governing law section of this Agreement may be made by certified or registered mail, return receipt requested, directed to Borrower at its address for notice set forth in this Agreement, or at a subsequent address of which Lender received actual notice from Borrower in accordance with the notice section of this Agreement, and service so made shall be complete five (5) days after the same shall have been so mailed. Nothing herein shall affect the right of Lender to serve process in any manner permitted by Law or limit the right of Lender to bring proceedings against Borrower in any other court or jurisdiction.

Section 8.18     USA Patriot Act Notice.

Lender hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "Act"), Lender is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

BN 19768829v6

Section 8.19    <u>Entire Agreement</u>.

The Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Loan, and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect to the matters addressed in the Loan Documents.  In particular, and without limitation, the terms of any commitment by Lender to make the Loan are merged into the Loan Documents.  Except as incorporated in writing into the Loan Documents, there are no representations, understandings, stipulations, agreements or promises, oral or written, with respect to the matters addressed in the Loan Documents.  If there is any conflict between the terms, conditions and provisions of this Agreement and those of any other instrument or agreement, including any other Loan Document, the terms, conditions and provisions of this Agreement shall prevail.

*[Signatures on following page]*

22

BN 19768829v6

IN WITNESS WHEREOF, Borrower and Lender have caused this Agreement to be executed under seal as of the date first above written.

BORROWER:

_Linda R. McCormick_

LINDA R. MCCORMICK

LENDER:

FOUR SQUARE FINANCIAL, L.P.

By: _Leah S. Robbins_

Name: LEAH S. ROBBINS
Title: GENERAL PARTNER

SCHEDULE 1

DEFINITIONS

Unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

"Accounts Payable List" means a written summary from Borrower of all accounts paid or payable for soft costs associated with the applicable draw request identifying each such account and the invoice amount due, and shall be in form and substance acceptable to Lender. For purposes of this definition, "soft costs" includes costs and expenses of development other than those attributable to the construction of the physical Improvements, including but not limited to architect's fees, consulting fees, management fees, abatement expenses, legal fees, testing and inspection fees, connection charges, and other similar fees and expenses.

"Act" means the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)).

"ADR" means ADR Services, Inc.

"Affiliate" means, with respect to any Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"Architect" means the architect, if any, engaged by Borrower in connection with the Construction of the Improvements, its successors and permitted assigns.

"Architect's Contract" means the agreement by and between Borrower, as owner, and the Architect, as architect, and any other contract for architectural services relating to the Construction of the Improvements between Borrower and an architect, and approved in writing by Lender, as the same may be amended from time to time with the prior written approval of Lender.

"Authorized Signer" means any signer of this Agreement, acting alone, or any other representative of Borrower duly designated and authorized by Borrower to sign draw requests in a writing addressed to Lender, which writing may include a draw request in the form attached hereto as Schedule 3.

"Banking Day" means any day that is not a Saturday, Sunday or banking holiday in the State.

"Budget" means the breakdown of hard costs and soft costs in form and content acceptable to Lender, as the same may be revised from time to time with the written approval of Lender.

"Casualty" means any act or occurrence of any kind or nature that results in damage, loss or destruction to the Property.

"Claim" means any liability, suit, action, claim, demand, loss, expense, penalty, fine, judgment or other cost of any kind or nature whatsoever, including fees, costs and expenses of attorneys, consultants, contractors and experts.

"Closing Checklist" means that certain Closing Checklist setting forth the conditions for closing the Loan.

Schedule 1
1

"Code" means the Internal Revenue Code of 1986, as amended.

"Condemnation" means any taking of title to, use of, or any other interest in the Property under the exercise of the power of condemnation or eminent domain, whether temporarily or permanently, by any Governmental Authority or by any other Person acting under or for the benefit of a Governmental Authority.

"Condemnation Awards" means any and all judgments, awards of damages (including severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation.

"Construction Consultant" means a Person appointed or designated by Lender from time to time to inspect the progress of the Construction of the Improvements and the conformity of construction with the Plans and Specifications, the Budget and the Project Schedule, and to perform such other acts and duties for such other purposes as Lender may from time to time deem appropriate or as may be required by the terms of this Agreement.

"Construction Consultant Report" means a written report from the Construction Consultant due to Lender on a specified predetermined day of each month acceptable to Lender.

"Construction Contract" means the agreement by and between Borrower, as owner, and the General Contractor, as general contractor, and any other contract for the Construction of the Improvements between Borrower and a contractor, and approved in writing by Lender, as the same may be amended from time to time with the prior written approval of Lender.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise, "Controlling" or "Controlled" have meaning correlative thereto.

"Default" means an event or circumstance that, with the giving of Notice or lapse of time, or both, would constitute an Event of Default under the provisions of this Agreement.

"Dispute" has the meaning ascribed to such term in Section 8.16.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Event of Default" means any event or circumstance specified in Article VI and the continuance of such event or circumstance beyond the applicable grace and/or cure periods therefor, if any, set forth in Article VI.

"Expenses" means all fees, charges, costs and expenses of any nature whatsoever incurred at any time and from time to time (whether before or after an Event of Default) by Lender in making, funding, administering or modifying the Loan, in negotiating or entering into any "workout" of the Loan, or in exercising or enforcing any rights, powers and remedies provided in the Mortgage or any of the other Loan Documents, including attorneys' fees, court costs, receiver's fees, management fees and costs incurred in the repair, maintenance and operation of, or taking possession of, or selling, the Property.

"General Contractor" means the general contractor engaged by Borrower in connection with the Construction of the Improvements, its successors and permitted assigns.

"Governmental Authority" means any governmental or quasi-governmental entity, including any court, department, commission, board, bureau, agency, administration, service, district or other instrumentality of any governmental entity.

"Guarantor" means Tony McCormick, and his respective heirs, personal representatives, successors and assigns.

"Guaranty" means the Guaranty Agreement of even date herewith executed by Guarantor for the benefit of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Improvements" means all on-site and off-site improvements located on the Land, together with all fixtures, tenant improvements and appurtenances now or later to be located on the Land and/or in such improvements.

"Insurance Proceeds" means the insurance claims under and the proceeds of any and all policies of insurance covering the Property or any part thereof, including all returned and unearned premiums with respect to any insurance relating to the Property, in each case whether now or hereafter existing or arising.

"Land" means the land described in and encumbered by the Mortgage.

"Laws" means all federal, state and local laws, statutes, rules, ordinances, regulations, codes, licenses, authorizations, decisions, injunctions, interpretations, orders or decrees of any court or other Governmental Authority having jurisdiction as may be in effect from time to time.

"Legal Fee" shall have the meaning set forth in the Note.

"Loan" means the loan from Lender to Borrower, the repayment obligations in connection with which are evidenced by the Note.

"Loan Amount" means Four Hundred Fifteen Thousand and No/100 Dollars ($415,000). The Loan Amount shall be deemed to include the amount, if any, of each Future Advance to the extent such advance is made pursuant to Section 2.3.

"Loan Documents" means this Agreement, the Note, the Mortgage, the Guaranty, any application or reimbursement agreement executed in connection with any letter of credit issued by Lender in connection with the Loan, and any and all other documents which Borrower, Guarantor or any other party or parties have executed and delivered, or may hereafter execute and deliver, to evidence, secure or guarantee the Obligations, or any part thereof, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Loan Fee" shall have the meaning set forth in the Note.

"Mortgage" means the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith given by Borrower to [First American Title Company], as trustee for the benefit of Lender to secure the Obligations, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified. The term "Mortgage" shall also be deemed to include any other trust or mortgages that may secure the Obligations from time to time.

"Net Proceeds," when used with respect to any Condemnation Awards or Insurance Proceeds, means the gross proceeds from any Condemnation or Casualty remaining after payment of all expenses,

Schedule 1
3

including attorneys' fees, incurred in the collection of such gross proceeds.

"Note" means the Promissory Note of even date herewith, in an amount equal to the Loan Amount, made by Borrower to the order of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified.

"Notice" means a notice, request, consent, demand or other communication given in accordance with the provisions of Section 8.6 of this Agreement.

"Obligations" means all present and future debts, obligations and liabilities of Borrower to Lender arising pursuant to, or on account of, the provisions of this Agreement, the Note or any of the other Loan Documents to which Borrower is a party, including the Conditional Future Advance and obligations: (a) to pay all principal, interest, late charges, prepayment premiums (if any) and other amounts due at any time under the Note; (b) to pay all Expenses, indemnification payments, fees and other amounts due at any time under the Mortgage or any of the other Loan Documents to which Borrower is a party, together with interest thereon as provided in the Mortgage or such Loan Document; and (c) to perform, observe and comply with all of the terms, covenants and conditions, expressed or implied, which Borrower is required to perform, observe or comply with pursuant to the terms of this Agreement, the Mortgage or any of the other Loan Documents to which Borrower is a party.

"Person" means an individual, a corporation, a partnership, a joint venture, a limited liability company, a trust, an unincorporated association, any Governmental Authority or any other entity.

"Plans and Specifications" means any and all plans and specifications prepared in connection with the Construction of the Improvements and approved in writing by Lender, as the same may from time to time be amended with the prior written approval of Lender.

"Property" means the real and personal property conveyed and encumbered by the Mortgage.

"Rents" means all of the rents, royalties, issues, profits, revenues, earnings, income and other benefits of the Property or any part thereof, or arising from the use or enjoyment of the Property or any part thereof, including all such amounts paid under or arising from any of the Leases and all fees, charges, accounts or other payments for the use or occupancy of rooms or other public facilities within the Property or any part thereof.

"State" means the State of California.

"Survey" means a map or plat of survey of the Land which conforms with Lender's survey requirements set forth in the Closing Checklist.

"Taxes" means all taxes and assessments whether general or special, ordinary or extraordinary, or foreseen or unforeseen, which at any time may be assessed, levied, confirmed or imposed by any Governmental Authority or any communities facilities or other private district on Borrower or on any of its properties or assets or any part thereof or in respect of any of its franchises, businesses, income or profits.

"Title Fee" shall have the meaning set forth in the Note.

"Wells Fargo Loan" means that certain loan to Borrower from Wells Fargo Bank, N.A. in the original principal amount of $417,000 under Loan No. 0098011299.

Schedule 2

Form of Draw Request

REQUEST FOR PAYMENT
REQUEST NO. _____

Borrower: Linda R. McCormick

Improvements: _____

Loan No.: _____

1.     This Request for Payment is being delivered pursuant to the Loan Agreement, dated as of December [   ], 2015 ("Loan Agreement"), between Borrower and Four Square Financial, L.P., a California limited partnership (the "Lender"). Borrower requests that $_____ be advanced from Loan proceeds. The proceeds should be credited to the account of _____ Account No. _____, at _____.

        This Request for Payment is requested to pay for various expenses incurred in connection with the above Improvements, as summarized on the Draw Summary below and detailed in the invoices submitted herewith. Borrower hereby certifies that the amounts shown below and the accompanying invoices represent costs of designing, developing, rehabilitating and leasing the Improvements which are eligible for reimbursement at this time in accordance with the provisions of the Loan Agreement.

2.     Borrower acknowledges that any increased costs of construction arising out of change orders, or otherwise cannot be invoiced on this Request for Payment unless and until such change orders and/or increase in costs have been approved in writing by Lender in accordance with the Loan Agreement.

Schedule 3

096

3.    The following are attached hereto and form a part hereof: Contractor's APPLICATION AND CERTIFICATE FOR PAYMENT (AIA Document G702), Conditional and Unconditional Lien Waivers and copies of Soft Cost invoices.

Date: _____1/13/16_____, 20_16_

Borrower:

LINDA R. MCCORMICK

APPROVED BY:

FOUR SQUARE FINANCIAL, L.P.,
a California limited partnership

By: _____
Name: _____
Title:_____

3.     The following are attached hereto and form a part hereof:  Contractor's APPLICATION AND
CERTIFICATE FOR PAYMENT (AIA Document G702), Conditional and Unconditional Lien Waivers
and copies of Soft Cost invoices.

Date: _____1/13/16_____, 20_16_

Borrower:

*Linda R. McCormick*

LINDA R. MCCORMICK

APPROVED BY:

FOUR SQUARE FINANCIAL, L.P.,
a California limited partnership

By: *Leah S. Robbins* _____
Name:___Leah S. Robbins_____
Title:____General partner_____

EXHIBIT "3"



# PROMISSORY NOTE

$840,000                                                                                      January 8, 2016

FOR VALUE RECEIVED, Linda R. McCormick, an individual ("Borrower"), hereby promises to pay to the order of Four Square Financial, L.P., a California limited partnership (together with any and all of its successors and assigns and/or any other holder of this Note, "Lender"), without offset, in immediately available funds in lawful money of the United States of America, at Box D/Room 203A, 10982 Roebling Avenue, Los Angeles, CA 90024, the principal sum of EIGHT HUNDRED FORTY THOUSAND and No/100 Dollars ($840,000.00) (or the unpaid balance of all principal advanced under this Note, if the amount of such principal advanced is less than the stated amount), together with interest on the unpaid principal balance of this Note from day to day outstanding as hereinafter provided. This Note is being executed and delivered in connection with that certain Loan Agreement between Borrower and Lender of even date herewith (as the same may from time to time be amended, restated, modified or supplemented, the "Loan Agreement"). Initially capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Agreement.

Section 1        Principal Amount and Maturity Date. This Note shall be payable in accordance with the following:

(a)        Principal. The principal sum of this Note in the amount of $840,000 is comprised of the following amounts: (i) the principal sum of Seven Hundred Forty-Six Thousand and No/100 Dollars ($746,000.00), a portion of which, in an amount equal to Five Hundred Ninety Five Thousand Five Hundred and 00/100 ($595,500.00), is to be advanced on or about the date hereof and subsequent advances may be made in accordance with Section 2.3 of the Loan Agreement; (ii) a loan fee in the amount of Eighty-Four Thousand and No/100 Dollars ($84,000.00) (the "Loan Fee") to be advanced on or about January 8, 2016, which Loan Fee includes a fee payable to the licensed real estate broker that arranged the Loan; (iii) the sum of One Thousand Five Hundred and No/100 Dollars ($1,500.00) ("Tax Collection") for the payment of Borrower's outstanding taxes due for the years 2005, 2006 and 2007, as set forth in that certain Notice of State Tax Lien recorded on October 13, 2010, in the Official Records of Los Angeles County as Instrument No. 20101455283 (the "Tax Lien"); (iv) title fees and expenses incurred by Lender in the amount of Two Thousand Five Hundred and No/100 Dollars ($2,500.00) (the "Title Fee"); and (v) legal fees incurred by Lender in the amount of Seven Thousand Five Hundred and No/100 Dollars ($7,500.00) (the "Legal Fee") to be advanced on or about the date hereof. In the event that the final amount of the actual outstanding taxes due under the Tax Lien, or the actual out of pocket title fees or legal fees incurred by Lender in connection with the initial close of the Loan differ from the Tax Collection, Title Fee or Legal Fee, respectively, the outstanding principal balance hereunder will be deemed reduced or increased, as applicable, by an amount equal to the difference between the Tax Collection, Title Fee or Legal Fee and the amount of the actual outstanding taxes due under the Tax Lien, or the amount of the actual title or legal fees incurred by Lender (which shall be evidenced by invoices provided by the Title Company or Lender's legal counsel, respectively).

(b)        Maturity Date. The entire principal balance of this Note then unpaid, together with all accrued and unpaid interest and all other amounts payable hereunder and under the other Loan Documents (as hereinafter defined), shall be due and payable in full on July 8, 2016 (the "Initial Maturity Date"); provided, however, the Borrower may extend the Initial Maturity Date by six (6) months to January 8, 2017 (the "Extended Maturity Date", and each of the Initial Maturity Date and

**PAGE 1**

BN 19768874v6

100

Extended Maturity Date are sometimes referred to herein as the "Maturity Date") provided that the following terms and conditions have been satisfied, as determined in Lender's reasonable discretion:

(i)    At least thirty (30) days prior to the Initial Maturity Date, Borrower shall give Lender written notice of its request to so extend the Initial Maturity Date;

(ii)    The representations and warranties of Borrower as set forth in the Loan Agreement shall be true and with the same effect as though such representations and warranties had been made by Borrower as of the Initial Maturity Date, except as to those representations and warranties that, by their terms, specifically apply to another date;

(iii)    No Default or Event of Default shall then exist under the Loan Documents; and

(iv)    Borrower shall pay to Lender, on or before the Initial Maturity Date, an extension fee equal to Eighty-Four Thousand and No/100 Dollars ($84,000.00) and all costs and expenses incurred by Lender in connection with the extension, including attorneys' fees and expenses.

Section 2    Security; Loan Documents.  The security for this Note includes one (1) or more Deed(s) of Trust, Assignment of Rents, Security Agreement and Fixture Filing (as the same may from time to time be amended, restated, modified or supplemented, collectively, the "Mortgage") of even date herewith from Borrower to Lender, conveying and encumbering certain real and personal property more particularly described therein (the "Property").  This Note, the Mortgage, the Loan Agreement and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note (the "Loan"), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a "Loan Document" and together the "Loan Documents."

Section 3    Interest Rate; Default Rate.

(a)    Interest on the outstanding principal balance of, and all other sums owing under this Note, which are not past due, shall accrue and be payable at a fixed rate which is equal to twelve percent (12%) per annum (the "Interest Rate") through the Maturity Date.  All interest shall be calculated on the basis of a year of 365 days for the actual number of days elapsed.

(b)    After the occurrence of an Event of Default (including the expiration of any applicable cure period), the Lender, in the Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the outstanding principal balance of this Note to a rate equal to eighteen percent (18%) per annum (such rate is referred to herein as the "Default Rate"), independent of whether the Lender elects to accelerate the outstanding principal balance of this Note.

Section 4    Prepayment.  Borrower may prepay the principal balance of this Note, in full at any time without payment of premium or penalty.

Section 5    Late Charges.  If Borrower shall fail to make any payment under the terms of this Note (other than the payment due at maturity) within ten (10) days after the date such payment is due, Borrower shall pay to Lender on demand a late charge equal to five percent (5%) of the amount of such payment.  Such ten (10) day period shall not be construed as in any way extending the due date of any payment.  The late charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment.  This charge shall be in addition to, and not in lieu of, any other

**PAGE 2**

amount that Lender may be entitled to receive or action that Lender may be authorized to take as a result of such late payment.

Section 6    Certain Provisions Regarding Payments.  All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to Lender under the Loan Documents, in such manner and order as Lender may elect in its sole discretion, any instructions from Borrower or anyone else to the contrary notwithstanding.  Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks.  Acceptance by Lender of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as hereinafter defined), (b) waive, impair or extinguish any right or remedy available to Lender hereunder or under the other Loan Documents, or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect.  Payments received after 2:00 p.m. shall be deemed to be received on, and shall be posted as of, the following Business Day.  Whenever any payment under this Note or any other Loan Document falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

Section 7    Events of Default.  The occurrence of any one or more of the following shall constitute an "Event of Default" under this Note:

(a)    Borrower fails to pay when such payment is due and payable (except for any payment due upon acceleration or maturity) any amounts payable by Borrower to Lender under the terms of this Note.

(b)    Any covenant, agreement or condition in this Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period.

(c)    An Event of Default (as therein defined) occurs under any of the Loan Documents other than this Note (subject to any applicable grace or cure period).

Section 8    Remedies.  Upon the occurrence of an Event of Default, Lender may at any time thereafter exercise any one or more of the following rights, powers and remedies:

(a)    Lender may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

(b)    Lender may set off the amount due against any and all accounts, credits, money, securities or other property now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

(c)    Lender may exercise any of its other rights, powers and remedies under the Loan Documents or at law or in equity.

Section 9    Remedies Cumulative.  All of the rights and remedies of Lender under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in

**PAGE 3**

BN 19768874v6

equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

Section 10     Costs and Expenses of Enforcement.  Borrower agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to collect this Note or to enforce any of Lender's rights and remedies under the Loan Documents, including all costs and attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with arbitration, judicial reference, bankruptcy, insolvency or appeal.

Section 11     Service of Process.

Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to Borrower and (b) serving a copy thereof upon the agent designated and appointed by Borrower as Borrower's agent for service of process. Borrower irrevocably agrees that such service shall be deemed to be service of process upon Borrower in any such suit, action, or proceeding. Nothing in this Note shall affect the right of Lender to serve process in any manner otherwise permitted by law and nothing in this Note will limit the right of Lender otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions, subject to any provision or agreement for arbitration, judicial reference or other dispute resolution set forth in the Loan Agreement.

Section 12     Heirs, Successors and Assigns.  The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties. The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted under the Loan Documents.

Section 13     General Provisions.     Time is of the essence with respect to Borrower's obligations under this Note. If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby. Borrower and each party executing this Note as Borrower hereby severally (a) waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agree that Lender shall not be required first to institute suit or exhaust its remedies hereon against Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consent to any extensions or postponements of time of payment of this Note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submit (and waive all rights to object) to non-exclusive personal jurisdiction of any state or federal court sitting in the state and county in which payment of this Note is to be made for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Lender to secure this Note is invalid or unperfected; and (h) hereby subordinate to the Loan and the Loan Documents any and all rights against Borrower and any security for the payment of this

**PAGE 4**

BN 19768874v6

103

Note, whether by subrogation, agreement or otherwise, until this Note is paid in full. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. This Note and its validity, enforcement and interpretation shall be governed by the laws of the State of California (without regard to any principles of conflicts of laws) and applicable United States federal law. Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment of this Note is to be made. The term "Business Day" shall mean a day on which Lender is open for the conduct of substantially all of its banking business at its office in the city in which this Note is payable (excluding Saturdays and Sundays). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement. The words "include" and "including" shall be interpreted as if followed by the words "without limitation."

Section 14      Notices. Any notice, request, or demand to or upon Borrower or Lender shall be deemed to have been properly given or made when delivered in accordance with the terms of the Loan Agreement regarding notices.

Section 15      No Usury. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Lender's exercise of the option to accelerate the Maturity Date, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note and all other indebtedness secured by the Mortgage, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan.

Borrower represents and warrants to Lender and agrees that (i) the Loan was arranged by and through a licensed California real estate broker (Howard Realty Group Inc., License #01120327), and (ii) the Loan is exempt from the usury provisions of the California Constitution pursuant to Section 1916.1 of the California Civil Code. The provisions of this Section 15 shall survive in perpetuity.

*[Signature follows on next page]*

PAGE 5

BN 19768874v6

104

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the date first above written.

Borrower:

Linda R. McCormick

S-1
(Promissory Note)

# EXHIBIT "4"





**This page is part of your document - DO NOT DISCARD**



## 20160063173

Pages:
0026

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/20/16 AT 08:00AM**

|  |  |
|---|---|
| FEES: | 133.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 133.00 |



**L E A D S H E E T**



201601200160018

00011619363



007336445

**SEQ:**
**06**

**DAR - Title Company (Hard Copy)**





**THIS FORM IS NOT TO BE DUPLICATED**              T94

Commonwealth Land Title Company

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

FOUR SQUARE FINANCIAL, L.P.
Box D / Room 203A
10982 Roebling Ave.
Los Angeles, CA 90024

*9191020^7-27*

Space above this line for Recorder's Use

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust is made as of January 8, 2016, by LINDA R. MCCORMICK, an individual, as trustor ("Trustor"), whose address is 211 Country Club Drive, Burbank, CA 91501, to COMMONWEALTH LAND TITLE COMPANY, as trustee ("Trustee"), for the benefit of FOUR SQUARE FINANCIAL, L.P., a California limited partnership, as beneficiary ("Beneficiary"), whose address is Box D/Room 203A, 10982 Roebling Ave., Los Angeles, CA 90024.

### 1.    GRANT IN TRUST.

1.1    The Property.  For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Trustor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Trustee, in trust for the benefit of Beneficiary, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "Property"):

(a)    The real property located in the County of Los Angeles, State of California, as described in Exhibit A hereto (the "Land");

(b)    All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

(c)    All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

(d)    All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any

California Deed of Trust
BN 19768883v5

1

**108**

*3*

part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

(e)     All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

(f)     All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2     Fixture Filing. This Deed of Trust constitutes a financing statement filed as a fixture filing under Section 9502(c) of the California Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

2.     THE SECURED OBLIGATIONS.

2.1     Purpose of Securing. Trustor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Beneficiary may choose:

(a)     Payment of all obligations of Linda R. McCormick ("Obligor") to Beneficiary arising under the following instrument(s) or agreement(s) (collectively, the "Debt Instrument"):

(i)     A promissory note dated as of even date herewith, payable by Obligor as maker in the stated principal amount of Eight Hundred Forty Thousand and No/100 Dollars ($840,000.00) to the order of Beneficiary.

(ii)     A certain Loan Agreement dated as of even date herewith between Obligor and Beneficiary and all "Obligations" as defined therein.

This Deed of Trust also secures payment of all obligations of Obligor under the Debt Instrument which arise after the Debt Instrument is extended, renewed, modified or amended pursuant to any written agreement between Obligor and Beneficiary, and all obligations of Obligor under any successor agreement or instrument which restates and supersedes the Debt Instrument in its entirety;

(b)     Payment and performance of all obligations of Trustor under this Deed of Trust;

California Deed of Trust
BN 19768883v5

2

4

(c)    Payment and performance of all future advances and other obligations under the Debt Instrument.

This Deed of Trust does not secure any obligation which expressly states that it is unsecured, whether contained in the foregoing Debt Instrument or in any other document, agreement or instrument.

2.2    Terms of Secured Obligations.  All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Debt Instrument described in Paragraph 2.1(a) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations.  These terms include any provisions in the Debt Instrument which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

3.    ASSIGNMENT OF RENTS.

3.1    Assignment.    Trustor  hereby  irrevocably,  absolutely,  presently  and unconditionally assigns to Beneficiary all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Beneficiary the right to collect such Rents with or without taking possession of the Property.  In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Trustor as bonus or royalty payments, and any damages or other compensation payable to Trustor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph.    THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.

3.2    Grant of License.  Notwithstanding the provisions of Paragraph 3.1, Beneficiary hereby confers upon Trustor a license ("License") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing.  If an Event of Default has occurred and is continuing, Beneficiary shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Trustor, and without regard to the adequacy of the security for the Secured Obligations.

4.    SECURITY INTEREST IN RELATED PERSONALTY.

4.1    Grant of Security Interest.  Trustor grants to Beneficiary a security interest in, and pledges and assigns to Beneficiary, all of Trustor's right, title and interest, whether presently existing or hereafter acquired in and to all of the following property (collectively, the "Personalty"):

(a)    All materials, supplies, goods, tools, furniture, fixtures, equipment, and machinery which in all cases is affixed or attached, or to be affixed or attached, in any manner on the Land or the Improvements;

(b)    All crops growing or to be grown on the Land (and after severance from the Land); all standing timber upon the Land (and after severance from the Land); all sewer, water and water rights (whether riparian, appropriative, or otherwise, and whether

California Deed of Trust                                3
BN 19768883v5

or not appurtenant to the Land) and all evidence of ownership rights pertaining to such water or water rights, ownership of which affect the Land; and all architectural and engineering plans, specifications and drawings which arise from or relate to the Land or the Improvements;

(c)     All permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies relating to the Land and the Improvements, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them;

(d)     All substitutions, replacements, additions, and accessions to any of the above property, and all books, records and files relating to any of the above property, including, without limitation, all general intangibles related to any of the above property and all proceeds of the above property.

## 5.     RIGHTS AND DUTIES OF THE PARTIES.

5.1     Representations and Warranties.  Trustor represents and warrants that Trustor lawfully possesses and holds fee simple title to all of the Land and the Improvements, unless Trustor's present interest in the Land and the Improvements is described in Exhibit A as a leasehold interest, in which case Trustor lawfully possesses and holds a leasehold interest in the Land and the Improvements as stated in Exhibit A.

5.2     Taxes, Assessments, Liens and Encumbrances.  Trustor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it.  Trustor shall immediately discharge any lien on the Property which Beneficiary has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Deed of Trust.

5.3     Damages and Insurance and Condemnation Proceeds.

(a)     Trustor hereby absolutely and irrevocably assigns to Beneficiary, and authorizes the payor to pay to Beneficiary, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

(i)     all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii)     all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property,

6

or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii)     all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Beneficiary; and

(iv)     all interest which may accrue on any of the foregoing.

(b)     Trustor shall immediately notify Beneficiary in writing if:

(i)     any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

(ii)     any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Beneficiary chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Beneficiary, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Trustor in adjusting any loss covered by insurance.

(c)     All proceeds of the Claims assigned to Beneficiary under this Paragraph shall be paid to Beneficiary. In each instance, Beneficiary shall apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds, including attorneys' fees.     Trustor further authorizes Beneficiary, at Beneficiary's option and in Beneficiary's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Beneficiary may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Trustor. If any proceeds are released to Trustor, neither Beneficiary nor Trustee shall be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Beneficiary to be used to reimburse Trustor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing. Beneficiary may, at Beneficiary's option, condition disbursement of the proceeds on Beneficiary's approval of such plans and specifications prepared by an architect satisfactory to Beneficiary, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Beneficiary may reasonably require.

5.4     Insurance. Trustor shall provide and maintain in force at all times all risk property damage insurance (including without limitation windstorm coverage, and hurricane coverage as

1

applicable) on the Property and such other type of insurance on the Property as may be required by Beneficiary in its reasonable judgment. At Beneficiary's request, Trustor shall provide Beneficiary with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Beneficiary, and shall be written only by companies approved by Beneficiary. In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Beneficiary.

5.5     Maintenance and Preservation of Property.

(a)     Trustor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Trustor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except with Beneficiary's express prior written consent in each instance.

(b)     If all or part of the Property becomes damaged or destroyed, Trustor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Beneficiary agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c)     Trustor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Trustor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Trustor on the Property or any part of it under this Deed of Trust.

(d)     If Trustor's interest in the Property is a leasehold interest, Trustor shall observe and perform all obligations of Trustor under any lease or leases and shall refrain from taking any actions prohibited by any lease or leases. Trustor shall preserve and protect the leasehold estate and its value.

(e)     If the Property is agricultural, Trustor shall farm the Property in a good and husbandlike manner. Trustor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees or vines with new ones. Trustor shall prepare for harvest, harvest, remove and sell any crops growing on the Property. Trustor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(f)     Trustor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6     Releases, Extensions, Modifications and Additional Security. Without affecting the personal liability of any person, including Trustor (or Obligor, if different from Trustor), for the payment of the Secured Obligations or the lien of this Deed of Trust on the remainder of the

California Deed of Trust                                    6
BN 19768883v5

Property for the unpaid amount of the Secured Obligations, Beneficiary and Trustee are respectively empowered as follows:

    (a)    Beneficiary may from time to time and without notice:

        (i)    release any person liable for payment of any Secured Obligation;

        (ii)    extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

        (iii)    accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security; or

        (iv)    alter, substitute or release any property securing the Secured Obligations.

    (b)    Trustee may perform any of the following acts when requested to do so by Beneficiary in writing:

        (i)    consent to the making of any plat or map of the Property or any part of it;

        (ii)    join in granting any easement or creating any restriction affecting the Property;

        (iii)    join in any subordination or other agreement affecting this Deed of Trust or the lien of it; or

        (iv)    reconvey the Property or any part of it without any warranty.

    5.7    <u>Reconveyance</u>. When all of the Secured Obligations have been paid in full and no further commitment to extend credit continues, Trustee shall reconvey the Property, or so much of it as is then held under this Deed of Trust, without warranty to the person or persons legally entitled to it. In the reconveyance, the grantee may be described as "the person or persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness. Neither Beneficiary nor Trustee shall have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.

    5.8    <u>Compensation and Reimbursement of Costs and Expenses</u>.

    (a)    Trustor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary and Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement of the Secured Obligations or Trustee's rendering of services in connection with a reconveyance. Trustor shall also pay or reimburse all of Beneficiary's and Trustee's costs and expenses which may be incurred in rendering any such services.

    (b)    Trustor further agrees to pay or reimburse Beneficiary for all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee

to protect or preserve the Property or to enforce any terms of this Deed of Trust, including the exercise of any rights or remedies afforded to Beneficiary or Trustee or both of them under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

(c)    Trustor shall pay all obligations arising under this Paragraph immediately upon demand by Trustee or Beneficiary.  Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations.  If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9    Exculpation and Indemnification.

(a)    Beneficiary shall not be directly or indirectly liable to Trustor or any other person as a consequence of any of the following:

(i)    Beneficiary's exercise of or failure to exercise any rights, remedies or powers granted to it in this Deed of Trust;

(ii)    Beneficiary's failure or refusal to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust;

(iii)    Beneficiary's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv)    any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v)    any loss sustained by Trustor or any third party resulting from any act or omission of Beneficiary in operating or managing the Property upon exercise of the rights or remedies afforded Beneficiary under Paragraph 6.3, unless the loss is caused by the willful misconduct and bad faith of Beneficiary.

Trustor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Beneficiary.

(b)    Trustor agrees to indemnify Trustee and Beneficiary against and hold them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which either may suffer or incur in performing any act required or permitted by this Deed of Trust or by law or because of any failure of Trustor to perform any of its obligations.  This agreement by Trustor to indemnify Trustee and Beneficiary shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release and/or reconveyance of this Deed of Trust.

California Deed of Trust    8
BN 19768883v5

$10

5.10    Defense and Notice of Claims and Actions.  At Trustor's sole expense, Trustor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Trustor shall give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11    Substitution of Trustee.   From time to time, Beneficiary may substitute a successor to any Trustee named in or acting under this Deed of Trust in any manner now or later to be provided at law, or by a written instrument executed and acknowledged by Beneficiary and recorded in the office of the recorder of the county where the Property is situated.  Any such instrument shall be conclusive proof of the proper substitution of the successor Trustee, who shall automatically upon recordation of the instrument succeed to all estate, title, rights, powers and duties of the predecessor Trustee, without conveyance from it.

5.12    Representation and Warranty Regarding Hazardous Substances.  Before signing this Deed of Trust, Trustor researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Trustor represents and warrants that to the best of its knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Trustor has disclosed to Beneficiary in writing.  Trustor further represents and warrants that Trustor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws"). Trustor shall promptly, at Trustor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property.    Trustor acknowledges that hazardous substances may permanently and materially impair the value and use of the Property.  "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.13    Site Visits, Observation and Testing.    Beneficiary and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Trustor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property.    Trustor shall reimburse Beneficiary on demand for the costs of any such environmental investigation and testing. Beneficiary will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Trustor's use of the Property. Beneficiary is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Beneficiary will be solely for the purposes of protecting Beneficiary's security and preserving Beneficiary's rights under this Deed of Trust. No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Trustor; (ii) impose any liability on Beneficiary; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness).  In the event Beneficiary has a duty or obligation under applicable laws,

regulations or other requirements to disclose an Environmental Report to Trustor or any other party, Trustor authorizes Beneficiary to make such a disclosure. Beneficiary may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Beneficiary's judgment. Trustor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Trustor by Beneficiary or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Trustor) by Trustor without advice or assistance from Beneficiary.

6.    ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

    6.1    Accelerating Transfers

        (a)    "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Trustor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Trustor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than twenty percent (20%) of the voting power. If Trustor is a partnership, "Accelerating Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than twenty percent (20%) of the partnership interests. If Trustor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than twenty percent (20%) of the voting power or in the aggregate more than fifty percent (50%) of the ownership of the economic interest in the Trustor.

        (b)    Trustor agrees that Trustor shall not make any Accelerating Transfer, unless the transfer is preceded by Beneficiary's express written consent to the particular transaction and transferee. Beneficiary may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Beneficiary in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Beneficiary and Trustee may invoke any rights and remedies provided by Paragraph 6.3 of this Deed of Trust.

    6.2    Events of Default. The occurrence of any one or more of the following events, at the option of Beneficiary, shall constitute an event of default ("Event of Default") under this Deed of Trust:

        (a)    Obligor fails to make any payment, when due, under the Debt Instrument (after giving effect to any applicable grace period), or any other default or event of default occurs under and as defined in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

        (b)    Trustor fails to make any payment or perform any obligation which arises under this Deed of Trust;

12

(c)     Trustor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(d)     Any representation or warranty made in connection with this Deed of Trust or the Secured Obligations proves to have been false or misleading in any material respect when made;

(e)     Any default occurs under any other deed of trust on all or any part of the Property, or under any obligation secured by such deed of trust, whether such deed of trust is prior to or subordinate to this Deed of Trust.

6.3     Remedies.  At any time after the occurrence of an Event of Default, Beneficiary and Trustee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law.  All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

(a)     Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

(b)     Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c)     Beneficiary, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Trustor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Beneficiary may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust.  Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property.  Trustor hereby irrevocably constitutes and appoints Beneficiary as its attorney in fact to perform such acts and execute such documents as Beneficiary in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Trustor's name on any instruments.  Trustor agrees to deliver to Beneficiary all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Beneficiary in order to enable Beneficiary to exercise its rights under this Paragraph.

(d)     Either Beneficiary or Trustee may cure any breach or default of Trustor, and if it chooses to do so in connection with any such cure, Beneficiary or Trustee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust.  Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Beneficiary or Trustee under, this Deed of Trust; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Beneficiary's or Trustee's sole

13

judgment is or may be senior in priority to this Deed of Trust, such judgment of Beneficiary or Trustee to be conclusive as among the parties to this Deed of Trust; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Deed of Trust; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Beneficiary or Trustee. Beneficiary and Trustee may take any of the actions permitted hereunder either with or without giving notice to any person.

(e)     Beneficiary may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Deed of Trust.

(f)     Beneficiary may cause the Property which consists solely of real property to be sold by Trustee as permitted by applicable law. Before any such trustee's sale, Beneficiary or Trustee shall give such notice of default and election to sell as may then be required by law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee shall sell the Property, either as a whole or in separate parcels, and in such order as Trustee may determine, at a public auction to be held at the time and place specified in the notice of sale. Neither Trustee nor Beneficiary shall have any obligation to make demand on Trustor before any trustee's sale. From time to time in accordance with then applicable law, Trustee may, and in any event at Beneficiary's request shall, postpone any trustee's sale by public announcement at the time and place noticed for that sale. At any trustee's sale, Trustee shall sell to the highest bidder at public auction for cash in lawful money of the United States. Any person, including Trustor, Trustee or Beneficiary, may purchase at the trustee's sale. Trustee shall execute and deliver to the purchaser(s) a deed or deeds conveying the property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed of any matters or facts, including any facts bearing upon the regularity or validity of any trustee's sale, shall be conclusive proof of their truthfulness. Any such deed shall be conclusive against all persons as to the facts recited in it.

(g)     Beneficiary may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Trustee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties. Alternatively, Beneficiary may choose to dispose of some or all of the Property, in any combination consisting of both personal property and real property, in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Trustor agrees that such a sale of personal property together with real property constitutes a commercially reasonable sale of the personal property.

6.4     <u>Application of Sale Proceeds and Rents.</u>

(a)     Beneficiary and Trustee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations

California Deed of Trust                          12
BN 19768883v5

attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b)     Beneficiary shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Beneficiary may receive or collect under Paragraph 6.3, in the following manner:  first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Trustee, Beneficiary or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.  Beneficiary shall have no liability for any funds which it does not actually receive.

7.     <u>MISCELLANEOUS PROVISIONS</u>

7.1     <u>No Waiver or Cure.</u>

(a)     Each waiver by Beneficiary or Trustee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Beneficiary or Trustee to take action on account of any default of Trustor. Consent by Beneficiary or Trustee to any act or omission by Trustor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Beneficiary's or Trustee's consent to be obtained in any future or other instance.

(b)     If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Deed of Trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Deed of Trust; or prejudice Beneficiary, Trustee or any receiver in the exercise of any right or remedy afforded any of them under this Deed of Trust; or be construed as an affirmation by Beneficiary of any tenancy, lease or option, or a subordination of the lien of this Deed of Trust:

(i)     Beneficiary, its agent or a receiver takes possession of all or any part of the Property;

(ii)     Beneficiary collects and applies Rents, either with or without taking possession of all or any part of the Property;

(iii)     Beneficiary receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Beneficiary under this Deed of Trust;

(iv)     Beneficiary makes a site visit, observes the Property and/or conducts tests thereon;

15

> (v)    Beneficiary receives any sums under this Deed of Trust or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;
>
> (vi)   Beneficiary, Trustee or any receiver performs any act which it is empowered or authorized to perform under this Deed of Trust or invokes any right or remedy provided under this Deed of Trust.

**7.2    Powers of Beneficiary and Trustee.**

(a)    Trustee shall have no obligation to perform any act which it is empowered to perform under this Deed of Trust unless it is requested to do so in writing and is reasonably indemnified against loss, cost, liability and expense.

(b)    Beneficiary may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Deed of Trust.

(c)    From time to time, Beneficiary or Trustee may apply to any court of competent jurisdiction for aid and direction in executing the trust and enforcing the rights and remedies created under this Deed of Trust. Beneficiary or Trustee may from time to time obtain orders or decrees directing, confirming or approving acts in executing this trust and enforcing these rights and remedies.

**7.3    Nonborrower Trustor.**

(a)    If any Trustor ("Nonborrower Trustor") is not the sole Obligor under the Debt Instrument described in Paragraph 2.1(a), such Nonborrower Trustor authorizes Beneficiary to perform any of the following acts at any time, all without notice to Nonborrower Trustor and without affecting Beneficiary's rights or Nonborrower Trustor's obligations under this Deed of Trust:

> (i)    Beneficiary may alter any terms of the Debt Instrument or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Debt Instrument or any part of it;
>
> (ii)   Beneficiary may take and hold security for the Debt Instrument, accept additional or substituted security for the Debt Instrument, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;
>
> (iii)  Beneficiary may apply any security now or later held for the Debt Instrument in any order that Beneficiary in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale;
>
> (iv)   Beneficiary may release Obligor of its liability for the Debt Instrument or any part of it;

California Deed of Trust                                14
BN 19768883v5

16

(v)     Beneficiary may substitute, add or release any one or more guarantors or endorsers of the Debt Instrument; and

(vi)    Beneficiary may extend other credit to Obligor, and may take and hold security for the credit so extended, whether or not such security also secures the Debt Instrument.

(b)     Nonborrower Trustor waives:

(i)     Any right it may have to require Beneficiary to proceed against Obligor, proceed against or exhaust any security held from Obligor, or pursue any other remedy in Beneficiary's power to pursue;

(ii)    Any defense based on any legal disability of Obligor, any discharge or limitation of the liability of Obligor to Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor relief proceeding, or from any other cause, or any claim that Nonborrower Trustor's obligations exceed or are more burdensome than those of Obligor;

(iii)   All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Obligor, and demands and notices of every kind;

(iv)    Any defense based on or arising out of any defense that Obligor may have to the payment or performance of the Debt Instrument or any part of it; and

(v)     Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Beneficiary may have against Obligor, and all rights to participate in any security now or later to be held by Beneficiary for the Debt Instrument.

(c)     Nonborrower Trustor waives any rights or defenses that are or may become available to Nonborrower Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.

(d)     Nonborrower Trustor waives all rights and defenses that Nonborrower Trustor may have because the Debt Instrument may be secured by real property other than the Property hereby encumbered. This means, among other things: (i) Beneficiary may collect from Nonborrower Trustor (including enforcing this Deed of Trust against Nonborrower Trustor) without first foreclosing on any real or personal property collateral securing the Debt Instrument; and (ii) If Beneficiary forecloses on any real property collateral securing the Debt Instrument: (A) the amount of the Debt Instrument may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) Beneficiary may collect from

Nonborrower Trustor (including enforcing this Deed of Trust against Nonborrower Trustor) even if Beneficiary, by foreclosing on the real property collateral, has destroyed any right Nonborrower Trustor may have to collect from Obligor. This is an unconditional and irrevocable waiver of any rights and defenses Nonborrower Trustor may have because the Debt Instrument may be secured by real property other than the Property hereby encumbered. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

(e)     Nonborrower Trustor waives any right or defense it may have at law or equity, including California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Property hereby encumbered.

(f)     Nonborrower Trustor assumes full responsibility for keeping informed of Obligor's financial condition and business operations and all other circumstances affecting Obligor's ability to pay and perform its obligations to Beneficiary, and agrees that Beneficiary shall have no duty to disclose to Nonborrower Trustor any information which Beneficiary may receive about Obligor's financial condition, business operations, or any other circumstances bearing on its ability to perform.

(g)     No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust.

(h)     For purposes of this Paragraph 7.3, all references to the Debt Instrument shall also include any instrument or agreement executed by Obligor subsequent to the date of this Deed of Trust which is secured by this Deed of Trust in accordance with the provisions of Paragraphs 2.1(c) and 2.1(d).

7.4     Merger.  No merger shall occur as a result of Beneficiary's acquiring any other estate in or any other lien on the Property unless Beneficiary consents to a merger in writing.

7.5     Joint and Several Liability.  If Trustor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Trustor's obligations under this Deed of Trust.

7.6     Applicable Law.  This Deed of Trust shall be governed by the laws of the State of California ("Governing Law State").

7.7     Successors in Interest.  The terms, covenants and conditions of this Deed of Trust shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

7.8     Dispute Resolution Provision.  This paragraph, including the subparagraphs below, is referred to as the "Dispute Resolution Provision."  Beneficiary and Trustor (and any other party to this Deed of Trust) agree that this Dispute Resolution Provision is a material inducement for their entering into this Deed of Trust.

(a)     Scope.  This Dispute Resolution Provision concerns the resolution of any disputes, controversies, claims, counterclaims, allegations of liability, theories of damage, or defenses (collectively, a "Claim" or "Claims") between Beneficiary, on the

18

one hand, and Trustor and/or any Obligor, on the other hand (each side being, for the purposes of this Dispute Resolution Provision, a "Party" and the two sides together being the "Parties"), regardless of whether based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether foreseen or unforeseen, suspected or unsuspected, or fixed or contingent at the time of this Deed of Trust, including but not limited to Claims that arise out of or relate to: (i) this Deed of Trust (including any renewals, extensions or modifications); or (ii) any document related to this Deed of Trust.  For the purposes of this Dispute Resolution Provision only, the terms "Beneficiary" or Party or Parties (to the extent referring to or including Beneficiary) shall include any parent corporation, subsidiary or affiliate of Beneficiary.

(b)    Judicial Reference.  Any Claim brought by any Party in a California state court shall be resolved by a general reference to a referee (or a panel of referees) as provided in California Code of Civil Procedure Section 638.  The referee (or presiding referee of the panel) shall be a retired Judge or Justice of the California state court system.  The referee(s) shall be selected by mutual written agreement of the parties.  If the parties do not agree, the referee(s) shall be selected by the Presiding Judge of the Court (or his or her representative) as provided in California Code of Civil Procedure Section 640.  The referee(s) shall hear and determine all issues relating to the Claim, whether of fact or of law, and shall do so in accordance with the laws of the Governing Law State and the California rules of evidence and civil procedure, and shall report a statement of decision.  The referee(s) shall be empowered to enter equitable as well as legal relief, provide all temporary or provisional remedies, enter equitable and legal orders that will be binding on the parties, and rule on any motion which would be authorized in court litigation, including without limitation motions to dismiss, for summary judgment, or for summary adjudication.  The referee(s) shall award legal fees and costs (including the fees of the referee(s)) relating to the judicial reference proceeding, and to any related litigation or arbitration, in accordance with the terms of this Deed of Trust.  The award that results from the decision of the referee(s) shall be entered as a judgment in the court that appointed the referee(s), in accordance with the provisions of California Code of Civil Procedure Sections 644(a).  Pursuant to California Code of Civil Procedure Sections 645, the parties reserve the right to seek appellate review of any judgment or order, including but not limited to, orders pertaining to class certification, to the same extent permitted in a court of law.

(c)    Arbitration Provisions.  The Parties agree that judicial reference pursuant to Subsection (b) above is the preferred method of dispute resolution of all Claims, when available.  The Parties therefore agree that injunctive relief, including a temporary restraining order, without the posting of any bond or security, shall be appropriate to enjoin the prosecution of any arbitration proceeding where the Claims at issue become subject to (and as long as they remain subject to) judicial reference pursuant to Subsection (b) above, provided that a Party moves for such relief within thirty (30) days of its receipt of a demand for arbitration of a Claim.  However, with respect to any Claim brought in a forum other than a California state court, or brought in a California state court but judicial reference pursuant to Subsection (b) above is not available or enforced by the court, the arbitration provisions in this Subsection (c) (collectively, the "Arbitration Provisions") shall apply to the Claim.  In addition, if either of the Parties serves demand for arbitration of a Claim in accordance with these Arbitration Provisions, and the other Party does not move to enjoin the arbitration proceeding within thirty (30) days of receipt of the demand, the right to judicial reference shall be waived and the Claim shall remain

California Deed of Trust                17
BN 19768883v5

subject to these Arbitration Provisions thereafter. The inclusion of these Arbitration Provisions in this Deed of Trust shall not otherwise be deemed as any limitation or waiver of the judicial reference provisions. The Arbitration Provisions are as follows:

(i)     For any Claim for which these Arbitration Provisions apply (as defined in the immediately preceding paragraph), the Parties agree that at the request of any Party to this Deed of Trust, such Claim shall be resolved by binding arbitration. The Claims shall be governed by the laws of the Governing Law State without regard to its conflicts of law principles. The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "Act"), shall apply to the construction, interpretation, and enforcement of these Arbitration Provisions, as well as to the confirmation of or appeal from any arbitration award.

(ii)     Arbitration proceedings will be determined in accordance with the Act, the then-current Commercial Finance rules and procedures of the American Arbitration Association or any successor thereof ("AAA") (or any successor rules for arbitration of financial services disputes), and the terms of these Arbitration Provisions. In the event of any inconsistency, the terms of these Arbitration Provisions shall control. The arbitration shall be administered by the Parties and not the AAA and shall be conducted, unless otherwise required by law, at a location selected solely by Beneficiary in any U.S. state where real or tangible personal property collateral for this credit is located or where Trustor has a place of business. If there is no such state, Beneficiary shall select a location in the Governing Law State.

(iii)    If aggregate Claims are One Million Dollars ($1,000,000) or less:

(A)    All issues shall be heard and determined by one neutral arbitrator. The arbitrator shall have experience with commercial financial services disputes and, if possible, prior judicial experience, and shall be selected pursuant to the AAA "Arbitrator Select: List and Appointment" process, to be initiated by Beneficiary. If the AAA "Arbitrator Select: List and Appointment" process is unavailable, Beneficiary shall initiate any successor process offered by the AAA or a similar process offered by any other nationally recognized alternative dispute resolution organization.

(B)    Unless the arbitrator has a dispositive motion under advisement or unforeseeable and unavoidable conflicts arise (as determined by the arbitrator), all arbitration hearings shall commence within ninety (90) days of the appointment of the arbitrator, and under any circumstances the award of the arbitrator shall be issued within one hundred twenty (120) days of the appointment of the arbitrator.

(C)    A Party shall be entitled to take no more than two (2) fact depositions, one or both of which may be taken in accordance with Fed. R. Civ. P. 30(b)(6), plus depositions of any experts designated by the other Party, each of seven (7) hours or less, during pre-hearing discovery.

(D)    There shall be no written discovery requests except a Party may serve document requests on the other Party not to exceed twenty (20) in number, including subparts. The requests shall be served

within forty-five (45) days of the appointment of the arbitrator and shall be responded to within twenty-one (21) days of service.

(iv)    If aggregate Claims exceed One Million Dollars ($1,000,000):

(A)    The issues shall be heard and determined by one neutral arbitrator selected as above unless either Party requests that all issues be heard and determined by three (3) neutral arbitrators.  In that event, each Party shall select an arbitrator with experience with commercial financial services disputes, and the two arbitrators shall select a third arbitrator, who shall have prior judicial experience.  If the arbitrators cannot agree, the third arbitrator shall be selected pursuant to the AAA "Arbitrator Select: List and Appointment" process, to be initiated by Beneficiary.

(B)    Unless the arbitrator(s) have a dispositive motion under advisement or other good cause is shown (as determined by the arbitrator(s)), all arbitration hearings shall commence within one hundred twenty (120) days of the appointment of the arbitrator(s), and under any circumstances the award of the arbitrator(s) shall be issued within one hundred eighty (180) days of the appointment of the arbitrator(s).

(C)    A Party shall be entitled to take no more than five (5) fact depositions, one or more of which may be taken in accordance with Fed. R. Civ. P. 30(b)(6), plus depositions of any experts designated by the other Party, each of seven (7) hours or less, during pre-hearing discovery.

(D)    There shall be no written discovery requests except a Party may serve document requests on the other Party not to exceed thirty (30) in number, including subparts.  The requests shall be served within forty-five (45) days of the appointment of the arbitrator(s) and shall be responded to within twenty-one (21) days of service.

(v)    Where a Party intends to rely upon the testimony of an expert on an issue for which the Party bears the burden of proof, the expert(s) must be disclosed within thirty (30) days following the appointment of the arbitrator(s), including a written report in accordance with Fed. R. Civ. P. 26(a)(2)(B).  The arbitrator(s) shall exclude any expert not disclosed strictly in accordance herewith.  The other Party shall have the right within thirty (30) days thereafter to take the deposition of the expert(s) (upon payment of the expert's reasonable fees for the in-deposition time), and to identify rebuttal expert(s), including a written report in accordance with Fed. R. Civ. P. 26(a)(2)(B).

(vi)    The arbitrator(s) shall consider and rule on motions by the Parties to dismiss for failure to state a claim; to compel; and for summary judgment, in a manner substantially consistent with the corresponding Federal Rules of Civil Procedure.  The arbitrator(s) shall enforce the "Apex" doctrine with regard to requested depositions of high-ranking executives of both Parties.  The arbitrator(s) shall exclude any Claim not asserted within thirty (30) days following the demand for arbitration.  This shall not prevent a Party from revising the calculation of damages on any existing theory.  All discovery shall close at least

California Deed of Trust                    19
BN 19768883v5

one (1) week before any scheduled hearing date, and all hearing exhibits shall have been exchanged by the same deadline or they shall not be given weight by the arbitrator(s).

(vii)    The arbitrator(s) will give effect to applicable statutes of limitation in determining any Claim and shall dismiss the Claim if it is barred by the statutes of limitation. For purposes of the application of any statutes of limitation, the service of a written demand for arbitration or counterclaim pursuant to the Notices provision of this Deed of Trust is the equivalent of the filing of a lawsuit. At the request of any Party made at any time, including at confirmation of an award, the resolution of a statutes of limitation defense to any Claim shall be decided de novo by a court of competent jurisdiction rather than by the arbitrator(s). Otherwise, any dispute concerning these Arbitration Provisions or whether a Claim is arbitrable shall be determined by the arbitrator(s), except as otherwise set forth in this Dispute Resolution Provision.

(viii)    The arbitrator(s) shall have the power to award legal fees and costs relating to the arbitration proceeding and any related litigation or arbitration, pursuant to the terms of this Deed of Trust. The arbitrator(s) shall provide a written statement of reasons for the award. The arbitration award may be submitted to any court having jurisdiction to be confirmed and have judgment entered and enforced.

(ix)    The filing of a court action is not intended to constitute a waiver of the right of any Party, including the suing Party, thereafter to require submittal of the Claims to arbitration, unless the Party fails to make such demand for arbitration within ninety (90) days following the filing of the court action.

(x)    The arbitration proceedings shall be private. All documents, transcripts, and filings received by any Party shall not be disclosed by the recipient to any third parties other than attorneys, accountants, auditors, and financial advisors acting in the course of their representation, or as otherwise ordered by a court of competent jurisdiction. Any award also shall be kept confidential, although this specific requirement shall be void once the award must be submitted to a court for enforcement. The Parties agree that injunctive relief, including a temporary restraining order, from a trial court is the appropriate relief for breach of this paragraph, and they waive any security or the posting of a bond as a requirement for obtaining such relief.

(d)    Self-Help. This Dispute Resolution Provision does not limit the right of any Party to: (i) exercise self-help remedies, such as but not limited to, setoff; (ii) initiate judicial or non-judicial foreclosure against any real or personal property collateral; (iii) exercise any judicial or power of sale rights; or (iv) act in a court of law to obtain an interim remedy, such as but not limited to, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies.

(e)    Class Action Waiver. Any arbitration or court trial (whether before a judge or jury or pursuant to judicial reference) of any Claim will take place on an individual basis without resort to any form of class or representative action (the "Class Action Waiver"). **THE CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR**

California Deed of Trust
BN 19768883v5

20

22

**REPRESENTATIVE ACTION REGARDING A CLAIM.** Regardless of anything else in this Dispute Resolution Provision, the validity and effect of the Class Action Waiver may be determined only by a court or referee and not by an arbitrator. The Parties to this Deed of Trust acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the Parties and is nonseverable from the agreement to arbitrate Claims. If the Class Action Waiver is limited, voided or found unenforceable, then the Parties' agreement to arbitrate shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. **THE PARTIES ACKNOWLEDGE AND AGREE THAT UNDER NO CIRCUMSTANCES WILL A CLASS ACTION BE ARBITRATED.**

(f)    Jury Waiver. By agreeing to judicial reference or binding arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury as permitted by law in respect of any Claim. Furthermore, without intending in any way to limit the provisions hereof, to the extent any Claim is not submitted to judicial reference or arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury to the extent permitted by law in respect of such Claim. This waiver of jury trial shall remain in effect even if the Class Action Waiver is limited, voided or found unenforceable. **WHETHER THE CLAIM IS DECIDED BY JUDICIAL REFERENCE, BY ARBITRATION, OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS DISPUTE RESOLUTION PROVISION IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW. EACH PARTY HERETO (i) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS DEED OF TRUST AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (iii) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.**

7.9    Interpretation. Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Deed of Trust are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Deed of Trust. The Exhibits to this Deed of Trust are hereby incorporated in this Deed of Trust.

7.10    Waiver of Marshaling. Trustor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Deed of Trust, including any rights provided by California Civil Code Sections 2899 and 3433, as such Sections may be amended from time to time. Each successor and assign of Trustor, including any holder of a lien

California Deed of Trust                              21
BN 19788883v5

subordinate to this Deed of Trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.11  _Severability_.  If any provision of this Deed of Trust should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Deed of Trust except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare all Secured Obligations immediately due and payable.

7.12  _Notices_.  Trustor hereby requests that a copy of notice of default and notice of sale be mailed to it at the address set forth below.  That address is also the mailing address of Trustor as debtor under the Uniform Commercial Code.  Beneficiary's address given below is the address for Beneficiary as secured party under the Uniform Commercial Code.

Addresses for Notices to Trustor:         Linda R. McCormick
                                          211 Country Club Drive
                                          Burbank, CA 91501

Address for Notices to Beneficiary:       Four Square Financial, L.P.
                                          Box D / Room 203A
                                          10982 Roebling Ave.
                                          Los Angeles, California  90024
                                          Attn: Leah Robbins

7.13.  _Construction Deed of Trust_.  This Deed of Trust secures a loan made by Lender to Trustor, some or all of the proceeds of which may be used for the purpose of constructing improvements on the Land.  For purposes of Section 3097(j) of the California Civil Code, (a) the name and address of Lender and the name and address of Trustor, the owner of the Land, are set forth in the introductory paragraph of this Deed of Trust, and (b) a legal description of the Real Property is set forth in _Exhibit A_ attached hereto, and the street address of the Land (if known) is 211 Country Club Drive, Burbank, CA 91501.

24

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first
above written.

TRUSTOR:

*Linda R McCormick*

Linda R. McCormick     AKA Linda Roberta
                                         McCormick

$2^{5}$

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which
this certificate is attached, and not the
truthfulness, accuracy, or validity of that
document.

State of California         }
                            }
County of _Los Angeles_     }

On _JANUARY 13th 2014_ before me, _EODIE MORALES, NOTARY Public_ ,
                                      (Here insert name and title of the officer)

personally appeared   _LINDA ROBERTA McCORMICK_                    ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_ _Eddie Morales_

EODIE MORALES
Commission # 2050248
Notary Public - California
Los Angeles County
My Comm. Expires Aug 31, 2018

(Seal)

$\mathcal{v}^{b}$

26

## EXHIBIT A TO DEED OF TRUST

Exhibit A to DEED OF TRUST executed as of January 8, 2016, by Linda R. McCormick, an individual, as "Trustor" to Commonwealth Land Title Company as "Trustee" for the benefit of Four Square Financial, L.P., a California limited partnership, as "Beneficiary."

### Description of Property

Real property in the unincorporated area of the County of Los Angeles, State of California, described as follows:

Parcel A:

Parcel 2, the City of Burbank, as shown in the County of Los Angeles, State of California, as shown on Parcel Map No. 16, filed in Book 25 Page 9 of Parcel Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of Parcel 2, descried as follows:

Beginning at a point in the Westerly line of Lot 8 of Tract 10797, as per map recorded in Book 186 Pages 13 through 19 inclusive of Maps, Records of said County shown as having a bearing of North 16° 17' West and a length of 34.00 feet distant along said line South 16°17' East 3.36 feet from its Northerly terminus; thence North 54° 13'32" West 73.34 feet; thence South 85° 8'36" East 43.45 feet to the Northeasterly line of said Parcel 2; thence along said Northeasterly line South 26° 32'00" East to the point of beginning.

Also except therefrom that portion described as follows:

Beginning at the Southwest corner of Parcel 2 of said Parcel Map No. 16; thence South 85°4'33" East 76.57 feet to a point that is North 85°4'33" West 198.50 feet from the most Southerly corner of the land described in deed to Paul A. Barnett and wife, recorded in Book 22093 Page 266 of recorded as Instrument No. 505, on March 13, 1946; thence North 7°2'12" West 91.74 feet to an angle point in the Northerly line of said Parcel 2, said point being the Northerly extremity of the certain course having a bearing of North 37°35'50" East and a distance of 106.62 feet; thence South 37°35'50" West 106.62 feet to the point of beginning.

Parcel B:

That portion of Parcel 1, in the City of Burbank, in the County of Los Angeles, State of California as shown on Parcel Map No. 16, filed in Book 25 Page 9 of Parcel Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at the most Northerly corner of said Parcel 1; thence along the Northwesterly line of said Parcel 1, South 18° 35'11" West 93.61 feet to the most Westerly corner of said Parcel 1; thence along the Southerly line of said Parcel 1, South 85° 04'33" East 12.53 feet; thence Northerly in a direct line to the point of beginning.

Assessor's Parcel Number:     5608-020-022

### Street Address of Property

211 Country Club Drive, Burbank, CA 91501

APN: 5608-020-022

California Deed of Trust
Exhibit A

132

# EXHIBIT "5"

any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated. The Indebtedness also includes all costs and expenses incurred by Lender in seeking to enforce Lender's rights and remedies with respect to the Indebtedness, including court costs, costs of alternative dispute resolution and reasonable attorneys' fees, whether or not suit is filed or other proceedings are initiated thereon. This Guaranty covers the Indebtedness presently outstanding and the Indebtedness arising subsequent to the date hereof, including all amounts advanced by Lender in stages or installments. The guaranty of Guarantor as set forth in this Section 1 is a continuing guaranty of payment and not a guaranty of collection.

Section 2.  [Reserved]

Section 3.  [Reserved]

Section 4.  Absolute, Irrevocable and Unconditional Guaranty.

(a)  This Guaranty is an absolute, irrevocable and unconditional guaranty of payment and performance. This Guaranty shall be effective as a waiver of, and Guarantor hereby expressly waives, any right to which Guarantor may otherwise have been entitled, whether existing under statute, at Law or in equity, to require Lender to take prior recourse or proceedings against any collateral, security or Person. It shall not be necessary for Lender, in order to enforce such payment or performance by Guarantor, first to institute suit or pursue or exhaust any rights or remedies against Borrower or other Person liable on such indebtedness or for such performance, or to enforce any rights against any security given to secure such indebtedness or performance, or to join Borrower or any other Person liable for the payment or performance of the Guaranteed Obligations or any part thereof in any action to enforce this Guaranty, or to resort to any other means of obtaining payment or performance of the Guaranteed Obligations; provided, however, that nothing herein contained shall prevent Lender from foreclosing the Mortgage or exercising any other right under the Loan Documents.

(b)  Suit may be brought or demand may be made against Borrower or against any or all parties who have signed this Guaranty or any other guaranty covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against any party hereto.

Section 5.  Certain Agreements and Waivers by Guarantor.

(a)  Guarantor agrees that neither Lender's rights or remedies nor Guarantor's obligations under the terms of this Guaranty shall be released, diminished, impaired, reduced or affected by any one or more of the following events, actions, facts, or circumstances, Guarantor waives any rights, claims or defenses arising from any such events, actions, facts, or circumstances, and the liability of Guarantor under this Guaranty shall be absolute, unconditional and irrevocable irrespective of:

(i)  any limitation on the liability of, or recourse against, any other Person in any Loan Document or arising under any Law;

(ii)  any claim or defense that this Guaranty was made without consideration or is not supported by adequate consideration or that the obligations of Guarantor hereunder exceed or are more burdensome than those of Borrower under the other Loan Documents;

(iii)  the taking or accepting of any other security or guaranty for, or right of recourse with respect to, any or all of the Guaranteed Obligations;

(iv) the operation of any statutes of limitation or other Laws regarding the limitation of actions, all of which are hereby waived as a defense to any action or proceeding brought by Lender against Guarantor, to the fullest extent permitted by Law;

(v) any homestead exemption or any other exemption under applicable Law;

(vi) any release, surrender, abandonment, exchange, alteration, sale or other disposition, subordination, deterioration, waste, failure to protect or preserve, impairment, or loss of, or any failure to create or perfect any lien or security interest with respect to, or any other dealings with, any collateral or security at any time existing or purported, believed or expected to exist in connection with any or all of the Guaranteed Obligations, or any impairment of Guarantor's recourse against any Person or collateral;

(vii) whether express or by operation of Law, any partial release of the liability of Guarantor hereunder (except to the extent expressly so released) or any complete or partial release of Borrower or any other Person liable, directly or indirectly, for the payment or performance of any or all of the Guaranteed Obligations;

(viii) the death, insolvency, bankruptcy, disability, dissolution, liquidation, termination, receivership, reorganization, merger, consolidation, change of form, structure or ownership, sale of all assets, or lack of corporate, partnership or other power of Borrower or any other Person at any time liable for the payment or performance of any or all of the Guaranteed Obligations;

(ix) either with or without notice to or consent of Guarantor, any renewal, extension, modification, supplement, subordination or rearrangement of the terms of any or all of the Guaranteed Obligations and/or any of the Loan Documents, including material alterations of the terms of payment (including changes in maturity date(s) and interest rate(s)) or performance (including changes with respect to the construction of the Improvements) or any other terms thereof, or any waiver, termination, or release of, or consent to departure from, any of the Loan Documents or any other guaranty of any or all of the Guaranteed Obligations, or any adjustment, indulgence, forbearance, or compromise that may be granted from time to time by Lender to Borrower or any other Person at any time liable for the payment or performance of any or all of the Guaranteed Obligations;

(x) any neglect, lack of diligence, delay, omission, failure, or refusal of Lender to take or prosecute (or in taking or prosecuting) any action for the collection or enforcement of any of the Guaranteed Obligations, or to foreclose or take or prosecute any action to foreclose (or in foreclosing or taking or prosecuting any action to foreclose) upon any security therefor, or to exercise (or in exercising) any other right or power with respect to any security therefor, or to take or prosecute (or in taking or prosecuting) any action in connection with any Loan Document, or any failure to sell or otherwise dispose of in a commercially reasonable manner any collateral securing any or all of the Guaranteed Obligations;

(xi) any failure of Lender to notify Guarantor of any creation, renewal, extension, rearrangement, modification, supplement, subordination, or assignment of the Guaranteed Obligations or any part thereof, or of any Loan Document, or of any release of or change in any security, or of the occurrence or existence of any Default or Event of Default, or of any other action taken or refrained from being taken by Lender against Borrower or any security or other recourse, or of any new agreement between Lender and Borrower, it being understood that Lender shall not be required to give Guarantor any notice of any kind under any

3

circumstances with respect to or in connection with the Guaranteed Obligations, any and all rights to notice Guarantor may have otherwise had being hereby waived by Guarantor, and Guarantor shall be responsible for obtaining for itself information regarding Borrower and any collateral, including any changes in the business or financial condition of Borrower or any collateral, and Guarantor acknowledges and agrees that Lender shall have no duty to notify Guarantor of any information which Lender may have concerning Borrower or any collateral;

(xii)    the existence of any claim, counterclaim, set off or other right that Guarantor may at any time have against Borrower, Lender, or any other Person, whether or not arising in connection with this Guaranty, the Note, the Loan Agreement, or any other Loan Document;

(xiii)    the unenforceability of all or any part of the Guaranteed Obligations against Borrower, whether because the Guaranteed Obligations exceed the amount permitted by Law or violate any usury law, or because the Persons creating the Guaranteed Obligations acted in excess of their authority, or because of a lack of validity or enforceability of or defect or deficiency in any of the Loan Documents, or because Borrower has any valid defense, claim or offset with respect thereto, or because Borrower's obligation ceases to exist by operation of Law, or because of any other reason or circumstance, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other Person be found not liable on the Guaranteed Obligations, or any part thereof, for any reason (and regardless of any joinder of Borrower or any other party in any action to obtain payment or performance of any or all of the Guaranteed Obligations);

(xiv)    any order, ruling or plan of reorganization emanating from proceedings under Title 11 of the United States Code with respect to Borrower or any other Person, including any extension, reduction, composition, or other alteration of the Guaranteed Obligations, whether or not consented to by Lender, or any action taken or omitted by Lender in any such proceedings, including any election to have Lender's claim allowed as being secured, partially secured or unsecured, any extension of credit by Lender in any such proceedings or the taking and holding by Lender of any security for any such extension of credit;

(xv)    any other condition, event, omission, action that would in the absence of this paragraph result in the release or discharge of the Guarantor from the performance or observance of any obligation, covenant or agreement contained in this Guaranty or any other agreement;

(xvi)    any early termination of any of the Guaranteed Obligations;

(xvii)    Lender's enforcement or forbearance from enforcement of the Guaranteed Obligations on a net or gross basis; or

(xviii)    any liability, irregularity or unenforceability in whole or in part (including with respect to any netting provision) of any instrument or agreement required thereunder or related thereto, or any transaction entered into thereunder, or any limitation on the liability of Borrower thereunder or any limitation on the method or terms of payment thereunder which may now or hereafter be caused or imposed in any manner whatsoever.

(b)    In the event any payment by Borrower or any other Person to Lender is held to constitute a preference, fraudulent transfer or other voidable payment under any bankruptcy, insolvency or similar Law, or if for any other reason Lender is required to refund such payment or pay the amount

thereof to any other party, such payment by Borrower or any other party to Lender shall not constitute a release of Guarantor from any liability hereunder, and this Guaranty shall continue to be effective or shall be reinstated (notwithstanding any prior release, surrender or discharge by Lender of this Guaranty or of Guarantor), as the case may be, with respect to, and this Guaranty shall apply to, any and all amounts so refunded by Lender or paid by Lender to another Person (which amounts shall constitute part of the Guaranteed Obligations), and any interest paid by Lender and any attorneys' fees, costs and expenses paid or incurred by Lender in connection with any such event.

(c)     It is the intent of Guarantor and Lender that the obligations and liabilities of Guarantor hereunder are absolute, irrevocable and unconditional under any and all circumstances and that until the Guaranteed Obligations are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of Guarantor hereunder shall not be discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a guarantor.

(d)     Guarantor's obligations shall not be affected, impaired, lessened or released by loans, credits or other financial accommodations now existing or hereafter advanced by Lender to Borrower in excess of the Guaranteed Obligations.  All payments, repayments and prepayments of the Loan, whether voluntary or involuntary, received by Lender from Borrower, any other Person or any other source (other than from Guarantor pursuant to a demand by Lender hereunder), and any amounts realized from any collateral for the Loan, shall be deemed to be applied first to any portion of the Loan which is not covered by this Guaranty, and last to the Guaranteed Obligations, and this Guaranty shall bind Guarantor to the extent of any Guaranteed Obligations that may remain owing to Lender.  Lender shall have the right to apply any sums paid by Guarantor to any portion of the Loan in Lender's sole and absolute discretion.

(e)     If acceleration of the time for payment of any amount payable by Borrower under the Note, the Loan Agreement, or any other Loan Document is stayed or delayed by any Law or tribunal, all such amounts shall nonetheless be payable by Guarantor on demand by Lender.

(f)     Guarantor further waives: (i) any defense to the recovery by Lender against Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any security for this Guaranty based upon Lender's election of any remedy against Guarantor or Borrower, including the defense to enforcement of this Guaranty (the so-called "Gradsky" defense) which, absent this waiver, Guarantor would have by virtue of an election by Lender to conduct a non-judicial foreclosure sale (also known as a "trustee's sale") of any real property security for the Indebtedness, it being understood by Guarantor that any such non-judicial foreclosure sale will destroy, by operation of California Code of Civil Procedure ("CCP") Section 580d, all rights of any party to a deficiency judgment against Borrower and, as a consequence, will destroy all rights that Guarantor would otherwise have (including the right of subrogation, the right of reimbursement, and the right of contribution) to proceed against Borrower; (ii) any defense or benefits that may be derived from CCP Sections 580a, 580b, 580d or 726, or comparable provisions of the laws of any other jurisdiction and all other anti-deficiency and one form of action defenses under the laws of California and any other jurisdiction; and (iii) any right to a fair value hearing under CCP Section 580a, or any other similar law, to determine the size of any deficiency owing (for which Guarantor would be liable hereunder) following a non-judicial foreclosure sale.  Nothing in this subsection (f) shall operate to change, waive or affect the provisions of Section 19 hereof.

(g)     Without limiting any other provision of this Guaranty, Guarantor waives all rights and defenses that Guarantor may have because the Guaranteed Obligations are secured by real property. This means, among other things:

5

(i)     That Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower; and

(ii)     If Lender forecloses on any real property collateral pledged by Borrower: (A) the amount of the Guaranteed Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) Lender may collect from Guarantor even if Lender, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses that Guarantor may have because the Guaranteed Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon CCP Sections 580a, 580b, 580d, or 726.

(h)     Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for the Guaranteed Obligations, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by operation of CCP Section 580d or otherwise.

(i)     Guarantor waives Guarantor's rights of subrogation and reimbursement, including (i) any defenses Guarantor may have by reason of an election of remedies by Lender, and (ii) any rights or defenses Guarantor may have by reason of protection afforded to Borrower with respect to the Guaranteed Obligations pursuant to the anti-deficiency or other laws of California limiting or discharging Borrower's obligations, including CCP Sections 580a, 580b, 580d or 726.

(j)     Guarantor waives notice of acceptance of this Guaranty, any rights, defenses and benefits that may be derived from Sections 2787 to 2855, inclusive, of the California Civil Code or comparable provisions of the laws of any other jurisdiction, and all other suretyship defenses Guarantor would otherwise have under the laws of California or any other jurisdiction.

(k)     No provision or waiver in this Guaranty shall be construed as limiting the generality of any other provision or waiver contained in this Guaranty. All of the waivers contained herein are irrevocable and unconditional and are intentionally and freely made by Guarantor.

Section 6.     <u>Subordination.</u>

If, for any reason whatsoever, Borrower is now or hereafter becomes indebted to Guarantor:

(a)     such indebtedness and all interest thereon and all liens, security interests and rights now or hereafter existing with respect to property of Borrower securing such indebtedness shall, at all times, be subordinate in all respects to the Guaranteed Obligations and to all liens, security interests and rights now or hereafter existing to secure the Guaranteed Obligations;

(b)     Guarantor shall not be entitled to enforce or receive payment, directly or indirectly, of any such indebtedness of Borrower to Guarantor until the Guaranteed Obligations have been fully and finally paid and performed; provided, however, that so long as no Default shall have occurred and be continuing, Guarantor shall not be prohibited from receiving such (i) reasonable management fees or reasonable salary from Borrower as Lender may find acceptable from time to time in its sole and absolute discretion, and (ii) distributions from Borrower in an amount equal to any income taxes imposed on Guarantor which are attributable to Borrower's income from the Property;

6

(c)     Guarantor hereby assigns and grants to Lender a security interest in all such indebtedness and security therefor, if any, of Borrower to Guarantor now existing or hereafter arising, including any dividends and payments pursuant to debtor relief or insolvency proceedings referred to below.  In the event of receivership, bankruptcy, reorganization, arrangement or other debtor relief or insolvency proceedings involving Borrower as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and shall have the right to receive directly from the receiver, trustee or other custodian (whether or not an Event of Default shall have occurred or be continuing under any of the Loan Documents), dividends and payments that are payable upon any obligation of Borrower to Guarantor now existing or hereafter arising, and to have all benefits of any security therefor, until the Guaranteed Obligations have been fully and finally paid and performed.  If, notwithstanding the foregoing provisions, Guarantor should receive any payment, claim or distribution that is prohibited as provided above in this Section 6, Guarantor shall pay the same to Lender immediately, Guarantor hereby agreeing that it shall receive the payment, claim or distribution in trust for Lender and shall have absolutely no dominion over the same except to pay it immediately to Lender; and

(d)     Guarantor shall promptly upon request of Lender from time to time execute such documents and perform such acts as Lender may require to evidence and perfect its interest and to permit or facilitate exercise of its rights under this Section 6, including execution and delivery of proofs of claim, further assignments and security agreements, and delivery to Lender of any promissory notes or other instruments evidencing indebtedness of Borrower to Guarantor.  All promissory notes, accounts receivable ledgers or other evidences, now or hereafter held by Guarantor, of obligations of Borrower to Guarantor shall contain a specific written notice thereon that the indebtedness evidenced thereby is subordinated under and is subject to the terms of this Guaranty.

Section 7.     Other Liability of Guarantor or Borrower.

If Guarantor is or becomes liable, by endorsement or otherwise, for any indebtedness owing by Borrower to Lender other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may have against Guarantor.  If Borrower is or becomes indebted to Lender for any indebtedness other than or in excess of the Guaranteed Obligations, any payment received or recovery realized upon such other indebtedness of Borrower to Lender may be applied to such other indebtedness.  This Guaranty is independent of (and shall not be limited by) any other guaranty now existing or hereafter given.  Further, Guarantor's liability under this Guaranty is in addition to any and all other liability Guarantor may have in any other capacity, including, if applicable, its capacity as a general partner.

Section 8.     Lender Assigns; Disclosure of Information.

This Guaranty is for the benefit of Lender and Lender's successors and assigns, and in the event of an assignment of the Guaranteed Obligations, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Obligations so assigned, may be transferred with such Guaranteed Obligations.  Guarantor waives notice of any transfer or assignment of the Guaranteed Obligations or any part thereof.  Lender may sell or offer to sell the Loan or interests therein to one or more assignees or participants.  Guarantor shall execute, acknowledge and deliver any and all instruments reasonably requested by Lender in connection therewith, and to the extent, if any, specified in any such assignment or participation, such assignee(s) or participant(s) shall have the same rights and benefits with respect to the Loan Documents as such Person(s) would have if such Person(s) were Lender hereunder.  Lender may disclose to any such assignee or participant or prospective assignee or participant, to Lender's affiliates, to any regulatory body having jurisdiction over Lender and to any other parties as necessary or appropriate in Lender's reasonable judgment, any information Lender now has or hereafter obtains pertaining to the Guaranteed Obligations, this Guaranty, or Guarantor, including information regarding

7

any security for the Guaranteed Obligations or for this Guaranty, and/or credit or other information on Guarantor and/or any other Person liable, directly or indirectly, for any part of the Guaranteed Obligations.

Section 9.    Binding Effect; Joint and Several Liability.

This Guaranty is binding not only on Guarantor, but also on Guarantor's heirs, personal representatives, successors and assigns. Upon the death of Guarantor, if Guarantor is a natural person, this Guaranty shall continue against Guarantor's estate as to all of the Guaranteed Obligations, including that portion incurred or arising after the death of Guarantor and shall be provable in full against Guarantor's estate, whether or not the Guaranteed Obligations are then due and payable. If this Guaranty is signed by more than one Person, then all of the obligations of Guarantor arising hereunder shall be jointly and severally binding on each of the undersigned, and their respective heirs, personal representatives, successors and assigns, and the term "Guarantor" shall mean all of such Persons and each of them individually.

Section 10.    Governing Law.

The validity, enforcement, and interpretation of this Guaranty, shall for all purposes be governed by and construed in accordance with the laws of the State of California (without regard to its conflicts of law principles) and applicable United States federal law, and is intended to be performed in accordance with, and only to the extent permitted by, such laws. All obligations of Guarantor hereunder are payable and performable at the place or places where the Guaranteed Obligations are payable and performable.

Section 11.    Invalidity of Certain Provisions.

If any provision of this Guaranty or the application thereof to any Person or circumstance shall, for any reason and to any extent, be declared to be invalid or unenforceable, neither the remaining provisions of this Guaranty nor the application of such provision to any other Person or circumstance shall be affected thereby, and the remaining provisions of this Guaranty, or the applicability of such provision to other Persons or circumstances, as applicable, shall remain in effect and be enforceable to the maximum extent permitted by applicable Law.

Section 12.    Costs and Expenses of Enforcement.

Guarantor agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to enforce Lender's rights and remedies under this Guaranty, including court costs, costs of alternative dispute resolution and attorneys' fees, whether or not suit is filed or other proceedings are initiated hereon. All such costs and expenses incurred by Lender shall constitute a portion of the Guaranteed Obligations hereunder, shall be subject to the provisions hereof with respect to the Guaranteed Obligations and shall be payable by Guarantor on demand by Lender.

Section 13.    No Usury.

It is not the intention of Lender or Guarantor to obligate Guarantor to pay interest in excess of that lawfully permitted to be paid by Guarantor under applicable Law. Should it be determined that any portion of the Guaranteed Obligations or any other amount payable by Guarantor under this Guaranty constitutes interest in excess of the maximum amount of interest that Guarantor, in Guarantor's capacity as guarantor, may lawfully be required to pay under applicable Law, the obligation of Guarantor to pay such interest shall automatically be limited to the payment thereof in the maximum amount so permitted

8

under applicable Law.  The provisions of this Section shall override and control all other provisions of this Guaranty and of any other agreement between Guarantor and Lender.

Section 14.      Representations, Warranties, and Covenants of Guarantor.

Until the Guaranteed Obligations are paid and performed in full and each and every term, covenant and condition of this Guaranty is fully performed, Guarantor hereby represents, warrants, and covenants that: (a) Guarantor has a financial interest in Borrower and will derive a material and substantial benefit, directly or indirectly, from the making of the Loan to Borrower and from the making of this Guaranty by Guarantor; (b) this Guaranty is duly authorized and valid, and is binding upon and enforceable against Guarantor; (c) Guarantor is not, and the execution, delivery and performance by Guarantor of this Guaranty will not cause Guarantor to be, in violation of or in default with respect to any law or in default (or at risk of acceleration of indebtedness) under any agreement or restriction by which Guarantor is bound or affected; (d) unless Guarantor is a natural person, Guarantor is duly organized, validly existing, and in good standing under the laws of the state of its organization and has full power and authority to enter into and perform this Guaranty; (e) there is no litigation pending or, to the knowledge of Guarantor, threatened by or before any tribunal against or affecting Guarantor; (f) all financial statements and information heretofore furnished to Lender by Guarantor do, and all financial statements and information hereafter furnished to Lender by Guarantor will, fully and accurately present the condition (financial or otherwise) of Guarantor as of their dates and the results of Guarantor's operations for the periods therein specified, and, since the date of the most recent financial statements of Guarantor heretofore furnished to Lender, no material adverse change has occurred in the financial condition of Guarantor, nor, except as heretofore disclosed in writing to Lender, has Guarantor incurred any material liability, direct or indirect, fixed or contingent; (g) after giving effect to this Guaranty, Guarantor is solvent, is not engaged or about to engage in business or a transaction for which the property of Guarantor is an unreasonably small capital, and does not intend to incur or believe that it will incur debts that will be beyond its ability to pay as such debts mature; (h) Guarantor has read and fully understands the provisions contained in the Note, the Loan Agreement, the Mortgage, and the other Loan Documents.  Guarantor's representations, warranties and covenants are a material inducement to Lender to enter into the other Loan Documents and any Swap Contract shall survive the execution hereof and any bankruptcy, foreclosure, transfer of security or other event affecting Borrower, Guarantor, any other party, or any security for all or any part of the Guaranteed Obligations.

Section 15.      Notices.

All notices, requests, consents, demands and other communications required or which any party desires to give hereunder or under any other Loan Document shall be in writing and, unless otherwise specifically provided in such other Loan Document, shall be deemed sufficiently given or furnished if delivered by personal delivery, by nationally recognized overnight courier service, or by certified United States mail, postage prepaid, addressed to the party to whom directed at the addresses specified in this Guaranty (unless changed by similar notice in writing given by the particular party whose address is to be changed) or by facsimile.  Any such notice or communication shall be deemed to have been given either at the time of personal delivery or, in the case of courier or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of facsimile, upon receipt; provided that service of a notice required by any applicable statute shall be considered complete when the requirements of that statute are met.  Notwithstanding the foregoing, no notice of change of address shall be effective except upon actual receipt.  This Section shall not be construed in any way to affect or impair any waiver of notice or demand provided in this Guaranty or in any other Loan Document or to require giving of notice or demand to or upon any Person in any situation or for any reason.

9

Section 16.    Cumulative Rights.

All of the rights and remedies of Lender under this Guaranty and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default. No notice to or demand on Guarantor in any case shall of itself entitle Guarantor to any other or further notice or demand in similar or other circumstances. No provision of this Guaranty or any right or remedy of Lender with respect hereto, or any default or breach, can be waived, nor can this Guaranty or Guarantor be released or discharged in any way or to any extent, except specifically in each case by a writing intended for that purpose (and which refers specifically to this Guaranty) executed and delivered by Lender to Guarantor.

Section 17.    Term of Guaranty.

This Guaranty shall continue in effect until all the Guaranteed Obligations and all of the obligations of Guarantor to Lender under this Guaranty are fully and finally paid, performed and discharged and are not subject to any bankruptcy preference period or any other disgorgement.

Section 18.    Financial Statements, Financial Covenants.

Guarantor agrees to provide to Lender, as and when required, the financial statements and other financial information required to be delivered to Lender with respect to Guarantor pursuant to the terms of the Loan Agreement and the other Loan Documents, in the form and detail required by the Loan Documents. Guarantor also agrees to provide to Lender such other and further financial information with respect to Guarantor as Lender shall from time to time request.

Guarantor also agrees to comply with all financial covenants set forth in the Loan Agreement as be applicable to Guarantor.

Section 19.    Subrogation.

Guarantor shall not have any right of subrogation under any of the Loan Documents or any right to participate in any security for the Guaranteed Obligations or any right to reimbursement, exoneration, contribution, indemnification or any similar rights, until the Guaranteed Obligations have been fully and finally paid, performed and discharged in accordance with Section 17 above, and Guarantor hereby waives all of such rights.

Section 20.    Time of Essence.

Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations hereunder.

Section 21.    Entire Agreement; Counterparts; Construction.

This Guaranty embodies the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations. This Guaranty supersedes all prior agreements and understandings, if any, with respect to the guaranty by Guarantor of the Guaranteed Obligations. This

10

Guaranty shall be effective upon execution by Guarantor and delivery to Lender. This Guaranty may not be modified, amended or superseded except in a writing signed by Lender and Guarantor referencing this Guaranty by its date and specifically identifying the portions hereof that are to be modified, amended or superseded. This Guaranty has been executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which constitute, collectively, one agreement. As used herein, the words "include" and "including" shall be interpreted as if followed by the words "without limitation."

Section 22.      Dispute Resolution Provision.

This Guaranty shall be governed by the Dispute Resolution Provision of Section 8.16 of the Loan Agreement.

Section 23.      Forum.

Guarantor hereby irrevocably submits generally and unconditionally for itself and in respect of its property to the jurisdiction of any state court or any United States federal court sitting in the State specified in the governing law section of this Guaranty and to the jurisdiction of any state court or any United States federal court sitting in the state in which any of the Property is located, over any Dispute. Guarantor hereby irrevocably waives, to the fullest extent permitted by Law, any objection that Guarantor may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum. Guarantor hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any state court or any United States federal court sitting in the state specified in the governing law section of this Guaranty may be made by certified or registered mail, return receipt requested, directed to Guarantor at its address for notice set forth in this Guaranty, or at a subsequent address of which Lender received actual notice from Guarantor in accordance with the notice section of this Guaranty, and service so made shall be complete five (5) days after the same shall have been so mailed. Nothing herein shall affect the right of Lender to serve process in any manner permitted by Law or limit the right of Lender to bring proceedings against Guarantor in any other court or jurisdiction.

Section 24.      Credit Verification.

Each legal entity and individual obligated on this Guaranty, whether as a Guarantor, a general partner of a Guarantor or in any other capacity, hereby authorizes Lender to check any credit references, verify his/her employment and obtain credit reports from credit reporting agencies of Lender's choice in connection with any monitoring, collection or future transaction concerning the Loan, including any modification, extension or renewal of the Loan. Also in connection with any such monitoring, collection or future transaction, Lender is hereby authorized to check credit references, verify employment and obtain a third party credit report for the spouse of any married person obligated on this Guaranty, if such person lives in a community property state.

[SIGNATURE ON FOLLOWING PAGE]

77700.0040 BN 19777725v4

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty of the date first written above.

Address of Guarantor:

211 Country Club Drive
Burbank, CA 91501

_Tony McCormick_
Tony McCormick

Address of Lender:

Four Square Financial, L.P.
Box D / Room 203A
10982 Roebling Ave.
Los Angeles, California  90024
Attn:  Leah Robbins

EXHIBIT "6"



## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "*Agreement*"), dated as of January 23, 2017 is entered into by and among Linda R. McCormick ("*Linda*") and Tony McCormick ("*Tony*"), on the one hand and Four Square Financial LP, a California limited partnership ("*Four Square*"), on the other hand with respect to the following, each of which is agreed to the true, accurate and correct:

1.    On January 8, 2016, Linda executed and delivered to Four Square that certain Loan Agreement (the "*Loan Agreement*") which, among other matters, set forth the terms and provisions respecting a loan to Linda from Four Square and the security therefor.

2.    On even date with the execution of the Loan Agreement, Linda made, executed and delivered to Four Square that certain Promissory Note in the original principal sum of $840,000.00 (the "*Note*") to evidence the loan referenced in the Loan Agreement.

3.    As security for payment and performance of the Note and Loan Agreement, on even date with the execution of the Loan Agreement, Linda executed and delivered to Four Square that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "*Deed of Trust*"). The Deed of Trust was recorded with the Los Angeles County Recorder on January 20, 2016 as Instrument No. 20160063173. The Deed of Trust encumbered the real property and improvements located at what is commonly known as 211 Country Club Drive, Burbank, CA 91501 (the "*Property*").

4.    On even date with the execution of the Loan Agreement, Tony executed and delivered to Four Square that certain Guaranty Agreement pursuant to which he personally guaranteed payment and performance of Linda's obligations to Four Square.

5.    Pursuant to the terms of the Note, unless the maturity thereof was otherwise extended, the same matured on July 8, 2016 (the "*Initial Maturity Date*").

6.    Pursuant to the terms of the Note, on certain conditions, Linda could extend the Initial Maturity Date until January 8, 2017.

7.    By letter agreement dated June 9, 2016, Linda and Four Square agreed that the maturity of the Note was extended to January 8, 2017 (the "Maturity Date").

8.    The Note matured by its terms on the Maturity Date and thereupon became wholly due and owing.

9.    Linda, as borrower, and Tony, as guarantor, did not pay the amount owed under the Note on the Maturity Date and have not paid the amount owed under the Note thereafter.

10.    Accordingly, Four Square, as was its right, declared the Note in default as of January 9, 2017 (the "*Existing Event of Default*" and the "*Default Date,*" respectively).

1

BN 27808156v1

11.    As of the Maturity Date, the following amounts were due, owing and unpaid under the Note:

    (a)    Principal: $840,000; and

    (b)    Accrued and unpaid interest net of all credits/advances: $92,049.50.

The total due and owing under the Note, therefore, as of the Maturity Date is $932,049.50 (the "*Balance Due*").

12.    The non-payment of the Note at Maturity is an Existing Event of Default.

13.    As a result of and upon the Existing Event of Default, at Four Square's option, the Note bears interest at the Default Rate as provided therein (18% per annum).  Four Square has elected to charge the Default Rate on the Balance Due commencing January 9, 2017 until Four Square has been paid in full.

14.    Pursuant to the Loan Agreement, the Note and the Deed of Trust, Linda, as borrower, and Tony, as guarantor, also owe to Four Square all costs and expenses incurred by it, including legal fees (the "*Costs*").

15.    Linda, as borrower, and Tony, as guarantor, have requested that Four Square forbear from exercising certain of its rights and remedies as a result of the existing Event of Default.  Four Square is willing to agree to the Forbearance on the terms and conditions specified herein.

NOW, THEREFORE, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, Linda, as borrower, and Tony, as guarantor, and Four Square agree, covenant and warrant as follows:

## SECTION 1.  DEFINITIONS

1.1    **Interpretation.**  All capitalized terms used herein (including the preamble and recitals hereto) shall have the respective meanings ascribed thereto in the Loan Documents unless otherwise defined herein.

1.2    **Definitions.**

    (a)    "*Agreement*" shall have the meaning ascribed to such term in the preamble of this Agreement.

    (b)    "*Linda*" and "*Tony*" shall have the meaning ascribed to such terms in the preamble of this Agreement.

    (c)    "*Claims*" shall have the meaning ascribed to such term in Section 4.3(a) of this Agreement.

2

BN 27808156v1

148

(d)     "*Conditions Precedent*" shall mean, collectively and each individually, the conditions set forth in Section 6.1 of this Agreement.

(e)     "*Four Square*" shall have the meaning ascribed to such term in the preamble of this Agreement.

(f)     "*Existing Event of Default*" shall mean the Event of Default under the Loan Documents and Paragraph 10 of this Agreement.

(g)     "*Forbearance*" shall mean Four Square's agreement to forbear from exercising certain rights and remedies upon the occurrence of a default or Event of Default under the Loan Documents or applicable law only in respect of the Existing Event of Default, subject to the terms, conditions, amendments and modifications set forth in this Agreement.

(h)     "*Forbearance Commencement Date*" shall mean the date upon this Agreement is signed by Four Square.

(i)     "*Forbearance Event of Default*" shall mean (i) a default by Linda of any of the covenants and agreements in this Agreement, or (ii) a breach, default or Event of Default under any Loan Document other than the Existing Event of Default, or (iii) any Security Interest purported to be created under any Loan Document which ceases to be in full force and effect, or (iv) if any Linda denies, disaffirms or challenges the Obligations or Security Interests in favor of Four Square or any Loan Document or any right, remedy or priority in favor of Four Square therein.

(j)     "*Forbearance Period*" shall mean the period commencing on the Forbearance Commencement Date and ending on the Forbearance Termination Date.

(k)     "*Forbearance Expiration Date*" shall mean July 9, 2017.

(l)     "*Forbearance Fee*" shall have the meaning provided in Section 4.1(c) of this Agreement.

(m)     "*Forbearance Termination Date*" shall mean the earlier of: (i) Forbearance Expiration Date, or (ii) the occurrence or existence of a Forbearance Event of Default.

(n)     "*Loan Documents*" shall mean, collectively and each individually, "*Loan Documents*" as such term is defined in this Agreement and all agreements and documents in connection therewith, each and all as amended, modified, supplemented, extended, renewed, restated or replaced from time to time.

(o)     "*Obligations*" shall have the meaning provided in Section 2.1 of this Agreement.

(p)     "*Releasee(s)*" shall have the meaning ascribed to such term in Section 4.3(a) of this Agreement.

3

BN 27808156v1

(q)     "*Releasor(s)*" shall have the meaning ascribed to such term in Section 4.3(a) of this Agreement.

## SECTION 2. ACKNOWLEDGMENTS

Linda, as borrower, and Tony, as guarantor, hereby acknowledge, confirm and agree to each of the following:

**2.1     Obligations.**  All obligations ("*Obligations*"), including the principal, interest at either the rate in effect prior to or after a default, and fees, costs, expenses and other charges now or hereafter payable by Linda, as borrower and Tony, as guarantor, to Four Square pursuant to the Loan Documents, are unconditionally owing to Four Square, without offset, defense or counterclaim of any kind, nature or description whatsoever.  Subject to the Forbearance provided in section 3.1 of this Agreement, Linda, as borrower and Tony, as guarantor, hereby acknowledge and agree that (a) all Obligations owed to Four Square are immediately due and payable under the terms of the Loan Documents, and (b) Four Square has the present right to declare and has declared all Obligations owed by Linda and Tony to Four Square to be immediately due and payable under the terms of the Loan Documents.

**2.2     Amount of Obligations.**  As of January 8, 2017, the Obligations owed by Linda to Four Square are the Balance Due, plus additional interest, fees and other charges due and chargeable under the Loan Documents and this Agreement.

**2.3     Security Interests.**  Four Square has and shall continue to have a valid, enforceable, perfected and unavoidable security interest in and lien on (collectively, "*Security Interest*") the Property and all other collateral granted to Four Square pursuant to the Loan Documents or otherwise granted to or held by Four Square.

**2.4     Loan Documents.**  (a) Each of the Loan Documents to which Linda, as borrower (and Tony, as guarantor) is a party has been duly executed and delivered to Four Square by Linda or Tony, and each such document is in full force and effect as of the date hereof, (b) the agreements and obligations of Linda, as borrower and Tony, as guarantor, under the Loan Documents and this Agreement constitute legal, valid and binding obligations and agreements of Linda and Tony enforceable against Linda and Tony in accordance with their respective terms, and Linda and Tony, have no valid defense to the enforcement of the Loan Documents and this Agreement, and (c) Four Square shall be entitled to the rights, remedies, benefits and protections provided for in the Loan Documents and applicable law.

**2.5     Defaults.**  The Existing Event of Default (a) has occurred and is continuing, (b) constitutes an Event of Default, (c) is material and accurate, (d) subject to Section 3.1 of this Agreement, entitles Four Square to exercise its rights and remedies under the Loan Documents, applicable law or otherwise, and (f) has not been waived by Four Square prior to or by virtue of this Agreement or the transactions contemplated hereby.

4

BN 27808156v1

## SECTION 3.   FORBEARANCE AND RESERVATION OF RIGHTS

### 3.1   Forbearance.

(a)   In reliance upon the representations, warranties and covenants of Linda, as borrower (and Tony, as guarantor) in this Agreement, and subject to the terms and conditions of this Agreement and any documents or instruments executed in connection herewith, Four Square agrees to the Forbearance during the Forbearance Period.

(b)   Upon the Forbearance Termination Date, the Forbearance pursuant to this Agreement shall terminate automatically and without any further action or notice, at which time Four Square shall be entitled to immediately exercise any and all rights and remedies available to it, including without limitation, exercising rights with respect to and foreclosing upon the Property or any other collateral, at Four Square's sole and absolute discretion.

### 3.2   No Waivers; Reservation of Rights.

(a)   Four Square has not waived, and by this Agreement, is not waiving, the Existing Event of Default or any other Event of Default or default that may exist or be continuing on the date hereof or that may occur after the date hereof (whether the same or similar to the Existing Event of Default or otherwise), and Four Square has not agreed to forbear with respect to any of its rights or remedies in connection with or as a result of any Event of Default or default (other than during the Forbearance Period as described herein), that may have occurred or are continuing as of the date hereof or which may occur after the date hereof.

(b)   Subject to Section 3.1 of this Agreement (solely with respect to the Existing Event of Default), Four Square reserves the right, in its discretion, to exercise any or all of its rights and remedies under the Loan Documents or law as a result of any Events of Default which may be continuing on the date hereof or any Event of Default which may occur after the date hereof, and Four Square has not waived any such rights or remedies, and nothing in this Agreement, and no delay on its part in exercising any such rights or remedies, should be construed as a waiver of any such rights or remedies.

(c)   Notwithstanding the Forbearance, Four Square is under no obligation to provide any further loans, advances or financial accommodations to or for the benefit of Linda, and to the extent Four Square elects to and does provide any further loans, advances or financial accommodation to Linda, Four Square is not committing to provide any such financing or financial accommodation prospectively and is not waiving any right or remedy under the Loan Documents, except as otherwise and to the extent expressly provided in this Agreement.

## SECTION 4.   AGREEMENTS AND COVENANTS

### 4.1   Forbearance Obligation.   Notwithstanding any other terms or provisions of this Agreement, including Sections 3.1 and 3.2 of this Agreement, and without limiting or waiving any right or remedy available to Four Square upon the occurrence of a Default that may be the subject of the Forbearance, Four Square and Linda, as borrower and Tony, as guarantor, agree to the following Forbearance terms, conditions and provisions:

5

BN 27808156v1

(a)     Commencing January 9, 2017, until all Loans are paid in full, there shall accrue and be due and payable interest on the Balance Due at the Default Rate provided in the Loan Documents.

(b)     Upon execution of this Agreement, there shall be due and owing to Four Square by Linda, as borrower, and Tony, as guarantor, a fully earned Forbearance Fee of $93,204.95 (the "Forbearance Fee"). If the Forbearance Fee is not paid within five days (5) of the execution of this Agreement, the same shall bear interest at the rate set forth in paragraph 13 hereof (the Default Rate) commencing January 24, 2017 until paid in full. Notwithstanding the foregoing, in the event the Balance Due is paid in full by the dates set forth below, time being of the essence, Four Square agrees to reduce the Forbearance Fee by the amounts set forth below:

| Date for Payment in Full of Balance Due to Obtain Reduction in Forbearance Fee | Amount of Reduction in Forbearance Fee for Payment in Full of Balance Due by Deadline |
|---|---|
| February 8, 2017 | 5 points plus interest thereon at the Default Rate |
| March 8, 2017 | 3.75 points plus interest thereon at the Default Rate |
| April 8, 2017 | 2.50 points plus interest thereon at the Default Rate |

(c)     Costs (as defined herein) shall be paid in full to Four Square by Linda, as borrower and/or Tony, as guarantor no later than January 31, 2017. If not so paid, time being of the essence, Four Square will advance and loan the same to Linda and the same shall thereupon be added to the amounts owing by Linda, as borrower, and Tony, as guarantor, as set forth in Paragraph 4 hereof and shall thereupon bear interest at the rate set forth in paragraph 13 hereof (the Default Rate) commencing February 1, 2017 until paid in full.

**4.2     Forbearance Covenants.**   In addition to and without limiting the terms, conditions and covenants of Linda and Tony pursuant to the Loan Documents, Linda and Tony covenant and agree as follows:

(a)     **Payment of Taxes.**  With respect to any taxes or assessments due and owing to any taxing authority respecting the Property, to pay and satisfy in full, including interest and penalties, such tax obligations as and when due.

(b)     **Insurance:**  Maintain and name Four Square as loss payee and co-insured as applicable on fire and comprehensive general liability insurance policies respecting the Property.

**4.3     Release.**

(a)     In consideration of the agreements of Four Square contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Linda and Tony, on behalf of herself and himself and their successors, assigns and other legal representatives (Linda and Tony, and all such other persons being hereinafter referred to collectively as "*Releasors*" and individually as a "*Releasor*"), hereby absolutely, unconditionally and irrevocably releases, remises and forever discharge Four Square, and its

6

successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Four Square and all such other persons being hereinafter referred to collectively as *"Releasees"* and individually as a *"Releasee"*), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a *"Claim"* and collectively, *"Claims"*) of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Releasors may now or hereafter own, hold, have or claim to have against Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the day and date of this Agreement for or on account of, or in relation to, or in any way in connection with Agreement or any of the Loan Documents or transactions thereunder or related thereto.

(b)     It is the intention of Linda and Tony, that this Agreement and the release set forth above shall constitute a full and final accord and satisfaction of all claims that may have or hereafter be deemed to have against Releasees as set forth herein.  In furtherance of this intention, Linda and Tony, on behalf of themselves and each other Releasor, expressly waive any statutory or common law provision that would otherwise prevent the release set forth above from extending to claims that are not currently known or suspected to exist in any Releasor's favor at the time of executing this Agreement and which, if known by Releasors, might have materially affected the agreement as provided for hereunder.  Linda and Tony, on behalf of themselves and each other Releasor, acknowledge that they are familiar with section 1542 of California Civil Code:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Linda and Tony on behalf of themselves and each other Releasor, waive and release any rights or benefits that they may have under Civil Code Section 1542 to the full extent that they may lawfully waive such rights and benefits, and Linda and Tony on behalf of themselves and each other Releasor, acknowledge that they understand the significance and consequences of the waiver of the provisions of Civil Code Section 1542 and that they have been advised by an attorney as to the significance and consequences of this waiver.

(c)     Linda and Tony understand, acknowledge and agree that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(d)     Linda and Tony agree that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final, absolute and unconditional nature of the release set forth above.

7

BN 27808156v1

4.4     **Covenant Not to Sue.**  Each of Linda and Tony on behalf of themselves and their successors, assigns and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenant and agree with and in favor of each Releasee that they will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by Linda and Tony pursuant to Section 4.1 above.  If Linda or Tony or any of their successors, assigns or other legal representations violates the foregoing covenant, they agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

## SECTION 5.  REPRESENTATIONS AND WARRANTIES

Linda, as borrower and Tony, as guarantor, hereby represents, warrants and covenants to Four Square as follows:

5.1     **No Other Defaults.**  Other than the Existing Event of Default, no other breach, default or Event of Default under any Loan Document has occurred, exists or is continuing, and all representations and warranties made pursuant to the Loan Documents are presently true and correct.

5.2     **Binding Effect of Documents.**  This Agreement and the Loan Documents have been duly executed and delivered to Four Square by Linda, as borrower and Tony, as guarantor and are in full force and effect, as modified hereby.

5.3     **No Conflict.**  The execution, delivery and performance of this Agreement by Linda and Tony will not violate any requirement of law or contractual obligation of either of them and will not result in, or require, the creation or imposition of any lien on any of their properties or revenues.

## SECTION 6.  CONDITIONS TO EFFECTIVENESS OF THE FORBEARANCE

6.1     **Conditions Precedent.**  The effectiveness of the Forbearance as provided in Section 3.1 of this Agreement shall be subject to Four Square's receipt of the following:

(a)     an original of this Agreement, duly executed and delivered by Linda, as borrower and Tony, as guarantor;

(b)     any other documents that Four Square may require or request in accordance with this Agreement; and

(c)     Four Square shall have received such endorsements to its policy of title insurance insuring the Deed of Trust as Four Square may require, to insure the priority and validity of the Deed of Trust as a valid lien upon the Property, subject only to such exceptions as have been approved by Four Square in writing.

8

## SECTION 7. PROVISIONS OF GENERAL APPLICATION

**7.1    Effect of this Agreement.** Except as modified pursuant hereto, no other changes or modifications to the Loan Documents are intended or implied and in all other respects the Loan Documents are hereby specifically ratified, restated and confirmed by all parties hereto as of the effective date hereof. To the extent of conflict between the terms of this Agreement and the other Loan Documents, the terms of this Agreement shall control.

**7.2    Costs and Expenses.** Linda, as borrower, and Tony, as guarantor, absolutely and unconditionally agrees to pay to Four Square, on demand by Four Square at any time and as often as the occasion therefor may require, whether or not all or any of the transactions contemplated by this Agreement are consummated: all fees and disbursements of any counsel to Four Square in connection with all matters relating to Linda, the Deed of Trust and the Property including without limitation the preparation, negotiation, execution or delivery of this Agreement and any agreements delivered in connection with the transactions contemplated hereby and expenses which shall at any time be incurred or sustained by Four Square or any of directors, officers, employees or agents as a consequence of or in any way in connection with the preparation, negotiation, execution or delivery of this Agreement and any agreements prepared, negotiated, executed or delivered in connection with the transactions contemplated hereby, all of which shall constitute Obligations.

**7.3    Further Assurances.** The parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement.

**7.4    Binding Effect.** This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

**7.5    Survival of Representations and Warranties.** All representations and warranties made in this Agreement or any other document furnished in connection with this Agreement shall survive the execution and delivery of this Agreement and the other documents, and no investigation by Four Square or any closing shall affect the representations and warranties or the right of Four Square to rely upon them.

**7.6    Severability.** Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement.

**7.7    Reviewed by Attorneys.** Linda and Tony represent and warrant to Four Square that they (a) understand fully the terms of this Agreement and the consequences of the execution and delivery of this Agreement, (b) have been afforded an opportunity to have this Agreement reviewed by, and to discuss this Agreement and any document executed in connection herewith with, such attorneys and other persons as such they may wish, and (c) have entered into this Agreement and executed and delivered all documents in connection herewith of their own free will and accord and without threat, duress or other coercion of any kind by any person. The parties hereto acknowledge and agree that neither this Agreement nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based

9

BN 27808156v1

upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this Agreement and the other documents executed pursuant hereto or in connection herewith.

**7.8     Governing Law; Consent to Jurisdiction and Venue.**

(a)     THE VALIDITY OF THIS AGREEMENT, THE CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT HEREOF, AND THE RIGHTS OF THE PARTIES HERETO WITH RESPECT TO ALL MATTERS ARISING HEREUNDER OR RELATED HERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA.

(b)     THE PARTIES AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS AGREEMENT SHALL BE TRIED AND LITIGATED ONLY IN THE STATE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, FEDERAL COURTS LOCATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA; PROVIDED, HOWEVER, THAT ANY SUIT SEEKING ENFORCEMENT AGAINST ANY COLLATERAL OR OTHER PROPERTY MAY BE BROUGHT, AT FOUR SQUARE'S OPTION, IN THE COURTS OF ANY JURISDICTION WHERE FOUR SQUARE ELECT TO BRING SUCH ACTION OR WHERE SUCH COLLATERAL OR OTHER PROPERTY MAY BE FOUND. LINDA, TONY AND FOUR SQUARE WAIVE, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT EACH MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION 7.8(b).

(c)     TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, LINDA AND TONY AND FOUR SQUARE HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. EACH ALSO REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER AND EACH KNOWINGLY AND VOLUNTARILY WAIVE THEIR JURY TRIAL RIGHTS FOLLOWING THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(d)     LINDA AND TONY HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY OF LOS ANGELES AND THE STATE OF CALIFORNIA, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING HERETO, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY

10

BN 27808156v1

OTHER MANNER PROVIDED BY LAW.  NOTHING IN THIS AGREEMENT SHALL AFFECT ANY RIGHT THAT FOUR SQUARE MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AGAINST ANY LOAN PARTY OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

    **7.9**    **Dispute Resolution.**    At Four Square's election in its sole and unfettered discretion:

    (a)    Any controversy or claim between or among the parties hereto, their agents, employees and affiliates, including (1) those arising out of or relating to, this Agreement or any of the other Loan Documents, (2) any negotiations, correspondence or communications relating to this Agreement or any of the other Loan Documents, whether or not incorporated herein or therein, or any indebtedness evidenced hereby or thereby, (3) the administration or management of this Agreement or any of the other Loan Documents or any indebtedness evidenced hereby or thereby, or (4) any alleged agreements, promises, representations or transactions in connection herewith or therewith, including any claim or controversy which arises out of or is based upon an alleged tort, shall be subject to and resolved in accordance with an Alternative Dispute Resolution Agreement to be entered into by and between the parties to such dispute, in form and substance acceptable to Four Square (the "*ADR Agreement*").

    (b)    No provision of, or the exercise of any rights under, this section 7.9 shall limit the right of Four Square to exercise self-help remedies such as set-off, to foreclose against any Collateral, or to obtain provisional or ancillary remedies such as injunctive relief or the appointment of a receiver from a court having jurisdiction before, during or after the pendency of any mediation or arbitration.

    (c)    To the extent any provision of the ADR Agreement is inconsistent with the other terms of this Agreement, the terms of the ADR Agreement shall prevail.

    **7.10**    **Real Estate Broker Acknowledgement.**    Linda and Tony acknowledge and agree (a) that the terms and provisions of this Agreement were arranged by and through a licensed California real estate broker (Brett Howard, License No. 01120327) and (b) the matters referenced herein are business/commercial in nature solely for business or investment purposes and are not in any manner for personal, family, household or agricultural purposes.

    **7.11**    **Counterparts.**    This Agreement may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

    IN WITNESS WHEREOF, this Agreement is executed and delivered as of the day and year first above written.

LINDA R. MCCORMICK

TONY MCCORMICK

11

BN 27808156v1

**FOUR SQUARE FINANCIAL, LP**

By: _Leah S. Robbins_

Name: Leah S. Robbins

Title: General Partner

12

BN 27808156v1

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

**County of Los Angeles**

On ___JANUARY 13th 2017___ before me Eddie Morales, Notary Public,

personally appeared ___LINDA R. MCCORMICK AND___

___TONY MCCORMICK.___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

EDDIE MORALES
Commission # 2080246
Notary Public - California
Los Angeles County
My Comm. Expires Aug 31, 2018

_Eddie Morales_
Notary Public

**Eddie Morales**
**Commission: 2080246**
**Expire: August 31st, 2018**
**116 East Olive Ave**
**Burbank, CA 91502-1819**
**Phone: (818) 842-2172**
**Fax: (818) 842-1745**

159

EXHIBIT"D"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN M. SPECTOR (SBN: 51623)<br>  sspector@buchalter.com<br>ANTHONY J. NAPOLITANO (SBN: 227691)<br>  anapolitano@buchalter.com<br>BUCHALTER, A Professional Corporation<br>1000 Wilshire Boulevard, Suite 1500<br>Los Angeles, California 90017-2457<br>Telephone: (213) 891-0700<br>Facsimile: (213) 896-0400 | **FILED & ENTERED**<br><br>**MAR 23 2018**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY may          DEPUTY CLERK |
| ☐ *Debtor(s) appearing without attorney*<br>☒ *Attorney for*:  Defendant Four Square Financial LP | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br><br>LINDA ROBERTA McCORMICK,<br><br>                                              Debtor(s) | CASE NO.:  2:17-bk-24730-SK<br><br>CHAPTER:  13<br><br>ADVERSARY NO:   2:17-ap-01589-SK |
|---|---|
| LINDA ROBERTA McCORMICK and ANTHONY B. McCORMICK,<br><br>                                              Plaintiff(s)<br><br>                      vs.<br><br>FOUR SQUARE FINANCIAL LP, ALAN E. ROBBINS, LEAH S. ROBBINS, HOWARD REALTY GROUP, INC. and BRETT ALLEN HOWARD,<br><br>                                              Defendant(s) | **STATUS CONFERENCE AND SCHEDULING ORDER PURSUANT TO LBR 7016-1(a)(4)**<br><br>DATE:              March 21, 2018<br>TIME:              8:30 a.m.<br>COURTROOM: 1575<br>ADDRESS:     U.S. Bankruptcy Court<br>                      255 East Temple Street<br>                      Los Angeles, CA 90012 |

1.  A status conference took place on the date and time indicated above.

2.  Parties and counsel were present as reflected in the court record.

3.  This matter is disposed of as follows:

    a.  ☒  Continued to the following date for a further status conference:    (*date*) 05/03/2018 (*time*) 8:30 a.m.

    b.  ☒  A joint status report must be filed and served, including a judge's copy, by *(date)*: 04/26/2018

    c.  ☐  The last day to join other parties and to amend pleadings is *(specify date)*: _____

    d.  ☐  The last day for pre-trial motions to be filed and served, including a judge's copy, is *(date)*: _____

    e.  ☐  The last date for pre-trial motions to be heard is (*date*): _____

    f.  ☐  The last day for discovery to be completed, including receiving responses to discovery requests, is *(date)*:

    g.  ☐  A ☐ pre-trial stipulation or ☐ pre-trial order must be filed and lodged by (*date*) _____ (*time*) _____
        ☐ No pre-trial stipulation or pre-trial order is required

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

h. ☐ A pre-trial conference is set for (*date*) _____    (*time*) _____

      ☐ No pre-trial conference is required

i. ☐ Estimate of time for trial (*specify number of hours*): _____

j. ☐ A trial is set for (*date*) _____    (*time*) _____

k. ☐ The adversary proceeding is dismissed for failure to appear or prosecute
      ☐ with prejudice    ☐ without prejudice

l. ☒ Notice of next status conference or pre-trial conference date is waived

m. ☒ Other (*specify*):

The deadline for each of the Defendants to respond to the Plaintiffs' Adversary Proceeding Complaint shall be continued from April 6, 2018 to June 6, 2018.  The Defendants, jointly or individually, may file in the Adversary Proceeding an answer or other responsive pleading to the Complaint on or before June 6, 2018.

###

**APPROVED AS TO FORM:**

Dated:  March 22, 2018

LAW OFFICE OF CAMERON H. TOTTEN

By:  _____
      CAMERON H. TOTTEN, ESQ.
      Attorney for the debtor
      Linda Roberta McCormick

Date: March 23, 2018

Sandra R. Klein
United States Bankruptcy Judge

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2014*                          Page 2                          **F 7016-1.2.ORDER.STATUS.CONF**

BN 32254509v1

h. ☐ A pre-trial conference is set for (*date*) _____    (*time*) _____

    ☐ No pre-trial conference is required

i. ☐ Estimate of time for trial (*specify number of hours*): _____

j. ☐ A trial is set for (*date*) _____    (*time*) _____

k. ☐ The adversary proceeding is dismissed for failure to appear or prosecute
    ☐ with prejudice  ☐ without prejudice

l. ☒ Notice of next status conference or pre-trial conference date is waived

m. ☒ Other (*specify*):

    The deadline for each of the Defendants to respond to the Plaintiffs' Adversary Proceeding Complaint shall be
continued from April 6, 2018 to June 6, 2018.  The Defendants, jointly or individually, may file in the Adversary
Proceeding an answer or other responsive pleading to the Complaint on or before June 6, 2018.

###

**APPROVED AS TO FORM:**

Dated:  March 22, 2018

LAW OFFICE OF CAMERON H. TOTTEN

By: _____

    CAMERON H. TOTTEN, ESQ.
    Attorney for the debtor
    Linda Roberta McCormick

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2014*                    Page 2                    **F 7016-1.2.ORDER.STATUS.CONF**

BN 32254509v1